ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JAN 5 2004
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JADE TRADING, LLC, by and through ROBERT W. ERVIN AND LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner, | § | |
| Plaintiffs, | § | NO. 03-2164T |
| v. | § | JUDGE MARY ELLEN COSTER WILLIAMS |
| UNITED STATES OF AMERICA, by and through its agent, the INTERNAL REVENUE SERVICE, | § | |
| Defendant. | § | |

## PLAINTIFFS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT (RELATING TO PARTNERSHIPS RECOGNIZED UNDER CODE § 761)

## MEMORANDUM IN SUPPORT OF SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

## PROPOSED FINDINGS OF UNCONTROVERTED FACTS

David D. Aughtry, Esq.
Linda S. Paine, Esq.
Chamberlain, Hrdlicka, White,
Williams & Martin
191 Peachtree Street, N.E., Ninth Floor
Atlanta, Georgia 30303
Telephone: (404) 659-1410

JW
9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JADE TRADING, LLC, by and through ROBERT W. ERVIN AND LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, by and through its agent, the INTERNAL REVENUE SERVICE,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | NO. 03-2164T<br><br>JUDGE MARY ELLEN COSTER WILLIAMS |

---

**PLAINTIFFS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT (RELATING TO PARTNERSHIPS RECOGNIZED UNDER CODE § 761)**

---

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiffs, Jade Trading, LLC, by and through Robert W. Ervin and Laura Kavanaugh Ervin, on behalf of Ervin Capital, LLC, move the Court to enter an order granting partial summary judgment in their favor, recognizing Jade Trading, LLC as a partnership under Code § 761 and rejecting the unexplained sham contention in the IRS Final Partnership Administrative Adjustment ("FPAA").[1] As grounds for this Motion, Plaintiffs show unto the Court:

1. Consistent with RCFC Rule 56 (a), this Motion is filed more than 60 days from commencement of the case.

---

[1] Concurrently with the filing of this Motion, Plaintiffs are filing two other discrete Motions for Partial Summary Judgment. Rulings on the three Partial Motions should dispose of the entire case.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JADE TRADING, LLC, by and through ROBERT W. ERVIN AND LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner, | § | |
| Plaintiffs, | § | |
| v. | § | NO. 03-2164T |
| UNITED STATES OF AMERICA, by and through its agent, the INTERNAL REVENUE SERVICE, | § | JUDGE MARY ELLEN COSTER WILLIAMS |
| Defendant. | § | |

PLAINTIFFS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT
(RELATING TO PARTNERSHIPS RECOGNIZED UNDER CODE § 761)

MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

PROPOSED FINDINGS OF UNCONTROVERTED FACTS

David D. Aughtry, Esq.
Linda S. Paine, Esq.
Chamberlain, Hrdlicka, White,
Williams & Martin
191 Peachtree Street, N.E., Ninth Floor
Atlanta, Georgia 30303
Telephone: (404) 659-1410

2. No genuine dispute exists as to the three facts that are material (*i.e.*, result-altering) and the matter is therefore ripe for entry of partial summary judgment forthwith under RCFC Rule 56 (a) and (c).

3. This issue relates to the IRS asking the Court in the FPAA to deny the existence of an entity that undeniably existed. That known falsehood defies the two controlling statutes enacted by Congress defining what partnerships will be recognized, the Supreme Court authority relating to the rare circumstance when federal law refuses to recognize an entity recognized under State law, and the precedent of the Federal Circuit recognizing partnerships that carry on "ANY business, financial operation, OR venture" – without regard to proper purpose.

4. Under the controlling statute, the authority of the Supreme Court, and the precedent of the United States Court of Appeals for the Federal Circuit, each of these three facts is *independently* material (*i.e.*, result-altering), uncontroverted by competent evidence, and dispositive:

a. Jade Trading, LLC ("Jade") is a multiple member limited liability company that carried on a "business, financial operation, or venture" by, *inter alia*, investing in over 25 security trades (including foreign currency options, spot contracts, equities, etc.) on its own behalf and in its own name during the last three months of 1999.

b. Jade was formed for the purpose of engaging in "the equivalent of business activity" by, *inter alia*, investing substantially all of its assets in securities such as foreign currency derivatives, spot contracts, equities, etc.

c. By contract, Jade's five members shared jointly in its capital, profits, and losses.

5. The authority for this Motion is set forth in the accompanying Memorandum in Support.

6. The three material facts are set forth in bold, together with the background facts, in the accompanying Proposed Findings of Uncontroverted Facts. Those three facts, as well as the background information, are drawn from the pleadings together with the three affidavits which accompany the First Motion for Partial Summary Judgment and are incorporated herein by reference.

