IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JADE TRADING, LLC, by and through ROBERT W. ERVIN AND LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, by and through its agent, the INTERNAL REVENUE SERVICE,<br><br>Defendant. | § § § § § § § § § § § § § § § | NO. 03-2164T<br><br>JUDGE MARY ELLEN COSTER WILLIAMS |

**PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACTS RELATING TO SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT (RELATING TO PARTNERSHIPS RECOGNIZED UNDER CODE § 761)**

Plaintiffs propose that the Court find the three facts, each of which is material, independently dispositive, and not genuinely disputed by competent evidence:

1. Jade, a limited liability company formed under the laws of the State of Delaware, is an unincorporated organization which carried on its financial operation or venture by, *inter alia*, investing in over 25 foreign currency and security positions with unrelated third parties on its own behalf and in its own name during the last quarter of 1999, with additional trading continuing through most of 2000. Bergmann Aff. ¶¶ 11, 13.

2. Jade was formed for a number of purposes, including:

   a. Jade was formed as a limited liability company, as opposed to a limited partnership, to do just that – provide limited liability protection of non-partnership assets for the Managing Member under State law. Bergmann Aff. ¶ 4.

b. The LLC structure allowed Sentinel, as the Managing Member, to make prompt centralized decisions based on market fluctuations. Bergmann Aff. ¶ 4.

c. As confirmed in the authorized "Purposes" section of the controlling "LIMITED LIABILITY COMPANY AGREEMENT OF JADE TRADING, LLC" ("Jade LLC Agreement"), Jade was formed to invest substantially all of its assets in securities including foreign currency derivatives, spot positions, equities, etc. Jade LLC Ag'm't § 1.06.

d. The use of an LLC allowed for pooling of investments to increase leverage, post collateral, and operate with greater efficiency at lower costs. Bergmann Aff. ¶ 4.

e. Jade's LLC Agreement also served the ultimate purpose of motivating the Managing Member to maximize value with a result-driven "Incentive Allocation" of 20 percent of Net Capital Appreciation. Jade LLC Ag'm't. § 3.05(b).

3. The five members of Jade shared capital, profits, and losses. Jade LLC Ag'm't, §§ 3.03, 3.05 (sharing of capital, gains, and losses based on relative capital accounts, subject to "Incentive Allocation").

Additionally, Plaintiffs respectfully requests that the Court find the following foundational facts relating to these matters:

1. Jade was formed on September 21, 1999 as a limited liability company under Delaware law. It is an unincorporated organization that is not a trust or estate. Del. Sec. of State Certification of Formation.

2. Jade's Managing Member formed Jade as a limited liability company instead of a limited partnership to provide itself with limited liability. Bergmann Aff. ¶ 4.

3. As authorized by the Jade LLC Agreement, Jade was formed to invest substantially all of its assets in securities such as foreign currency derivatives, spot

contracts, equities, etc. Jade LLC Ag'm't, § 1.06 (authenticated as Ex. 2 to Bergmann Aff. ¶ 2); Bergmann Aff. ¶ 14.

4. As of October 6, 1999, Jade consisted of five members. They shared joint ownership of the Jade capital in proportion to their capital accounts. Bergmann Aff. ¶ 7; Jade LLC Ag'm't. § 3.04.

5. The Members of Jade also agreed to share profits and losses in proportion to their respective capital accounts, subject to an "Incentive Allocation." Jade LLC Ag'm't. § 3.05.

6. The Jade Limited Liability Company Agreement provided a result-based incentive for Sentinel to identify profitable investments as Jade's Managing Member. That incentive is equal to 20 percent of Net Capital Appreciation. Jade LLC Ag'm't. § 3.05(b); Bergmann Aff. ¶ 5.

7. Jade carried through with its formation purposes by investing in foreign currency derivatives, spot contracts, equities, etc. Bergmann Aff. ¶¶ 8, 11-14.

8. At the time Jade was formed, Sentinel was bullish on the Euro:

a. The Euro was introduced in early 1999 as the new functional currency for members of the European Union who participated in the convergence of European currencies. Bergmann Aff. ¶ 18.

b. During the summer and autumn of 1999, Sentinel and many other investment professionals anticipated that the Euro would appreciate relative to the U.S. dollar. Bergmann Aff. ¶ 19.

c. Sentinel Advisors told Gary Ervin that he and his brothers could potentially obtain returns on the Euro-based knock-out derivative investments of over 30:1. Bergmann Aff. ¶ 22.

d. Sentinel Advisors offered other trading strategies consistent with its approach toward the Euro, in addition to the Euro knock-out options from which Gary Ervin and his brothers could profit from their investments in Jade. Bergmann Aff. ¶ 23.

e. Shortly after its inception, Jade began investing in long positions in the Euro. Contrary to Sentinel's expectations, as well as the expectations of others in the investment community, however, the Euro continued to decline against the U.S. dollar rather than advancing as anticipated. Bergmann Aff. ¶ 24.

f. As the Euro continued its declining trend, Sentinel, on behalf of Jade and other investment funds, reduced its level of trading in Euros. Bergmann Aff. ¶ 25.