7. Defendant objects to the granting of this Motion.

WHEREFORE, Plaintiffs pray that partial summary judgment be entered in their favor, with an order holding that Jade must be recognized under Code § 761.

Respectfully submitted,

DAVID D. AUGHTRY
Georgia Bar No. 028010

LINDA S. PAINE
Texas Bar No. 15414000

Chamberlain, Hrdlicka, White,
Williams & Martin
191 Peachtree Street, N.E., Ninth Floor
Atlanta, Georgia 30303
Telephone: (404) 659-1410
Facsimile: (404) 659-1852

COUNSEL FOR PLAINTIFFS

Dated: December 18, 2003
154962.4
002871-000000:12/16/2003

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT (RELATING TO PARTNERSHIPS RECOGNIZED UNDER CODE § 761)**

## TABLE OF CONTENTS


ISSUE ....... 2

STATEMENT OF UNCONTROVERTED MATERIAL FACTS ....... 2

OVERVIEW ....... 7

DISCUSSION ....... 8

A. Under the Plain Meaning of the Expansive Partnership Definition Enacted by Congress, Jade Must be Recognized as a Partnership ....... 8

1. By statute, Congress requires that every unincorporated organization such as Jade be treated as a partnership if it carries on "ANY business, financial operation, OR venture." ....... 8

2. The controlling precedent of this Circuit follows Code § 761(a). ....... 9

3. The incontrovertible facts establish that Jade carried on a business, financial operation, or venture. ....... 11

B. Under The Law Of The Supreme Court And This Court, An Entity Must Be Recognized If Any Business Purpose Existed Apart From The Expected Tax Consequences. ....... 14

1. Jade also meets the disjunctive element embraced by the Supreme Court and this Court. ....... 14

2. Jade's purpose was the "equivalent of business activity" in the form of gaining an advantage under State law, dealing with creditors, and serving the personal or undisclosed convenience of the creators, etc. ....... 16

CONCLUSION ....... 18

# TABLE OF AUTHORITIES

## Cases

*A.P. Green Export Co. v. United States*, 284 F.2d 383, 390 (Ct. Cl. 1960)....................16

**Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................................1, 2

*Campbell County State Bank v. Commissioner*, 37 T.C. 430 (1961), *acq.*, 1966-2 C.B. 3, *rev'd and remanded on other issues*, 311 F.2d 374 (8th Cir. 1963)..........................................................................................................15

**Commissioner v. Culbertson*, 337 U.S. 733 (1949)..........................................15, 16, 18

**Copeland v. Commissioner*, 290 F.3d 326 (5th Cir. 2002)......................................7, 10

*Harrison Prop. Mgmt. Co. v. United States*, 475 F.2d 623 (Ct. Cl. 1960)................14, 15

*Louisville Store of Liberty, Ky., Inc. v. United States*, 376 F.2d 314 (Ct. Cl. 1967)...........................................................................................................14, 16

**Moline Props., Inc. v. Commissioner*, 319 U.S. 436 (1943).......................14, 15, 16, 18

**Transpac Drilling Venture v. United States*, 83 F.3d 1410 (Fed. Cir. 1996)..........7, 9, 10

*Weyerhaeuser Co. v. United States*, 395 F.2d 1005 (Ct. Cl. 1968)................................16

## Internal Revenue Code of 1986 (26 U.S.C.)

*I.R.C. § 761(a)........................................................................................... *passim*

*I.R.C. § 7701(a)(2)...................................................................................... *passim*

## Treasury Regulations

Treas. Reg. § 1.183-2(c), Ex. (5).........................................................................17

Treas. Reg. § 1.701-2...............................................................................................7

Treas. Reg. § 1.761-1(a)...........................................................................................9

Treas. Reg. § 1.761-2................................................................................................9

* Asterisk indicates most significant authorities.