9. During the last three months of 1999, Jade invested in over 25 foreign currency and equity transactions. Bergmann Aff. ¶¶ 12, 24.

10. After two months of poor results, the Ervin brothers decided to withdraw. R. Ervin Aff. ¶ 16; G. Ervin Aff. ¶¶ 17-18; Bergmann Aff. ¶¶ 25-27.

11. The Eurodollar later rebounded. Bergmann Aff. ¶ 28.

12. During its 2000 taxable year, Jade continued to invest in other securities. Bergmann Aff. ¶ 13.

13. At all relevant times, Jade conducted its affairs in its own name, separate and distinct from its members. For example, Jade entered into binding contracts in its own name with unrelated third parties. Bergmann Aff. ¶¶ 8, 11.

14. Jade maintained a separate bank account in its own name, as well as a separate brokerage account in its own name at Salomon Smith Barney through which Jade traded equities on its own behalf. Bergmann Aff. ¶¶ 8, 11.

15. Jade consistently treated itself as a partnership for tax purposes and filed a 1999 U.S. Partnership Return. Compl. ¶ 5; Ans. ¶ 5; Bergmann Aff. ¶ 9, Ex. 3.

16. The IRS has treated Jade as a partnership. The IRS initiated a partnership audit of Jade through issuance of a Notice of Beginning of Administrative Proceeding with respect to the audit of Jade as a partnership under the uniform partnership procedures. Bergmann Aff. ¶ 10.

17. On or about April 15, 2003, the IRS issued a notice of Final Partnership Administrative Adjustment ("FPAA") to Jade as a partnership. Compl. ¶ 2, Ex. A and B.

18. In that FPAA, the IRS determined that:

a. Jade was entitled to certain *partnership* deductions; and

b. Jade's *partnership* income should be increased (Compl. ¶¶ 3, 4; Ans. ¶¶ 3-4).

19. However, the FPAA also asserts that Jade should be disregarded as a partnership on the contention it is a sham. FPAA, p. 8, Item 1.

20. The Defendant continues to treat Jade as a partnership for at least some federal tax purposes. Compl. ¶ 5; Ans. ¶ 5 ("Admits that Jade is treated as a partnership for purposes of §§ 6221-6234 of the Internal Revenue Code...").

Respectfully submitted,

DAVID D. AUGHTRY
Georgia Bar No. 028010

LINDA S. PAINE
Texas Bar No. 15414000

Chamberlain, Hrdlicka, White,
Williams & Martin
191 Peachtree Street, N.E., Ninth Floor
Atlanta, Georgia 30303
Telephone: (404) 659-1410
Facsimile: (404) 659-1852

COUNSEL FOR PLAINTIFFS

Dated: December 18, 2003

154563.4
002871-000000:12/18/2003

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **PLAINTIFFS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT (RELATING TO PARTNERSHIPS RECOGNIZED UNDER CODE § 761), MEMORANDUM IN SUPPORT OF SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT, and PROPOSED FINDINGS OF UNCONTROVERTED FACTS RELATING TO SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT** was sent via Federal Express on this 18th day of December, 2003, addressed to:

William K. Drew, Esq.
Eileen J. O'Connor, Esq.
David Gustafson, Esq.
U.S. Department of Justice
Tax Division
Court of Federal Claims
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044

Mr. Ari Bergmann
Sentinel Advisors, LLC
68 Carman Avenue
Cedarhurst, New York 11516

Robert W. Ervin and Laura Kavanaugh
Ervin Capital, LLC
450 Pryor Boulevard, P.O. Box 409
Sturgis, Kentucky 42459

Timothy W. Ervin and Vicki L. Ervin
Ervin Investments, LLC
450 Pryor Boulevard, P.O. Box 409
Sturgis, Kentucky 42459

Gary Ervin and Lisa A. Ervin
Ervin Holdings, LLC
450 Pryor Boulevard, P.O. Box 409
Sturgis, Kentucky 42459

Banque Safra – Luxembourg
c/o Jean-Luc Collot
10A Boulevard Joseph II, B.P. 887
Luxembourg, L-2018

David D. Aughtry