**Miscellaneous**

* William S. McKee, *et al.*, *Federal Taxation of Partnerships and Partners* § 1.05[3][a] (3d ed. 1997) ..... 15

**Rules of the United States Court of Federal Claims**

RCFC 56(c) ..... 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JADE TRADING, LLC, by and through ROBERT W. ERVIN AND LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner, | § | |
| Plaintiffs, | § | |
| v. | § | NO. 03-2164T |
| UNITED STATES OF AMERICA, by and through its agent, the INTERNAL REVENUE SERVICE, | § | JUDGE MARY ELLEN COSTER WILLIAMS |
| Defendant. | § | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT (RELATING TO PARTNERSHIPS RECOGNIZED UNDER CODE § 761)**

Plaintiffs offer this memorandum in support of their Second Motion for Partial Summary Judgment more than 60 days from the commencement of the action, pursuant to Rule 56 of the United States Court of Federal Claims ("RCFC"). That Motion, coupled with the two accompanying motions for partial summary judgment, address the three discrete questions of law that – consistent with the fundamental purpose of summary judgments endorsed by the Supreme Court - dispose of the entire case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-8 (1986); RCFC 56(c) (Summary judgment "*shall be rendered forthwith* if the pleadings ... [and] affidavits... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law": emphasis added).

## ISSUE

Can the Internal Revenue Service ("IRS") ignore (i) the plain meaning of the definition of "partnership" enacted by Congress under Internal Revenue Code[1] §§ 761(a) and 7701(a)(2) (an unincorporated entity that carries on "any business, financial operation, or venture"), (ii) the terms of the controlling limited liability company agreement (dictating a shared interest in capital, profits, and losses), and (iii) the manifest and authorized purposes for Jade's formation as a limited liability company, in order to disregard Jade Trading, LLC ("Jade") as a sham?

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

Only three facts are material under *Anderson*, 477 U.S. at 248 in the sense they are result-altering:

1. Jade, a limited liability company formed under the laws of the State of Delaware, is an unincorporated organization which carried on its financial operation or venture by, *inter alia*, investing in over 25 foreign currency and security positions with unrelated third parties on its own behalf and in its own name during the last quarter of 1999, with additional trading continuing through most of 2000. Bergmann Aff. ¶¶ 11, 13.

2. Jade was formed for a number of purposes, including:

   a. Jade was formed as a limited liability company, as opposed to a limited partnership, to do just that – provide limited liability protection of non-partnership assets for the Managing Member under State law. Bergmann Aff. ¶ 4.

   b. The LLC structure allowed Sentinel, as the Managing Member, to make prompt centralized decisions based on market fluctuations. Bergmann Aff. ¶ 4.

---

[1] All section and Code references relate to the Internal Revenue Code of 1986 (26 U.S.C.) as amended through December 31, 1999, unless indicated otherwise.

c. As confirmed in the authorized "Purposes" section of the controlling "LIMITED LIABILITY COMPANY AGREEMENT OF JADE TRADING, LLC" ("Jade LLC Agreement"), Jade was formed to invest substantially all of its assets in securities including foreign currency derivatives, spot positions, equities, etc. Jade LLC Ag'm't § 1.06.

d. The use of an LLC allowed for pooling of investments to increase leverage, post collateral, and operate with greater efficiency at lower costs. Bergmann Aff. ¶ 4.

e. Jade's LLC Agreement also served the ultimate purpose of motivating the Managing Member to maximize value with a result-driven "Incentive Allocation" of 20 percent of Net Capital Appreciation. Jade LLC Ag'm't. § 3.05(b).

3. The five members of Jade shared capital, profits, and losses. Jade LLC Ag'm't, §§ 3.03, 3.05 (sharing of capital, gains, and losses based on relative capital accounts, subject to "Incentive Allocation").

Each of these facts is not only material, each is incontrovertible and independently dispositive. No other facts are result-altering.

With that said, Plaintiffs offer the Court this description of the background:

1. Jade was formed on September 21, 1999 as a limited liability company under Delaware law. It is an unincorporated organization that is not a trust or estate. Del. Sec. of State Certification of Formation.

2. Jade's Managing Member formed Jade as a limited liability company instead of a limited partnership to provide itself with limited liability. Bergmann Aff. ¶ 4.

3. As authorized by the Jade LLC Agreement, Jade was formed to invest substantially all of its assets in securities such as foreign currency derivatives, spot contracts, equities, etc. Jade LLC Ag'm't, § 1.06 (authenticated as Ex. 2 to Bergmann Aff. ¶ 2); Bergmann Aff. ¶ 14.

4. As of October 6, 1999, Jade consisted of five members. They shared joint ownership of the Jade capital in proportion to their capital accounts. Bergmann Aff. ¶ 7; Jade LLC Ag'm't. § 3.04.

5. The Members of Jade also agreed to share profits and losses in proportion to their respective capital accounts, subject to an "Incentive Allocation." Jade LLC Ag'm't. § 3.05.

6. The Jade Limited Liability Company Agreement provided a result-based incentive for Sentinel to identify profitable investments as Jade's Managing Member. That incentive is equal to 20 percent of Net Capital Appreciation. Jade LLC Ag'm't. § 3.05(b); Bergmann Aff. ¶ 5.

7. Jade carried through with its formation purposes by investing in foreign currency derivatives, spot contracts, equities, etc. Bergmann Aff. ¶¶ 8, 11-14.

8. At the time Jade was formed, Sentinel was bullish on the Euro:

a. The Euro was introduced in early 1999 as the new functional currency for members of the European Union who participated in the convergence of European currencies. Bergmann Aff. ¶ 18.

b. During the summer and autumn of 1999, Sentinel and many other investment professionals anticipated that the Euro would appreciate relative to the U.S. dollar. Bergmann Aff. ¶ 19.

c. Sentinel Advisors told Gary Ervin that he and his brothers could potentially obtain returns on the Euro-based knock-out derivative investments of over 30:1. Bergmann Aff. ¶ 22.

d. Sentinel Advisors offered other trading strategies consistent with its approach toward the Euro, in addition to the Euro knock-out options from which Gary Ervin and his brothers could profit from their investments in Jade. Bergmann Aff. ¶ 23.

e. Shortly after its inception, Jade began investing in long positions in the Euro. Contrary to Sentinel's expectations, as well as the expectations of others in the investment community, however, the Euro continued to decline against the U.S. dollar rather than advancing as anticipated. Bergmann Aff. ¶ 24.

f. As the Euro continued its declining trend, Sentinel, on behalf of Jade and other investment funds, reduced its level of trading in Euros. Bergmann Aff. ¶ 25.

9. During the last three months of 1999, Jade invested in over 25 foreign currency and equity transactions. Bergmann Aff. ¶¶ 12, 24.

10. After two months of poor results, the Ervin brothers decided to withdraw. R. Ervin Aff. ¶ 16; G. Ervin Aff. ¶¶ 17-18; Bergmann Aff. ¶¶ 25-27.

11. The Eurodollar later rebounded. Bergmann Aff. ¶ 28.

12. During its 2000 taxable year, Jade continued to invest in other securities. Bergmann Aff. ¶ 13.

13. At all relevant times, Jade conducted its affairs in its own name, separate and distinct from its members. For example, Jade entered into binding contracts in its own name with unrelated third parties. Bergmann Aff. ¶¶ 8, 11.

14. Jade maintained a separate bank account in its own name, as well as a separate brokerage account in its own name at Salomon Smith Barney through which Jade traded equities on its own behalf. Bergmann Aff. ¶¶ 8, 11.

15. Jade consistently treated itself as a partnership for tax purposes and filed a 1999 U.S. Partnership Return. Compl. ¶ 5; Ans. ¶ 5; Bergmann Aff. ¶ 9, Ex. 3.

16. The IRS has treated Jade as a partnership. The IRS initiated a partnership audit of Jade through issuance of a Notice of Beginning of Administrative Proceeding with respect to the audit of Jade as a partnership under the uniform partnership procedures. Bergmann Aff. ¶ 10.

17. On or about April 15, 2003, the IRS issued a notice of Final Partnership Administrative Adjustment ("FPAA") to Jade as a partnership. Compl. ¶ 2, Ex. A and B.

18. In that FPAA, the IRS determined that:

a. Jade was entitled to certain *partnership* deductions; and

b. Jade's *partnership* income should be increased (Compl. ¶¶ 3, 4; Ans. ¶¶ 3-4).

19. However, the FPAA also asserts that Jade should be disregarded as a partnership on the contention it is a sham. FPAA, p. 8, Item 1.

20. The Defendant continues to treat Jade as a partnership for at least some federal tax purposes. Compl. ¶ 5; Ans. ¶ 5 ("Admits that Jade is treated as a partnership for purposes of §§ 6221-6234 of the Internal Revenue Code...").

## OVERVIEW

Twice Congress has spoken as to what entities are treated as partnerships for federal tax purposes and what entities are not. Congress defined partnerships in the broadest terms in Code § 761(a) ("unincorporated organization through or by means of which any business, financial operation, or venture is carried on"). That definition was no accident for Congress defined partnerships a second time in Code § 7701(a)(2) using virtually verbatim terms.

Twice the government has successfully argued before two different United States Courts of Appeal that a partnership exists under Code § 761(a) without regard to profit motive or proper purpose. *Transpac Drilling Venture v. United States*, 83 F.3d 1410, 1414 (Fed. Cir. 1996); *Copeland v. Commissioner*, 290 F.3d 326, 330 (5th Cir. 2002). Yet here, the IRS blends sham allegations and Treas. Reg. § 1.701-2 to disregard Jade's existence. FPAA, p. 8, Item 1. The FPAA cites no other authority for its sham contention and, at most, alleges as factual support that Jade "was formed or availed of in connection with a transaction or transactions in taxable year 1999, a principal purpose of which was to reduce substantially the present value of the partners' aggregate tax liability...." Nowhere does the IRS identify that "transaction or transactions." No case uses such a "principal purpose" *transaction* standard to disregard an *entity*. If the sham allegation simply paraphrases the regulation, then it should be resolved by the First Motion invalidating that regulation without further ado. Even if that self-serving sham characterization somehow constitutes an independent (but unexplained) ground, it is a poor substitute for the statutes enacted by Congress.

## DISCUSSION

The IRS asks the Court to deny the existence of an entity that undeniably existed. With all due respect, asking a Court to embrace a known falsehood runs contrary to the judicial function. It also runs contrary to the IRS repeatedly recognizing Jade as a partnership – including the IRS Final PARTNERSHIP Administrative Adjustment (upon which this PARTNERSHIP proceeding is based) recognizing PARTNERSHIP deductions and increasing PARTNERSHIP income. Most importantly, it runs contrary to the statutes adopted by Congress and the precedent embraced by this Circuit – at the urging of the IRS.

### A. Under the Plain Meaning of the Expansive Partnership Definition Enacted by Congress, Jade Must be Recognized as a Partnership.

#### 1. By statute, Congress requires that every unincorporated organization such as Jade be treated as a partnership if it carries on "ANY business, financial operation, OR venture."

In Section 761, Congress defines in broad, clear, and unambiguous terms when an entity qualifies as a partnership for federal tax purposes and when it does not. Section 761(a) defines "partnership" in these expansive and unambiguous terms:

> (a) PARTNERSHIP
>
> For purposes of this subtitle, the term "partnership" includes a syndicate, group, pool, joint venture, or **other unincorporated organization through or by means of which any business, financial operation, or venture is carried on**, and which is not, within the meaning of this title, a corporation or a trust or estate... (Emphasis added).

This definition is no accident, as it mirrors the definition found in Code § 7701(a)(2), entitled Definitions:

> The term "partnership" includes a syndicate, group, pool, joint venture, or **other unincorporated organization**, **through or by**

> **means of which any business, financial operation, or venture is carried on**, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization. (Emphasis added).

The Commissioner eliminates any doubt about the parallel between Code §§ 761(a) and 7701(a)(2) in Treas. Reg. § 1.761-1(a) ("The term *partnership* means a partnership as determined under §§ 301.7701-1, 301.7701-2, and 301.7701-3 of this chapter"). Congress provided one and only one mechanism for exclusion of an unincorporated joint venture from Subchapter K – the unanimous election by all members of certain partnerships. Code § 761(a); Treas. Reg. § 1.761-2. Neither Jade nor any of its Members ever wanted or voted for such exclusion.

**2. The controlling precedent of this Circuit follows Code § 761(a).**

The greatest insight can be gleaned by focusing upon the extreme cases where – in sharp contrast to the prospect of great profits here - the partnership pursued improper purposes or possessed no profit motive at all. Twice that situation has arisen and twice the IRS and its counsel successfully established that the partnership must be recognized under the broad language of Code § 761.

The first involves the authority of the Federal Circuit whose precedent applies *sub judice*. In *Transpac Drilling Venture*, 83 F.3d at 1414, the Federal Circuit was faced with an ostensible partnership that undeniably engaged in a sham involving non-existent transactions. Nonetheless, the Government successfully argued that – based on the breadth of Code § 761(a) – the partnership must be recognized despite the sham activities and improper purposes:

> **Transpac was a partnership under the Internal Revenue Code even though it was organized and operated for improper or**

> **illicit purposes.** As the Court of Federal Claims noted, the **broad definition of "partnership" in the Internal Revenue Code** does not limit such entities to those organized for lawful businesses. Section 761(a) of the Code defines "partnership" to include "a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on." I.R.C. § 761(a). (*Id.* at 1414: emphasis added).

The United States Court of Appeals for the Fifth Circuit embraced the same argument by the IRS and its counsel based on the same statutory foundation in *Copeland*, 290 F.3d at 330. In contrast to Jade, Mr. Copeland and his venture lacked any profit motive. The IRS successfully urged that the breadth of Code § 761(a) required recognition of the partnership:

> In keeping with [Code § 761(a)], the Tax Court observed that the...limited partnerships entered into transactions, formed joint ventures, operated gas wells, and engaged in various other activities. They carried on a financial operation or venture. **They are to be treated as partnerships under section 761(a) even though the underlying activities of the partnerships lacked a profit objective...** [the] limited partnerships each had the formal indicia of partnership status and conducted themselves generally as partnerships. They are to be treated as partnerships.[2]
>
> We agree with the distinction presented by the Tax Court on this issue: "[A] court decision that a partnership activity ... lacks a profit objective ... is not equivalent to a holding that the investors intended to create an entity other than a partnership." . . . [No] one can seriously contend that those who created these business entities did not intend to create entities "by means of which [a] business, financial operation, or venture [would be] carried on." (*Id.* at 330: emphasis added).

---

[2] Notably, the inconsistent contentions by the taxpayers in *Copeland* and *Transpac* parallel the Commissioner's inconsistent contentions here where the IRS has treated Jade as a *partnership* from the commencement of these proceedings, admits in its Answer that Jade is a *partnership* (Ans. ¶ 5), increases Jade's *partnership* income in the FPAA (Ans. ¶ 3), and allows certain of Jade's *partnership* deductions (Ans. ¶ 4), but denies that Jade is a partnership in the FPAA's first three substantive determinations.

When put to the test, the statute enacted by Congress must control - regardless of the proper or improper purposes alleged in the FPAA. The controlling statutory test here is just this: is this "a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which ANY business, financial operation, OR venture is carried on"? The Federal Circuit, the Fifth Circuit, and the IRS say "Yes."

### 3. The incontrovertible facts establish that Jade carried on a business, financial operation, or venture.

At all times, Jade carried on its extensive investment activity as a bona fide limited liability company that, as a matter of law, is treated as a partnership for federal tax purposes. In response, the IRS hurls pejoratives such as sham that do not pass as facts or competent evidence.

No one can honestly deny that Jade exists as an unincorporated entity within the meaning of Code §§ 761(a) and 7701(a)(2). Nor can anyone fairly suggest that it is a trust or an estate under those statutes. Indeed, the IRS itself admits by Treas. Reg. § 301-7701-3(b)(1)(i) that multiple member limited liability companies such as Jade are treated as partnerships for federal tax purposes. That IRS regulation draws no exceptions: all multiple member limited liability companies are treated as partnerships unless they elect out of partnership treatment. No basis exists in law or fact for asserting that Jade's members ever elected to be excluded from any part of Subchapter K under the sole exclusion mechanism recognized by Congress.

Most importantly, no one can honestly deny that Jade met, if not exceeded, the low threshold of activity required by Congress for treatment as a partnership -- *i.e.*, carrying on "ANY business, financial operation, OR venture." As the IRS confirmed during its extensive audit:

i. During the last quarter of 1999, Jade invested in over 25 transactions (principally Euro options) in its own name and on its own behalf with unrelated third parties. Bergmann Aff. ¶¶ 12, 24.

ii. Jade continued trading through 2000. Bergmann Aff. ¶ 13.

iii. At all times, Jade carried on its venture in a manner separate and distinct from its members. Bergmann. Aff. ¶¶ 8, 11.

iv. As a matter of public record, Jade was a separate and distinct entity formed under Delaware law. Del. Sec. of State Certification of Formation.

v. Jade maintained its bank account in its own name through which it carried on its operations. Bergmann Aff. ¶ 11.

vi. Jade also maintained its own brokerage account at Salomon Smith Barney through which it carried on its trading in equities on its own behalf, separate and distinct from its partners. Bergmann Aff. ¶ 8.

vii. Jade filed its United States Partnership Returns with the IRS. Compl. ¶ 5; Ans. ¶ 5.

viii. The IRS treated Jade as a partnership when it began and conducted its federal partnership audit. Bergmann Aff. ¶ 10.

ix. The IRS again treated Jade as a partnership when it issued the Final Partnership Administrative Adjustment on which this partnership proceeding is based. Compl. ¶ 2, Ex. A and B; Ans. ¶ 2.

x. Despite its injection of the word sham at one point, that FPAA again treats Jade as a partnership in at least two respects. The FPAA:

* Recognizes certain *partnership* deductions; and
* Increases *partnership* income. Compl. ¶¶ 3-4; Ans. ¶¶ 3-4.

The FPAA confuses the *entity* with a "transaction or transactions." Specifically, the FPAA appears to falsely equate the non-existence of Jade with a debate over the "principal purpose" of a select but unspecified "transaction or transactions." FPAA, p.8, Item 1. No other basis for the entity sham allegation is offered. Nowhere during the year long audits, in the FPAA, or in the Answer has the IRS ever disputed the entity considerations. No one has ever denied that Jade was a legally constituted limited liability company or that it carried on its investment activities in its own name with unrelated third parties through its own bank account and brokerage account.

Even as to the transactions, the IRS has never disputed the existence or nature of the over 25 investments Jade entered in its own name on its own behalf inside the partnership with third parties during 1999, much less the scores of transactions conducted through 2000. And while the IRS seeks to aggregate the two options Robert contributed to Jade, the IRS recognizes that it has no basis in law or fact for denying their existence. The IRS simply denies the existence of an entity whose existence is undeniable, based on third-party transactions whose existence is undisputed. Whatever other complaints the IRS may or may not have, no one can honestly deny that - under Congress' definition of partnerships and this Circuit's precedent – Jade existed.

B. <u>Under The Law Of The Supreme Court And This Court, An Entity Must Be Recognized If Any Business Purpose Existed Apart From The Expected Tax Consequences.</u>

**1. Jade also meets the disjunctive element embraced by the Supreme Court and this Court.**

As the predecessor of this Court held in *Harrison Prop. Mgmt. Co. v. United States*, 475 F.2d 623, 626-627 (Ct. Cl. 1960) and *Louisville Store of Liberty, Ky., Inc. v. United States*, 376 F.2d 314, 319 (Ct. Cl. 1967), the business purpose question is not whether the venture could have been operated successfully in some other structure: the question is whether a purpose existed to engage in the equivalent of business (or investment) activity.[3] Those cases remain true to the Supreme Court precedent that exercises great restraint before ignoring an entity legally constituted under State law.

In *Moline Props., Inc. v. Commissioner*, 319 U.S. 436, 439 (1943), the Supreme Court established the disjunctive rule that an entity will be respected for tax purposes if its purpose (at the time of formation) is the equivalent of business activity OR the entity carries on business after its formation. There, an individual formed a corporation that owned property and carried on a minimal amount of activity. Later, he urged that the entity should be disregarded, but the Supreme Court resisted, recognized the entity, and laid down this rule:

> Whether the purpose be to gain an advantage under the law . . . or to comply with the demands of creditors or to serve the creator's

[3] For partnership purposes, business activity includes investment activity. That is why Congress uses the disjunctive "business, financial operation, or venture" in the Code § 761 inclusion provisions and then specifically allows "investment partnerships" to elect in or out of Subchapter K in the Code § 761 exclusion provisions ("...Under regulations the Secretary may, at the election of all the members of an unincorporated organization, exclude such organization from the application of all or part of the subchapter [K relating to partnerships], if it is availed of – (1) for ***investment*** purposes only and not the active conduct of a business...": emphasis added)).

> personal or undisclosed convenience, so long as that purpose is the equivalent of business activity **OR** is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. (Emphasis added)

*Moline*, 319 U.S. at 438-39. *See also, Harrison Prop. Mgmt. Co.*, 475 F.2d at 626-627 (applying the *Moline* doctrine); and *Campbell County State Bank v. Commissioner*, 37 T.C. 430, 441-442 (1961), *acq.*, 1966-2 C.B. 3, *rev'd and remanded on other issues*, 311 F.2d 374 (8th Cir. 1963) (applying *Moline* to partnerships).

Six years later, the Supreme Court was faced in *Commissioner v. Culbertson*, 337 U.S. 733 (1949) with whether to recognize an entity in which a partnership interest had been acquired by gift. As noted, the leading partnership taxation treatise confirms the meaning of business purpose under *Culbertson*: "[F]or present purposes, *Culbertson* stands for the proposition (later codified) that if the putative partners actually share the ownership of capital interests in an unincorporated business enterprise, the requisite business purpose exists and they will be recognized for tax purposes as partners." William S. McKee, *et al.*, *Federal Taxation of Partnerships and Partners* § 1.05[3][a] (3d ed. 1997). Justice Frankfurter, in his (codified) concurring opinion in *Culbertson*, 337 U.S. at 754, put it simply:

> In plain English, if an arrangement among men is not an arrangement which puts them all in the same business boat, then they cannot get into the same boat merely to seek the benefits of [the partnership tax provisions]. But if they are in the same business boat, although they may have varying rewards and varied responsibilities, they do not cease to be in it when the tax collector appears.

Reading *Moline, Culbertson,* and Code § 761 together leads to the conclusion that the existence of an entity legally constituted under State law must be recognized where the purpose at the time of formation is the equivalent of carrying on a

financial/business operation for the joint benefit of the partners or the venture is actually pursued following formation. Any non-tax purpose satisfies the purpose prong. *See Weyerhaeuser Co. v. United States*, 395 F.2d 1005 (Ct. Cl. 1968) (no sham if entity formed for a legitimate business purpose); *Louisville Store of Liberty, Ky., Inc. v. United States*, 376 F.2d 314, 319 (Ct. Cl. 1967) (no sham if entity has "a valid business purpose"); and *A.P. Green Export Co. v. United States*, 284 F.2d 383, 390 (Ct. Cl. 1960) (no sham if a non-tax purpose exists).

**2. Jade's purpose was the "equivalent of business activity" in the form of gaining an advantage under State law, dealing with creditors, and serving the personal or undisclosed convenience of the creators, etc.**

With the three *Moline* examples of the equivalent of business activity and the necessity of only establishing one such purpose firmly in mind, Plaintiffs invite the attention of the Court to this summary of the independently dispositive facts:

a. Jade was formed as a limited liability company under Delaware law for the obvious purpose of providing limited liability for the personal assets of the members. Specifically, the Managing Member formed Jade to obtain limited liability that would otherwise not be available for the general partner of a limited partnership. Whether one calls that limited liability an advantage under State law, dealing with creditors, or the convenience of the creator, it falls squarely within the equivalent of business activity under *Moline*.

b. Consistent with the construction of *Culbertson*'s business purpose by the leading partnership taxation treatise, the five members shared ownership of Jade's capital and were governed by an

agreement to share profits and losses in proportion to their relative capital (subject to the "incentive allocation").

c. As proven by the authorized "Purposes" section in the controlling Jade LLC Agreement, Jade was not simply formed for "the equivalent of business activity": it was formed for the purpose of investing substantially all of its assets in securities including foreign currency derivatives, spot contracts, equities, etc.

d. It then carried through with that mandate, thereby proving its purpose. As noted, it invested in over 25 foreign currency and equity positions in the last three months of 1999, some of which offered the opportunity to double the investment on that position and with others offering a return greater than 30:1.[4]

e. Jade used a limited liability company for the same reason most investment funds use either a limited liability company or a limited partnership: it allows the Managing Member to make centralized decisions on a prompt basis in the midst of market fluctuations. It also allows the pooling of assets to obtain increased leverage, post collateral, and operate more efficiently at lower costs.

f. Further, the Jade LLC Agreement affirmatively aligns the interests of the knowledgeable trading specialists within the Managing Member with the interests of all Members by injecting a result-

[4] Even the IRS recognizes by regulation that a small chance to reap a great return is completely consistent with a business purpose. Treas. Reg. § 1.183-2(c), Ex. (5). Of course, the risk/reward analysis extracted from the prior year's Swiss franc actual performance (20% chance of a 14:1 return) was favorable.

driven, performance-based "incentive allocation" equal to 20% of Net Capital Appreciation. That serves the ultimate business purpose.

Sham allegations should be made of sterner stuff. Turning a blind eye to every one of these uncontroverted purposes is essential to the IRS because every one is independently dispositive.

**CONCLUSION**

Both paths lead to the same destination. The Code §§ 761 and 7701 codification of Justice Frankfurter's concurring opinion in *Culbertson* captures the most straightforward, objective test. Through its expansive definition, it focuses upon what partnerships actually do following formation. Here, Jade did in fact carry on a "financial operation or venture" through, *inter alia*, its extensive investment activities.

Even under the alternative disjunctive element for recognition of entities in *Moline*, the Supreme Court focuses upon the purpose at the time of formation by inquiring into ANY purpose that is the equivalent of business activity such as gaining an advantage under the law, dealing with creditors, etc. Compelling purposes of just that sort are proven in spades here. The IRS, however, has established in the Federal Circuit and the Fifth Circuit that, no matter how improper or impure the purpose, partnerships pursuing any modicum of activity must be recognized.

Respectfully submitted,

DAVID D. AUGHTRY
Georgia Bar No. 028010

LINDA S. PAINE By express permission D. Aughtry
Texas Bar No. 15414000

Chamberlain, Hrdlicka, White,
Williams & Martin
191 Peachtree Street, N.E., Ninth Floor
Atlanta, Georgia 30303
Telephone: (404) 659-1410
Facsimile: (404) 659-1852

COUNSEL FOR PLAINTIFFS

Dated: December 18, 2003

154332.23
002871-000000:12/18/2003