ORIGINAL

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JAN 2 6 2004
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JADE TRADING, LLC, by and through ROBERT W. ERVIN AND LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner, | § | |
| Plaintiffs, | § | NO. 03-2164T |
| v. | § | JUDGE MARY ELLEN COSTER WILLIAMS |
| UNITED STATES OF AMERICA, by and through its agent, the INTERNAL REVENUE SERVICE, | § | |
| Defendant. | § | |

## RESPONSE BY PLAINTIFFS TO DEFENDANT'S RULE 56(f) MOTION

## MEMORANDUM OF AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR RELIEF UNDER RCFC 56(f)

## NICOLE A. ZALENSKI AFFIDAVIT

## JESSE T. MOUNTJOY AFFIDAVIT

## LAWRENCE H. COHEN AFFIDAVIT

David D. Aughtry, Esq.
Linda S. Paine, Esq.
Chamberlain, Hrdlicka, White,
Williams & Martin
191 Peachtree Street, N.E., Ninth Floor
Atlanta, Georgia 30303
Telephone: (404) 659-1410

12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JADE TRADING, LLC, by and through ROBERT W. ERVIN AND LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, by and through its agent, the INTERNAL REVENUE SERVICE,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | NO. 03-2164T<br><br>JUDGE MARY ELLEN COSTER WILLIAMS |

---

RESPONSE BY PLAINTIFFS TO DEFENDANT'S RULE 56(f) MOTION

---

MEMORANDUM OF AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR RELIEF UNDER RCFC 56(f)

---

NICOLE A. ZALENSKI AFFIDAVIT

---

JESSE T. MOUNTJOY AFFIDAVIT

---

LAWRENCE H. COHEN AFFIDAVIT

---

David D. Aughtry, Esq.
Linda S. Paine, Esq.
Chamberlain, Hrdlicka, White,
Williams & Martin
191 Peachtree Street, N.E., Ninth Floor
Atlanta, Georgia 30303
Telephone: (404) 659-1410

# TABLE OF CONTENTS

RESPONSE BY PLAINTIFFS TO DEFENDANT'S RULE 56(f) MOTION ........................ 1

MEMORANDUM OF AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR RELIEF UNDER RCFC 56(f) ........................ 5

PRELIMINARY STATEMENT ........................ 5

OVERVIEW ........................ 7

ISSUES ........................ 9

DISCUSSION ........................ 9

A. WITH NO MISSING "MATERIAL" OR "ESSENTIAL" FACTS, THE COURT SHOULD PROCEED "FORTHWITH" WITH CONSIDERATION OF PLAINTIFFS' FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT. ........................ 10

1. As Defendant tacitly admits, Plaintiffs' First Motion relating to the invalidity of Treas. Reg. § 1.701-2 turns entirely upon a pure question of law. ........................ 10

2. "The practice of the U.S. Claims Court and of the former U.S. Court of Claims in routinely disposing of numerous cases on the basis of cross-motions for summary judgment has much to commend it." *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 627 n.2 (Fed. Cir. 1984) ........................ 11

3. "It is not enough simply to assert . . . that 'something will turn up.'" *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996). ........................ 13

4. "This court has repeatedly addressed the question of when summary judgment can be granted in the absence of discovery." *Brubaker Amusement Co., Inc. v. United States*, 304 F.3d 1349, 1361 (Fed. Cir. 2002). ........................ 16

5. Plaintiffs timely filed the First Motion for Partial Summary Judgment "after the expiration of 60 days from the commencement of the action" under the controlling rules ........................ 18

6. Defendant's authorities actually confirm (i) that partial summary judgments should be used to "*narrow* the scope of discovery" and (ii) that "*delay in ruling* on summary judgment [relating to a pure legal issue] in order to develop the factual record *would be inconsistent with the important policy of requiring expeditious disposition* of motions for summary judgment." E. Brunet, "The Timing of Summary Judgment," 198 F.R.D.) 679, 690 and 697 (2001). ............20

B. DEFENDANT'S RULE 56(f) MOTION CRYSTALLIZES THE PURE LEGAL QUESTION PRESENTED IN PLAINTIFFS' SECOND MOTION IN THE CLEAREST POSSIBLE WAY: "WILL THIS COURT FOLLOW THE PRECEDENT OF THE FEDERAL CIRCUIT AND THE SUPREME COURT--OR NOT? ............22

C. THE FORK IN PLAINTIFFS' THIRD MOTION INVITES SUMMARY JUDGMENT - PARTICULARLY SINCE NO "ESSENTIAL" FACT IS MISSING. ............25

CONCLUSION ............28

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 12, 14

*ASA Investerings Partnership v. Commissioner*, 76 T.C.M. (CCH) 325 (1998), *aff'd*, 201 F.3d 505 (D.C. Cir. 2000), *cert. denied*, 531 U.S. 871 (2000) .......... 25

*Brubaker Amusement Co., Inc. v. United States*, 304 F.3d 1349 (Fed. Cir. 2002) .......... 16, 17

*C.W. Over & Sons, Inc. v. United States*, 44 Fed. Cl. 18 (Fed. Cl. 1999) .......... 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 11, 28

*Chilingirian v. Boris*, 882 F.2d 200 (6th Cir. 1989) .......... 17

*Commissioner v. Culbertson*, 337 U.S. 733 (1949) .......... 23

*Compaq Computer Corp v. Commissioner*, 113 T.C. 214 (1999) .......... 23

*Copeland v. Commissioner*, 290 F.3d 326 (5th Cir. 2002) .......... 22

*Edward L. Stephenson Trust v. Commissioner*, 81 T.C. 283 (1983) .......... 22

*Emmons v. McLaughlin*, 874 F.2d 351 (6th Cir. 1989) .......... 15

*First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968) .......... 13

*Gitlitz v. Commissioner*, 531 U.S. 206 (2001) .......... 22

*Glaros v. H.H. Robertson Co.*, 797 F.2d 1564 (Fed. Cir. 1986) .......... 21

*Horton Homes, Inc. v. United States*, ____ F.3d ____, 2004 WL 77918, at *2 (11th Cir. Jan 20, 2004) .......... 11, 15

*Huss v. King Co., Inc.*, 338 F.3d 647 (6th Cir. 2003) .......... 21

*IES Industries, Inc. v. United States*, 253 F.2d 350 (8th Cir. 2001) .......... 23

*Krim v. BancTexas Group, Inc.*, 989 F.2d 1435 (5th Cir. 1993) .......... 14

*Moline Props., Inc. v. Commissioner*, 319 U.S. 436 (1943) .......... 22, 23

*Nichols v. United States*, 260 F.3d 637 (6th Cir. 2001) .......... 10

*Padilla v. United States*, 58 Fed. Cl. 585 (Fed. Cl. 2003) .......... 14, 15

*Plains Petroleum Company and Subsidiaries v. Commissioner*, T.C. Memo 1999-241 ........ 23

*Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624 (Fed. Cir. 1984) ........ 11, 12, 15

*Securities & Exchange Comm'n v. Spence & Green Chem. Co.*, 612 F.2d 896 (5th Cir. 1980) ........ 14

*Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138 (Fed. Cir. 1996) ........ 13, 14, 15

*Smith v. Commissioner*, 78 T.C. 350 (1982) ........ 26

*Transpac Drilling Venture v. United States*, 83 F.3d 1410 (Fed. Cir. 1996) ... 8, 22, 23, 25

*United Parcel Service of America, Inc. v. Commissioner*, 254 F.3d 1040 (11th Cir. 2001) ........ 23

*Vivid Technologies, Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795 (Fed. Cir. 1999) ........ 20

*Westgate Village Shopping Ctr. v. Lion Dry Goods Co.*, 21 F.3d 429, 1994 WL 108959 (6th Cir. 1994) ........ 17

*Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289 (8th Cir. 1975) ........ 14

*Young-Montenay, Inc. v. United States*, 15 F.3d 1040 (Fed. Cir. 1994) ........ 15

**Rules of the United States Court of Federal Claims**

Rule 26 ........ 13

Rule 26(a)(1) ........ 7, 19

Rule 56 ........ *passim*

Rule 56(a) ........ 6, 18, 19

Rule 56(c) ........ *passim*

Rule 56(d) ........ 21

Rule 56(e) ........ 8, 9, 26

Rule 56(f) ........ *passim*

Appendix A, ¶ 3 .......... 19

Appendix A, ¶ 6 .......... 7, 18, 19

**Federal Rules of Civil Procedure**

Rule 56, Advisory Committee Notes .......... 12, 15, 17

**Federal Rules of Evidence**

F.R. EVID. 901(b)(1) .......... 8, 9, 26, 27

**Internal Revenue Code**

Code § 701 .......... 10, 11

Code § 761 .......... *passim*

Code § 988(a) .......... 25

**Treasury Regulations**

Treas. Reg. § 1.701-2 .......... *passim*

**Miscellaneous**

CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2728 (3d ed. 2003 Pocket Part) .......... 21, 29

E. Brunet, "The Timing of Summary Judgment," 198 F.R.D. 679, 690 and 697 (2001) .......... 20, 21

Francisco J. Navarro, *The Continuing Battle Over Foreign Tax Shelters In the D.C. Circuit: BOCA Investerings Partnership v. United States*, 56 Tax Law. 903, 915 (2003) .......... 24

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JADE TRADING, LLC, by and through ROBERT W. ERVIN AND LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, by and through its agent, the INTERNAL REVENUE SERVICE,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | NO. 03-2164T<br><br>JUDGE MARY ELLEN COSTER WILLIAMS |

**RESPONSE BY PLAINTIFFS TO DEFENDANT'S RULE 56(f) MOTION**

PLAINTIFFS HEREBY OPPOSE Defendant's Motion for Relief under RCFC 56(f)[1] with Respect to Plaintiffs' Motions for Summary Judgment and Brief in Support Thereof ("Defendant's Rule 56(f) Motion"), principally upon the following grounds:

(i) Defendant's Rule 56(f) Motion fails to state a claim for relief under Rule 56(f): it cites no missing fact that is "ESSENTIAL" to any one of the three discrete motions for partial summary judgment, two of which now present pure questions of law and the third of which turns on two properly authenticated option contracts.

(ii) Further, Defendant's Rule 56(f) Motion fails because it is "devoid of any suggestion of how the additional discovery sought would relate to the [summary judgment] issue." *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996).

(iii) The real purpose of Defendant's Motion is delay and distraction while Defendant goes on a "fishing expedition." Defendant's Rule 56(f) Motion dangles the prospect that, given an unlimited amount of discovery, it might

[1] Note that Rule 56 of the Rules of the Court of Federal Claims ("RCFC") is drawn to conform with Rule 56 of the Federal Rules of Civil Procedure ("F.R. Civ. Proc.") subject to certain modest differences not applicable here.

just abandon all the issues that the IRS raised (after the advantage of an extensive audit) and find other issues. Such a request for open-ended discovery to search for new issues is not a basis for invoking Rule 56(f). *See, e.g., Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 386, 1389 (Fed. Cir. 1989).

(iv) Defendant's Rule 56(f) Motion ignores the proper function of the Rule 56 summary judgment procedure, which is to narrow the issues that are actually in the case and avoid the burden of unnecessary discovery.

(v) Rule 56(c) requires in mandatory terms that summary judgment be entered "FORTHWITH" with respect to matters of law for which no genuine dispute exists as to any material (*i.e.*, result altering) fact, and there is no such dispute in this case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

IN SUPPORT OF THIS RESPONSE, Plaintiffs show unto the Court:

1. This action is a partnership proceeding under Code[2] §§ 6221, *et seq.* and RCFC App. F. After almost a year of extensive pre-litigation discovery, Defendant issued the Notice of Final Partnership Administrative Adjustment ("FPAA") on which this case is statutorily and jurisdictionally based. Code §§ 6223, 6226(e).

2. That FPAA asserts five substantive grounds for its adjustments and asserts certain penalties. Four of those five substantive grounds depend upon Treas. Reg. § 1.701-2. With no cited statutory or other authority, the FPAA also asserts that Jade Trading, LLC ("Jade") is somehow a sham and the basis in one option contract should be reduced by the amount received from another. Plaintiffs contested that FPAA and those issues in their Complaint. In its Answer, Defendant then joined those issues.

3. Once it appeared the case would be delayed, Plaintiffs isolated the three discrete points of law arising from Defendant's five substantive grounds. Plaintiffs timely filed a separate motion for partial summary judgment on each of those points, more

---

[2] All section and Code references relate to the Internal Revenue Code of 1986 (26 U.S.C.) as amended through December 31, 1999, unless indicated otherwise.

than 60 days after commencement of the case. Individually, they should narrow the issues: collectively, they should resolve this action.

4. In response, Defendant filed a single Rule 56(f) Motion in which Defendant lumped together Plaintiffs' three discrete motions for partial summary judgment. Just as Defendant consistently seeks to avoid the text of the controlling statutes on the merits, its Rule 56(f) Motion and the accompanying brief consistently avoid the text of Rule 56, adverse substantive Federal Circuit precedent directly on point, and the remarkably extensive body of Federal Circuit authority dealing directly with Rule 56(f). Plaintiffs must ask the Court to reflect upon why the rule of law scares Defendant so.

5. Defendant's amalgamation serves no real purpose other than delay, prejudice, and obfuscation of the reality that Defendant violated the condition precedent to Rule 56(f): nowhere does Defendant correlate its unlimited request for discovery to a fact that is "ESSENTIAL" to any one of Plaintiffs' Motions.

6. There is no genuine dispute as to any fact that is "material" (*i.e.*, result-altering) to any one of Plaintiffs' Motions:

- Plaintiffs' First Motion for Partial Summary Judgment presents a pure question of law with no facts material or essential to its resolution: "Is Treas. Reg. § 1.701-2 valid or invalid?" A critical look at the statute quickly reveals that the regulation has no foundation. *See, e.g., Horton Homes, Inc. v. United States*, __ F.3d __, 2004 WL 77918, at *2 (11th Cir. Jan. 20, 2004).

- As to Plaintiffs' Second Motion, Defendant's Rule 56(f) Motion actually crystallizes it too into a pure question of law: "Is the legal standard for recognition of a partnership governed in the Court of Federal Claims by the precedent of the Federal Circuit or by the precedent of some other circuit?" This requires only an examination of the Federal Circuit authorities governing resolution of this issue. *Transpac Drilling Venture v. United States*, 83 F.3d 1410 (Fed. Cir. 1996).

- Plaintiffs' Third Motion presents a perfect summary judgment question: either the two Euro option contracts Robert Ervin entered through Ervin Capital, LLC are "Section 988 [foreign currency] Transactions" requiring separate treatment, or they are not Section 988 Transactions and a line of cases including *Smith v. Commissioner*, 78 T.C. 350, 373 (1982) still require separate treatment. Contrary to Defendant's determinations in its FPAA, its Rule 56(f) Motion raises the red herring of whether the transactions occurred. The two options are, however, written contracts that Robert Ervin properly authenticated under RCFC Rule 56(e) and F.R. EVID. 901(b)(1). Plaintiffs' Third Motion is ripe for resolution.

7. Consistent with the mandatory words of Rule 56(c), all concerned would be best served by confirming "forthwith" the readily available answers to the three discrete questions of law originally raised by Defendant in its FPAA, pled in Plaintiffs' Complaint, and joined in Defendant's Answer.

8. Plaintiffs invite the attention of the Court to the accompanying Memorandum of Authorities in Opposition to Defendant's Rule 56(f) Motion, as well as the affidavits by Ms. Zalenski and Messrs. Mountjoy and Cohen relating to Defendant's extensive pre-litigation discovery. Plaintiffs request oral argument on these Motions.

WHEREFORE, it is prayed that Defendant's Rule 56(f) Motion be DENIED and the Court consider each of Plaintiffs' three Motions for Partial Summary Judgment.

Respectfully submitted,

DAVID D. AUGHTRY
Georgia Bar No. 028010

LINDA S. PAINE
Texas Bar No. 15414000

By express permission

COUNSEL FOR PLAINTIFFS

Dated: January 26, 2004

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JADE TRADING, LLC, by and through ROBERT W. ERVIN AND LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner, | § | |
| Plaintiffs, | § | NO. 03-2164T |
| v. | § | JUDGE MARY ELLEN COSTER WILLIAMS |
| UNITED STATES OF AMERICA, by and through its agent, the INTERNAL REVENUE SERVICE, | § | |
| Defendant. | § | |

**MEMORANDUM OF AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR RELIEF UNDER RCFC 56(f)**

Plaintiffs offer this memorandum as a discussion of the authorities that preclude the RCFC 56(f) delay Defendant seeks with respect to each of the three discrete Motions for Partial Summary Judgment filed by Plaintiff. Under RCFC 56(c), the Court should narrow this litigation by considering the discrete legal question presented by each of those Motions. Together, they should resolve this partnership proceeding.

**PRELIMINARY STATEMENT**

Pursuant to its statutory powers, Defendant conducted extensive pre-litigation discovery in which it obtained at least **9,602** pages of documents and effectively deposed all the witnesses it deemed to possess relevant information. Based on that discovery, Defendant issued the Notice of Final Partnership Administrative Adjustment ("FPAA") on which this case is based. That FPAA asserts five substantive grounds for its partnership adjustments. Four of those turn on the validity of Treas. Reg. § 1.701-2.

One of those four grounds also included a naked "sham" allegation and the fifth seeks to offset the tax basis between the two option contracts Robert Ervin entered through Ervin Capital, LLC. Plaintiffs filed their Complaint on September 12, 2003, contesting the FPAA and its five substantive contentions. Defendant then filed its Answer on November 12, 2003, joining the issues and generally denying most of the allegations in the Complaint, other than admitting the existence of Jade Trading LLC ("Jade") and that Jade is a partnership for various purposes. Compl. ¶¶ 3-5; Ans. ¶¶ 3-5.

When it became apparent the case would be delayed, Plaintiffs identified the three discrete points of law upon which Defendant's five substantive grounds are based. To ensure clarity of analysis by the parties, Plaintiffs prepared separate motions for partial summary judgment isolating each discrete point of law. Those three summary judgment motions were served on December 19, 2003, more than 60 days after the commencement of the case as provided by Rule 56(a).

In response, Defendant filed a single Motion for Relief Under RCFC 56(f) with Respect to Plaintiffs' Motions for Summary Judgment and Brief in Support ("Defendant's Rule 56(f) Motion") on January 9, 2004. Defendant's Rule 56(f) Motion lumps all three discrete questions and summary judgment motions together and seeks to delay their consideration indefinitely while Defendant searches for new issues through additional discovery Defendant estimates will take an indefinite number of years. Def. Rule 56(f) Br., pp. 19-20. Defendant cites no "essential" missing fact relating to any one of the three discrete questions of law presented by the three motions.

## OVERVIEW

Defendant's Rule 56(f) Motion tests the Court's commitment to the rule of law. The rule of law is either the rule when the IRS does not like the result or it is no rule at all: it is governance at the caprice of the Commissioner. Defendant proves Plaintiffs' point, for Defendant substitutes pejoratives and prejudice for the plain meaning of this Court's rules in an effort to avoid the statutes enacted by Congress.

Plaintiffs seek three straightforward answers to each of the three straightforward questions of law arising from the five substantive grounds *Defendant chose to assert*. Individually, they properly narrow this litigation by eliminating the legally irrelevant; collectively, they resolve this partnership level dispute and allow the partners to defend themselves at the individual level. For reasons Plaintiffs hope are obvious to the Court, Defendant seeks to evade those straightforward questions and answers.

In mandatory terms, Rule 56(c) entitles every party to summary judgment "forthwith" on any matter of law for which no genuine dispute exists as to a fact that is "MATERIAL"/"RESULT-ALTERING" on *that* point of law. Rule 56(f) compliments 56(c) because it only allows a delay for the limited purpose of discovering facts that are "ESSENTIAL" to the summary judgment opposition. As Defendant's authorities confirm, the laudable goal of the Rule 56 summary judgment procedure is to narrow issues and protect parties from years of legally irrelevant litigation of the very sort threatened by Defendant. The only time limitation placed upon RCFC 56 is the 60 day requirement which Plaintiffs satisfied and Defendant never mentions. That period conforms with the periods provided for Joint Preliminary Status Reports by RCFC, App. A, ¶ 6 and for initial disclosures by RCFC 26(a)(1). This Court's rules create no conflict.

Defendant fails to satisfy the condition precedent clearly stated in Rule 56(f) as it relates to the three discrete questions of law: as the party opposing summary judgment, Defendant must show that it

> ...cannot for reasons stated present by affidavit FACTS ESSENTIAL to justify the party's opposition [to the pending summary judgment motion]...(Emphasis added).

No "facts essential" to any one of Plaintiffs' three Motions are missing.

Plaintiffs' First Motion for Partial Summary Judgment focuses upon the invalidity of the most highly criticized Treasury Regulation over the past 20 years – a pure question of law turning on no facts. As to the Second Motion, Defendant's Rule 56(f) Motion actually crystallizes the precise legal question: does the Court of Federal Claims follow the precedent of the Federal Circuit relating to partnership recognition, or do cases from other circuits trump? Consistent with recent Supreme Court tax authority, the Federal Circuit follows the plain meaning of Code § 761 recognizing partnerships, notwithstanding improper or impure purposes. *Transpac Drilling Venture v. United States*, 83 F.3d 1410 (Fed. Cir. 1996). Without citing the Federal Circuit authority directly on point, Defendant overstates a "new standard" in three cases from two other circuits. The issue then is "whose precedent controls?" The Third Motion presents a classic summary judgment situation: the two Euro options are either "Section 988 Transactions" and must be treated separately by statute, OR they are *not* "Section 988 Transactions" and must be treated separately by caselaw. Defendant raises the red herring of existence of the options. Those options, however, are written contracts that Robert Ervin properly authenticated under RCFC 56(e) and F.R. EVID. 901(b)(1). The Court should proceed under Rule 56(c) with consideration of summary judgment.

## ISSUES

Is Defendant's Motion for Relief under RCFC 56(f) proper when

- it identifies no "essential" fact relating to Plaintiffs' First Motion for Partial Summary Judgment and specifies no discovery that would produce an essential fact;
- it crystallizes the issue in Plaintiffs' Second Motion for Partial Summary Judgment into a pure legal issue; and
- it points to no fact (and none exists) which would give rise to a genuine factual dispute in Plaintiffs' Third Motion for Summary Judgment?

## DISCUSSION

One word precludes Defendant's delay under Rule 56(f) – "essential."[3] No fact is "essential" to the First Motion: it focuses exclusively on this simple question of law, "is Treas. Reg. § 1.701-2 valid or invalid?" Nor does any fact impact the dispositive choice of precedent under the Second Motion. And the only fact related to the Third Motion has been effectively admitted in Defendant's FPAA and properly authenticated under Rule 56(e) and F.R. EVID. 901(b)(1). Neither the Court nor Plaintiffs should endure years of delay and continuation of Defendant's already horribly expensive discovery, while Defendant defers answers to these three clear questions of law.

[3] Rule 56(f) of the Rules of the Court of Federal Claims ("RCFC"):

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit ***facts essential*** to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. (Emphasis added).

A. <u>**WITH NO MISSING "MATERIAL" OR "ESSENTIAL" FACTS, THE COURT SHOULD PROCEED "FORTHWITH" WITH CONSIDERATION OF PLAINTIFFS' FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT.**</u>

1. <u>**As Defendant tacitly admits, Plaintiffs' First Motion relating to the invalidity of Treas. Reg. § 1.701-2 turns entirely upon a pure question of law.**</u>

The validity of the regulation upon which Defendant relies for FOUR out of FIVE of its substantive grounds presents a pure question of law ideally suited for summary judgment. *See, e.g., Nichols v. United States*, 260 F.3d 637, 641 (6th Cir. 2001). Consider the simplicity of the purely legal question presented by Plaintiffs' First Motion: "Is Treas. Reg. § 1.701-2 valid or invalid?" The answer is actually much easier now than when the First Motion was filed, for the Eleventh Circuit just handed down an extraordinarily succinct, clear, and unnervingly applicable statement of the standard for construction of statutes such as Code § 701 in the face of a detached regulation like Treas. Reg. § 1.701-2:

> We review an agency's interpretation of a federal statute by using the two-step process articulated by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 277 8 (1984). *Southern Co. v. F.C.C.*, 293 F.3d 1338, 1343 (11th Cir. 2002). As we have stated,
>
> > *Chevron's* first step requires us to ascertain whether Congress has spoken unambiguously 'to the precise question at issue.' If the language of the statute is unambiguous, we go no further, for we must give effect to clear congressional intent. If, however, we determine that Congress's intent is ambiguous as to the question at issue, we must move on to the second step of the *Chevron* test and ask whether the agency's interpretation of congressional intent is reasonable.
>
> *Id.* (citing *Chevron*, 467 U.S. at 842-43, 104 S. Ct. at 2781-82). Our first step, therefore, is to determine whether the language of § 405(a)(1)(E) is clear or in need of agency interpretation. "[T]he starting point for

> interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447, U.S. 102, 108, 100 S. Ct. 2051, 20 56 (1980). Moreover, "[a]s a basic rule of statutory interpretation, we read the statute using the normal meanings of its words...'[A]bsent a clearly expressed legislative intent to the contrary, that language is generally dispositive.'" *Consolidated Bank, N.A. v. United States Dep't of Treasury*, 118 F.3d 1461, 1463 (11th Cir. 1997) (quoting *Gonzalez v. McNary*, 980 F.2d 1418, 1420 (11th Cir. 1993)).

*Horton Homes, Inc. v. United States*, _____ F.3d _____, 2004 WL 77918, at *2 (11th Cir. Jan 20, 2004). A two minute comparison between Congress' clear and expansive definition of partnerships in Code § 761, the clarity of Code § 701, and the disconnected confusion of Treas. Reg. § 1.701-2 ends that analysis.

After reading Plaintiffs' Memorandum in Support of their First Motion, Defendant now represents that this regulation upon which it placed such great reliance is no longer "vital" and is somehow not "before the Court for decision." Def. Br., p. 15. Those contentions are very telling. No stronger admission could be made that the regulation (on which Defendant bases FOUR of its FIVE substantive grounds) is infirm and this litigation should be narrowed. Under the mandatory terms of Rule 56(c), Plaintiffs must ask the Court to narrow this litigation by considering their pending First Motion "forthwith." The parties need an answer.

**2. "The practice of the U.S. Claims Court and of the former U.S. Court of Claims in routinely disposing of numerous cases on the basis of cross-motions for summary judgment has much to commend it." *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 627 n.2 (Fed. Cir. 1984).**

The precedent of this Court and its predecessor foreshadowed the principle embraced by the Supreme Court in the seminal summary judgment case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986), where the Supreme Court stated:

> The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact. Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed. Rule Civ. Proc. 1; *see Schwarzer,* Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984).

RCFC 56(c) enforces these summary judgment principles in mandatory terms by requiring entry of judgment "forthwith" as to matters of law for which no genuine dispute exists as to a "material fact":

> The judgment sought **shall be rendered forthwith** if the pleadings ... together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. (Emphasis added).

The tradition of this Court and its predecessor also commends use of summary judgments. *Pure Gold*, 739 F.2d at 627, n.2. The requirement that judgment be entered "forthwith" mirrors the fundamental purpose of this procedure. F.R. CIV. PROC. 56, ADVISORY COMM. NOTES, 1937 Adoption ("Summary judgment procedure is a method for *promptly* disposing of actions..."). Moreover, "material" fact means "result-altering", as the Supreme Court confirmed in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). That logical definition and approach conforms with the condition precedent stated in Rule 56(f) – summary judgment can only be avoided on the claim of needed discovery if the discovery relates to a fact that is "ESSENTIAL" (*i.e.,* result-altering) to the summary judgment in question. No fact can be result-altering where a court is presented with a pure question of law.

### 3. <u>"It is not enough simply to assert . . . that 'something will turn up.'" *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996)</u>.

To sustain a Rule 56(f) Motion, Defendant must state in its affidavit, the specific facts it needs to discover and how that discovery relates to "MATERIAL" facts that are genuinely disputed and "ESSENTIAL" to the summary judgment motion.[4] Defendant names certain broad areas of inquiry without identifying any specific fact, document, or witness that would create a genuine dispute as to a material fact on any one of the three Motions. Def. Mot., pp. 8-9; Drew Decl. ¶ 15. NOT ONE OF THOSE SIX AREAS REMOTELY RELATES TO WHETHER TREAS. REG. § 1.701-2 IS INVALID OR VALID. Amazingly, Defendant fails to cite a single countervailing document among the 9,000 pages in its possession that refutes a single "essential" fact. Instead, it speculates as to what issues and facts the future may hold. Unlike the affidavit in *Simmons Oil*, Defendant does not even assert that the proposed discovery "may well yield information that would be relevant to the issue posed." Instead, Defendant's sole affidavit states that "Defendant ***may*** identify further matters requiring discovery." (Drew Decl. ¶ 15). While Defendant identifies no fact "essential" to the three pending points of law it generally asserts that it wishes to "**EXPLORE.**" (Drew Decl. ¶ 15; emphasis added). Defendant speculates both on the hope of finding some new issue and then finding some essential fact relating to that new issue. Such double barrel speculation does not satisfy Rule 56(f).

---

[4] Even where Rule 56(f) discovery is needed, it should be limited to the essential fact as opposed to the broader discovery permitted under Rule 26. *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 265 (1968).

Vague "fishing expeditions" violate the requirements of Rule 56 as recognized by the decisions of this Court, the Federal Circuit, the Supreme Court, and other courts. *Anderson,* 477 U.S. 242, 250 (1986) (To determine whether a genuine factual issue exists for trial, Rule 56(e) requires "the adverse party to 'set forth ***specific facts*** showing that there is a genuine issue for trial'"); *Simmons Oil,* 86 F.3d at 1144, *citing Securities & Exchange Comm'n v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980) ("The party 'may not simply rely on vague assertions that additional discovery will produce needed, **but unspecified**, facts'"); *C.W. Over & Sons, Inc. v. United States,* 44 Fed. Cl. 18, 23 (Fed. Cl. 1999) ("To obtain discovery, the party must state, by affidavit, ***explicit reasons*** why discovery is required ***in opposition to the motion for summary judgment***").

"In moving for relief under Rule 56(f), a party must demonstrate *specifically* 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *Simmons Oil,* 86 F.3d at 1144, *citing Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975) . *See also, Keebler Co.*, 866 F.2d at 1389. "[T]he movant is 'required to **state with some precision the materials** he hope[s] to obtain with further discovery, and **exactly how he expect[s] those materials would help him in opposing summary judgment.**'" *Simmons Oil,* 86 F.3d at 1144, *citing Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1443 (5th Cir. 1993) (Emphasis added). *See also, Padilla v. United States*, 58 Fed. Cl. 585, 593 (Fed. Cl. 2003) ("The party must set forth **'with some precision,'** the evidence it hopes to obtain, *how this evidence would likely disclose issues of **material** fact*, and why it is unable to access such evidence

without further discovery": emphasis added). **"It is not enough simply to assert . . . that 'something will turn up.'"** *Simmons Oil,* 86 F.3d at 1144. Mere assertions or conclusory allegations are insufficient. *See also, Young-Montenay, Inc. v. United States*, 15 F.3d 1040, 1042-43 (Fed. Cir. 1994); *Emmons v. McLaughlin*, 874 F.2d 351, 356-57 (6th Cir. 1989). As the 1963 F.R. CIV. PROC. ADVISORY COMMITTEE NOTES confirm, the contents of the Answer, are meaningless.

In *Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 1386, 1389 (Fed. Cir. 1989), the Federal Circuit stated that "[i]f all one had to do to obtain a grant of a Rule 56(f) motion were to allege possession by movant of 'certain information' and 'other evidence', every summary judgment decision would have to be delayed while the non-movant goes fishing in the movant's files." In *Keebler*, the Federal Circuit stated the following about Keebler's affidavit: "it is difficult to interpret Keebler's affidavit support for its discovery motions as saying anything more than, **'we have no factual basis for opposing summary judgment, but, if you stay proceedings, we *might* find *something*.'**" *Id.* That is exactly the import of Mr. Drew's affidavit. (Drew Decl. ¶ 15.)

Mr. Drew's speculation as to imaginary issues and facts is much weaker than the Keebler affidavit and the statements made in other cases denying a Rule 56(f) delays. Because "[t]his Court will not permit discovery 'merely to satisfy **a litigant's speculative hope** of finding some evidence that might tend to support a complaint,'" it should deny Defendant's Motion. *Padilla*, 58 Fed. Cl. at 593, *citing Pure Gold, Inc.*, 739 F.2d at 627. Defendant's delay tactic of "discovery for discovery's sake" is prohibited. Again, the Court should move to consideration of the First Motion made easier by *Horton Homes*.

4. **"This court has repeatedly addressed the question of when summary judgment can be granted in the absence of discovery."** ***Brubaker Amusement Co., Inc. v. United States,*** **304 F.3d 1349, 1361 (Fed. Cir. 2002).**

While Defendant does admit that the "Department of Justice has received copies of Documents from the IRS with respect to Jade Trading" (Drew Decl. ¶ 15), Defendant fails to recite the sheer number of documents that it obtained in pre-litigation discovery (9,602 pages according to the IRS) or acknowledge that Defendant – not Plaintiffs – is withholding 41% of those pages. Everything the IRS requested from Plaintiffs (other than a handful of privileged documents) was duly produced. Defendant fails to tell the Court that it already pursued extensive pre-litigation discovery in this case for almost a year, and during that year it obtained some 9,602 pages of documents and effectively deposed all the witnesses it thought were important to its case. The IRS interviewed Robert Ervin, Tim Ervin, and Gary Ervin at length on April 9, 2003 in Owensboro, Kentucky and essentially deposed Ari Bergmann of Sentinel in October of 2003 in New York. Defendant further fails to mention that after reviewing the documents and interviewing all the witnesses it deemed important, Counsel for the IRS and the Internal Revenue Agents concluded that four of the five grounds in this case should be based on Treas. Reg. § 1.701-2.

The Court must question why Defendant needs any additional discovery and repeatedly leads the Court to believe that lack of discovery bars summary judgment. (Drew Decl. ¶ 13, ¶ 15). In fact, no rule requires any discovery before deciding a motion for summary judgment. As the Federal Circuit stated in *Keebler Co*:

> Before us Keebler relies entirely on its having had no discovery at all, noting that requests denied in earlier cases were for additional discovery. Rule 56(f), however, makes no such distinction; on the contrary, the Rule requires that each request for discovery be adequately supported by a

> showing of need. No rule requires a granting of unfocused requests of the type presented in Keebler's affidavits in this case and the board did not abuse its discretion in denying Keebler's motions. *Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 1386, 1390 (Fed. Cir. 1989.

*Accord, Chilingirian v. Boris,* 882 F.2d 200, 203 (6th Cir. 1989) ("Hence, although no discovery had occurred by the time of the district court ruling there is no evidence that discovery would have disclosed disputed material facts in support of [the] claim"); *Westgate Village Shopping Ctr. v. Lion Dry Goods Co.,* 21 F.3d 429, 1994 WL 108959 (6th Cir. 1994) ("[S]ummary judgment is appropriate even where no discovery has occurred, if there is no showing that discovery would have disclosed disputed material facts."). In *Brubaker*, the Government itself cut off a citizen's attack upon regulations by arguing the opposite of what it urges upon this Court. As the Federal Circuit stated:

> This court has repeatedly addressed the question of when summary judgment can be granted in the absence of discovery. In *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, this court stated that "[s]ummary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." 739 F.2d 624, 627, 222 USPQ 741, 744 (Fed.Cir.1984). In *Keebler Co. v. Murray Bakery Products,* this court stated that "[a] party may not simply assert that discovery is necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." 866 F.2d 1386, 1389, 9 USPQ2d 1736, 1739 (Fed.Cir.1989) (citations omitted); *accord Sweats Fashions, Inc., v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1567, 4 USPQ2d 1793, 1799 (Fed.Cir.1987) (citations omitted). *Brubaker Amusement Co.*, 304 F.3d at 1361.

Rule 56 is deliberately drawn to encourage the early resolution of case through summary judgment. As confirmed by the 1946 F.R. CIV. PROC. ADVISORY COMMITTEE NOTES, Rule 56 was changed to permit summary judgment PRIOR TO FILING THE ANSWER – not to mention discovery – for the purpose of obtaining earlier resolution.

**5. <u>Plaintiffs timely filed the First Motion for Partial Summary Judgment "after the expiration of 60 days from the commencement of the action" under the controlling rules.</u>**

Just as Defendant's substantive positions ignore the plain meaning of the controlling statutes on the merits, Defendant avoids mentioning the specific text in the controlling rules relating to Defendant's repeated timeliness accusations.

Rule 56 states one timing requirement for the filing of a summary judgment motion and only one timing requirement. A party such as Robert Ervin or Jade may seek summary judgment:

> ...at ANY TIME AFTER THE EXPIRATION OF 60 DAYS from the commencement of the action...

RCFC 56(a) (Emphasis added). Plaintiffs repeatedly pointed out their compliance with this 60 day rule, but none of Defendant's timeliness accusations mention it. Plaintiffs invite the Court to draw its own conclusions about this omission.

Defendant also repeatedly asserts that the summary judgment motions are untimely because they precede the Joint Preliminary Status Report. Not once does Defendant ever mention the explicit timing provisions in the controlling rule. As the Court is well aware, the Joint Preliminary Status Report rules are set forth in RCFC, Appendix A. Paragraph 6 of that Appendix explicitly provides:

> Unless otherwise ordered, the Joint Preliminary Status Report shall be ***deferred indefinitely*** if on or ***before the date the Joint Preliminary Status Report is due a dispositive motion addressing all issues is filed.***

RCFC, App. A, ¶ 6 (Emphasis added). While the three discrete motions are segregated for clarity of analysis, they dispose of all the substantive issues raised by the FPAA, contested by the Complaint, and joined by the Answer. If granted, nothing would

remain at the partnership level. Defendant simply reverses the filing sequence contemplated by RCFC, App. A, ¶ 6, so that Defendant may assert the exact opposite of what the rules provide.

Defendant's repeated assertions as to initial disclosures also ignore the text. Specifically, Rule 26(a)(1) provides in its flush language that the "disclosures must be made within 14 days *after* the filing of the Joint Preliminary Status Report" absent stipulation, court order, or objection to the filing of initial disclosures. Because "the filing of the Joint Preliminary Status Report" is deferred under RCFC, App. A, ¶ 6, the initial disclosures are necessarily deferred under Rule 26(a)(1).

As to the early meeting of counsel, Paragraph 3 of Appendix A states no specific time for the meeting other than it should occur between the filing of the Answer and within sufficient time to file the Joint Preliminary Status Report – as deferred by the dispositive motions. RCFC, App. A, ¶¶ 3, 6. Nowhere does Paragraph 3 override the 60 day rule in Rule 56(a) or alter the Joint Preliminary Status Report deferral rule in App. A, ¶ 6. Counsel for Plaintiffs, nonetheless, "communicated with [the original] defense counsel" on a number of occasions – including communicating Plaintiffs' view that the case could be resolved as a matter of law by the three dispositive motions. When told that new Counsel for Defendant would be handling the case, Counsel for Plaintiff also tried (unsuccessfully) to reach new Counsel for Defendant on several occasions. Further, Counsel for Plaintiff has supplied most of the information contemplated by RCFC, App. A, ¶ 3 and is scheduled to fly to Washington at Plaintiffs' expense to meet with opposing counsel on a face-to-face basis on February 2, 2004. No meeting, however, could alter this truth: the First Motion turns on no fact.

6. **<u>Defendant's authorities actually confirm (i) that partial summary judgments should be used to "*narrow* the scope of discovery" and (ii) that "*delay in ruling* on summary judgment [relating to a pure legal issue] in order to develop the factual record *would be inconsistent with the important policy of requiring expeditious disposition* of motions for summary judgment." E. Brunet, "The Timing of Summary Judgment," 198 F.R.D. 679, 690 and 697 (2001).</u>**

Just as Defendant avoids the extensive precedent of the Federal Circuit relating to the merits, Defendant carefully avoids the extensive precedent of the Federal Circuit relating to Rule 56(f).[5] Instead, Defendant relies upon selective excerpts from an article, a treatise, and a handful of cases at odds with the precedent of this Court.

Defendant seems to rely primarily on excerpts from an article by Mr. Brunet but that article reflects principles that should be dispositive here. Plaintiffs invite the attention of the Court to the article as a whole, with particular emphasis on three points:

> Rule 56(f) affidavits tell the court what information the nonmovant hopes to gain from the additional time. The affidavit will also enable courts to 'protect nonmovants from harassment and fishing expeditions' and **narrow the scope of discovery** by showing exactly what discovery is needed to dispose of the summary judgment motion.
>
> * * *
>
> A non-movant who desires the extra time provided by Rule 56(f) has a duty to show 'how postponement of a ruling on the motion for summary judgment will enable him, by discovery of other means, to rebut the movant's showing of the absence of a genuine issue of fact.' **Where the nonmovant fails 'to specify what discovery is needed... the matter is ripe for disposition.**
>
> * * *

[5] The one notable exception is *Vivid Technologies, Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795 (Fed. Cir. 1999), which Defendant cites for the proposition that summary judgment is inappropriate where the opposing party peculiarly lacks access to the facts. What Defendant fails to tell the Court and Plaintiffs is that Defendant possesses at least 9,602 pages of documents and REFUSES TO SUPPLY APPROXIMATELY 41% (3,966 pages) OF THOSE TO PLAINTIFFS. To our censored knowledge, Defendant has all relevant documents peculiarly within its possession and is withholding many of those.

> [T]he mere fact that no discovery has been undertaken does not mean that courts automatically should or will grant a Rule 56(f) motion. It may be that further discovery will still not enable the nonmovant to produce facts which will show there to be a genuine issue of material fact for trial. Moreover, it may be clear that the movant is entitled to summary judgment "as a matter of law" on a pure legal issue, regardless of what future discovery might show. . . . In these situations, **delay in ruling on summary judgment** in order to develop the factual record **would be inconsistent with the important policy of requiring expeditious disposition** of motions for summary judgment.

E. Brunet, 198 F.R.D. at 690, 694, and 697. (Emphasis added). Defendant's indefinite delay cannot be reconciled with any of the three points of law.

Defendant also cites Wright & Miller but that treatise calls for the same conclusion. CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2728 (3d ed. 2003 Pocket Part) ("[T]he court is authorized . . . by Rule 56(d) to enter a ***partial summary judgment***. By using these alternatives to a total grant or denial of summary judgment **the court is able to shape the litigation and make certain it progresses in an orderly fashion**": emphasis added). Surprisingly, Defendant cites the same section but omits this passage.

The two Circuits whose precedent applies to Defendant's Rule 56(f) Motion for this Kentucky company, also recognize that narrowing the issues through partial summary judgment serves an important function in streamlining litigation. *See Glaros v. H.H. Robertson Co.*, 797 F.2d 1564 (Fed. Cir. 1986); *Huss v. King Co., Inc.*, 338 F.3d 647 (6th Cir. 2003). Defendant's argument effectively reads Rule 56(d) ("Case Not Fully Adjudicated on Motion") and 56(f) out of the rules. Those important provisions are meaningless if summary judgment requires *full* resolution – *after* discovery is closed. To give meaning to this Court's rules and the controlling precedent, Plaintiffs renew their requests that the Court separately consider the three discrete points of law.

B. <u>**DEFENDANT'S RULE 56(f) MOTION CRYSTALLIZES THE PURE LEGAL QUESTION PRESENTED IN PLAINTIFFS' SECOND MOTION IN THE CLEAREST POSSIBLE WAY: "WILL THIS COURT FOLLOW THE PRECEDENT OF THE FEDERAL CIRCUIT AND THE SUPREME COURT--OR NOT?"**</u>

Defendant's Rule 56(f) Motion now crystallizes the question presented by Plaintiffs' Second Motion into the purest possible question of law. The question now is whether this Court will follow the precedent of the Federal Circuit directly on point, or will cases from another circuit trump?

As the Court will recall, much of Plaintiffs' Memorandum in Support of their Second Motion was devoted to the point of law the government itself established in *Transpac Drilling Venture v. U.S.*, 83 F.3d 1140, 1414 (Fed Cir. 1996). There, the Federal Circuit remained true to the statute Defendant seeks to avoid. The Court held:

> Transpac was a partnership under the Internal Revenue Code *even though it was organized and operated for improper or illicit purposes*. . . . [T]he broad definition of 'partnership' in the Internal Revenue Code [§ 761] does not limit such entities to those organized for lawful businesses."

*Transpac Drilling Venture*, 83 F.3d 1410 at 1414. (Emphasis added). *Accord: Copeland v. Commissioner*, 290 F.3d 326 (5th Cir. 2002).

The Federal Circuit's holding foreshadowed recent Supreme Court tax cases which refuse to elevate IRS allegations of abuse over the plain meaning of statutes. *Gitlitz v. Commissioner*, 531 U.S. 206, 220 (2001). *See also, Edward L. Stephenson Trust v. Commissioner*, 81 T.C. 283, 288 (1983) (Court rejected IRS allegations of abuse in trust area). *Transpac* is also consistent with the *disjunctive* test for entity recognition in the early Supreme Court case of *Moline Props., Inc. v. Commissioner*, 319 U.S. 436, 439 (1943). To be sure, the enactment of Code § 761 preempts *Moline*

*Properties* and cases of that era such as *Commissioner v. Culbertson*, 337 U.S. 733, 742 (1949). Congress, however, codified in § 761 the second element of the *Moline disjunctive* test for entity recognition:

> Whether the purpose be to gain an advantage under the law . . . or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity **OR** is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. (Emphasis added).

Specifically, Congress defines partnerships as "...ANY unincorporated organization through or by means of which ANY business, financial operation, OR venture is carried on [other than a corporation, trust or estate]" Code § 761 (emphasis added). The Federal Circuit properly followed that statute. Remarkably, Defendant avoids discussing or even citing the controlling Federal Circuit authority despite the reality that Defendant's sole affiant was counsel of record in *Transpac*.

Rather, Defendant cites three cases from two other circuits and makes the startling representation *in its counsel's sworn declaration* that "in view of the Government's success in challenging shelters." Drew Decl., ¶ 15. Actually, Defendant's affidavit omits those cases that prove the contrary.[6] Defendant's cases treat *Moline Properties* as a *conjunctive* test (requiring both the carrying on of a "financial operation or venture" *and* a separate non-tax business purpose for forming

---

[6] *See United Parcel Service of America, Inc. v. Commissioner*, 254 F.3d 1040 (11th Cir. 2001) (Eleventh Circuit rejected IRS allegations of tax shelter sham and held that offshore reinsurance transactions carried "economic effect"); *Compaq Computer Corp v. Commissioner*, 113 T.C. 214 (1999) (Fifth Circuit rejected IRS tax shelter sham allegations regarding ADR trades); *IES Industries, Inc. v. United States*, 253 F.2d 350 (8th Cir. 2001) (Eighth Circuit followed *Compaq* holding); *Plains Petroleum Company and Subsidiaries v. Commissioner*, T.C. Memo 1999-241 (Tax Court rejected IRS shelter abuse allegations under Code § 269 regarding acquisition of subsidiary with $84 million NOL).

the partnership). They then melt that conjunctive test into a unified test and override the plain meaning of Code § 761 with the purpose element Congress never codified. The "new test" in those cases has been criticized as "dangerous." *See* Francisco J. Navarro, *The Continuing Battle Over Foreign Tax Shelters In the D.C. Circuit: BOCA Investerings Partnership v. United States*, 56 Tax Law. 903, 915 (2003). The new standard embraced by the D.C. Circuit deprives citizens of the right to choose the form of their business when, as with S Corporations and partnerships seeking to avoid double taxation, the choice is tax driven. *Id.* The same is true of IRA's, 401-K's, *etc.*

Aside from the pure question of law regarding what circuit's precedent controls in the Court of Federal Claims, Defendant's three cases are interesting for other reasons. First, all confirm that an entity must be recognized unless it serves "NO BUSINESS PURPOSE." That, of course, refutes the "principal purpose" test Defendant uses to reverse 60 years of judicial precedent in Treas. Reg. § 1.701-2.

Second, Defendant effectively admits that Jade must be recognized under the alternative prong of Plaintiffs' Second Motion: Defendant cannot and does not dispute that Jade was formed for the purpose of trading in securities ("the equivalent of business activity"), serves the purpose *dictated in its Operating Agreement* of providing limited liability to its Managing Member, or any of the other incontrovertible purposes outlined at Plaintiffs' Memo in Support, pp. 2-3. NOR DOES DEFENDANT EVER STATE THAT ANY DISCOVERY UNDER RULE 56(f) WOULD EVER ALTER THOSE IMMUTABLE FACTS. Hence, Jade must be recognized as a matter of law even under Defendant's "no business purpose" test.

Third, *ASA Investerings Partnership v. Commissioner,* 76 T.C.M. (CCH) 325 (1998), *aff'd,* 201 F.3d 505 (D.C. Cir. 2000), *cert. denied,* 531 U.S. 871 (2000) in particular punctuates why the partnership was disregarded there and must be recognized here. There, one of the three ostensible "partners," ABN, was not a true partner – it was an agent barred from sharing in any of the profits, losses, expenses, and risk. By contrast, Defendant never disputes the fact the leading partnership authority in the nation says is DISPOSITIVE: the controlling Jade Operating Agreement undeniably dictated that ALL FIVE MEMBERS SHARE IN CAPITAL, PROFITS, AND LOSSES. If Plaintiffs and the leading partnership tax authority are correct on this point of law, any further inquiry via Rule 56(f) discovery would, as a matter of law, be academic.

Most importantly, this Court must follow the law of the Federal Circuit, as established by Defendant in *Transpac*. Now that the Federal Circuit precedent does not fit Defendant's liking, Defendant is hiding behind cases from other circuits. Defendant made its Federal Circuit precedential bed, this Court should require Defendant to lie in it.

## C. <u>THE FORK IN PLAINTIFFS' THIRD MOTION INVITES SUMMARY JUDGMENT - PARTICULARLY SINCE NO "ESSENTIAL" FACT IS MISSING.</u>

Plaintiffs' Third Motion presents a perfect subject for partial summary judgment:

- Either the two foreign currency options Robert Ervin acquired through Ervin Capital are "Section 988 [foreign currency] Transactions" and, as a matter of law, must be treated separately under Code § 988(a), OR

- They are *not* Section 988 Transactions and, as a matter of law, *Smith v. Commissioner*, 78 T.C. 350, 373 (1982), *inter alia*, requires that they be treated separately.

In short, Defendant's contention has been rejected by both Congress and the Courts.[7]

Aside from the reality that Robert Ervin purchased a foreign currency option and sold a foreign currency option through Ervin Capital at different strike prices, this question of law implicates NO fact. After auditing these options for almost a year, Defendant necessarily admits in the FPAA that both options exist: otherwise, the purchased-option could have no basis and no amount could be received from the sold-option.

Moreover, the options are contracts, memorialized in the written confirmations of contractual terms and conditions. Robert Ervin properly authenticated those option contracts as Exhibits 1 and 2 to his affidavit. In his affidavit, Robert Ervin verified that the signature appearing on both confirmations was in fact his own.[8] That verification

---

[7] Defendant states its fifth substantive ground as follows:

> Even if Euro currency options were to be treated as contributed to the partnership, the bases of the options are reduced, both in the hands of the contributing partners and the partnership, by any amount received by the contributing partner from the contemporaneous sale of a substantially similar option to the same counterparty. Thus, any amount treated as an increase in outside basis from the contribution of Euro currency options is disallowed. FPAA, p. 8, ¶ 5.

[8] On page 19 of its brief in support of its Rule 56(f) Motion, Defendant – who relies solely upon an affidavit by its advocate - once again maligns Plaintiffs unfairly by labeling the sworn affidavits as "self-serving." Plaintiffs take umbrage with Defendant's incessant name calling and labeling and respectfully ask how authentication under the plain language of RCFC 56(e) and F.R. EVID. 901(b)(1) can somehow be construed as improper.

constitutes a proper authentication under F.R. EVID. 901(b)(1) ("Testimony of Witness with Knowledge").

Additional copies of these very same confirmations were turned over to the IRS during the Fall of 2002 as part of Defendant's lengthy pre-litigation discovery process. Defendant admits in its Rule 56(f) brief, and Defendant's counsel, Mr. Drew, states in his Declaration, that the IRS has turned over its files to Defendant. Nowhere does Mr. Drew deny that he and his client have held copies of these contracts for a very long time. Given (i) Defendant's tacit admissions in the FPAA, (ii) Defendant's possession of these contracts, and (iii) its failure to identify any basis for questioning authenticity - does Defendant really contend that Mr. Ervin's authentication of his option contracts are untruthful? Decency as well as normal rules of professionalism require some firm basis before questioning a party's integrity. If Defendant had reason to doubt the authenticity of the confirmations, it was incumbent upon it to explicitly state as much by affidavit in its Rule 56(f) Motion. Insofar as Plaintiff can tell, the closest Defendant comes is when it injects the word "alleged" in front of the option references on page 18 of its Rule 56(f) brief. Baseless monikers aside, Defendant cannot be granted relief under Rule 56(f), since nowhere in Mr. Drew's affidavit did he mention the only fact that could possibly be essential to Defendant's opposition to Plaintiffs' Third Motion – the authenticity of the option contract confirmations. Since Defendant failed to meet the condition precedent clearly enunciated within Rule 56(f), it cannot be granted relief under that rule. No *genuine* dispute exists as to this red herring.

Furthermore, the affidavit of Mr. Drew not only fails to expressly identify facts essential to justify a genuine dispute as to Plaintiffs' Third Motion, it also neglects to

state how a grant of discovery would specifically enable Defendant to locate facts that relate to its opposition to Plaintiffs' Third Motion. Even assuming Defendant had satisfied the requirement under Rule 56(f) to explicitly state a material disputed fact that is essential to Plaintiffs' Third Motion - which could only concern the authenticity of the confirmations – additional time would do Defendant no good being that the confirmations have already been authenticated. In an abundance of accommodation, however, Plaintiffs have asked the independent counterparty on the foreign currency options – AIG International – to submit an affidavit again authenticating the confirmations. That second level of authentication should be in hand when the parties prepare their joint statement of fact under RCFC 56. It follows that Defendant can point to no specific discovery that will allow it to uncover facts relating to the authenticity of the confirmations, because that work has already been done by Plaintiffs. Because Defendant failed to make either one of the two requisite showings under Rule 56(f), it is not entitled to relief under that rule.

## CONCLUSION

Defendant's evasion of the three discrete questions of law defeats the fundamental purpose for summary judgment in general and partial summary judgment in particular. All Plaintiffs ask is that the Court render three straightforward answers to the three straightforward questions of law raised by the five substantive grounds *chosen by Defendant*. If Plaintiffs are correct in their understanding of the law, then that serves the ultimate purpose embraced by Rule 56(c) and *Celotex*. Even if Plaintiffs are only correct in part, the three motions serve the purpose of substantially narrowing the

litigation. *See* CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2728 (3d ed. 2003 Pocket Part).

Respectfully submitted,

DAVID D. AUGHTRY
Georgia Bar No. 028010

LINDA S. PAINE By express permission
Texas Bar No. 15414000

Chamberlain, Hrdlicka, White,
Williams & Martin
191 Peachtree Street, N.E., Ninth Floor
Atlanta, Georgia 30303
Telephone: (404) 659-1410
Facsimile: (404) 659-1852

COUNSEL FOR PLAINTIFFS

Dated: January 26, 2004
158182.7
002871-000000:1/26/2004

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JADE TRADING, LLC, by and through ROBERT W. ERVIN AND LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner, | § | |
| Plaintiffs, | § | |
| v. | § | NO. 03-2164 T |
| UNITED STATES OF AMERICA, by and through its agent, the INTERNAL REVENUE SERVICE, | § | Judge Mary Ellen Coster Williams |
| Defendant. | § | |

---

**AFFIDAVIT OF NICOLE A. ZALENSKI**

---

STATE OF GEORGIA )
)
COUNTY OF FULTON )

BEFORE ME, an officer duly authorized to take acknowledgements and administer oaths, this day personally appeared, **NICOLE A. ZALENSKI**, who being over the age of eighteen (18) years and having personal knowledge of the facts contained herein, and being first duly sworn on oath, states as follows:

1. My name is Nicole A. Zalenski. I suffer no legal disabilities and am competent to give this affidavit.

2. I am a U.S. citizen and have resided in Atlanta, Georgia since 1998.

3. I am the paralegal with Chamberlain, Hrdlicka, White, Williams and Martin who handled both the filing of Freedom of Information Act requests for Jade Trading, LLC, Robert W. Ervin and Laura K. Kavanaugh, Gary E. and Lisa A. Ervin, and Timothy

W. and Vicki L. Ervin, as well as the receipt of the documents from the Internal Revenue Service.

4. On July 3, 2003, I handled the filing of a Freedom of Information Act request for Jade Trading, LLC. On October 28, 2003, I received Freedom of Information Act request documents for Jade Trading, LLC from the Disclosure Office in Detroit, Michigan with the IRS cover letter attached hereto as Exhibit 1.

5. On July 3, 2003, I handled the filing of the Freedom of Information Act requests for Robert W. Ervin and Laura K. Kavanaugh, Gary E. and Lisa A. Ervin, and Timothy W. and Vicki L. Ervin. On December 16, 2003 and December 18, 2003, I received Freedom of Information Act request documents for Robert W. Ervin and Laura K. Kavanaugh, Gary E. and Lisa A. Ervin, and Timothy W. and Vicki L. Ervin with the IRS cover letters attached as Exhibits 2, 3, and 4. All documents came from the Disclosure Office in Detroit, Michigan.

Further affiant sayeth not.

NICOLE A. ZALENSKI

Sworn to and Subscribed
before me this 23rd day of
January, 2004.

Notary Public

My Commission Expires:

JOSEPH W. ODOM, JR. NOTARY PUBLIC GEORGIA GWINNETT COUNTY EXPIRES MARCH 2005

[Notary Seal]

158083.1
002871-000000:1/22/04

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

COMMUNICATIONS AND LIAISON

October 28, 2003

Chamberlain, Hrdlicka, White, Williams & Martin
David D. Aughtry
191 Peachtree Street, NE – Ninth Floor
Atlanta, Georgia 30303-1747

RE: Jade Trading LLC

Dear Mr. Aughtry:

This is in response to your Freedom of Information Act request dated July 28, 2003 and received in our office on August 18, 2003.

Your request was for copies of the administrative file with regard to Jade Trading, LLC., Employer Identification Number 13-4079142 for the years 1999-2003.

We have located 734 pages of information responsive to your request. We are partially withholding information on 24 pages and we are withholding 123 pages in their entirety, under Freedom of Information Act exemptions (b)(3), (b)(5), (b)(7)(C) and (b)(7)(E). Current fee regulations state that there is a fee of $0.20 per page for every page over one hundred, pursuant to these regulations there is a fee due in the amount of $102.20 (511 pages at $0.20 per page), fees are for services rendered and are not refundable. This fee should be mailed to the address shown in the last paragraph of this letter.

Subsection (b)(3) of the Freedom of Information Act exempts from disclosure matters that are specifically exempted by statute. The information being withheld under Freedom of Information Act exemption (b)(3) consists of third party tax information, the disclosure of which is prohibited by Internal Revenue code section 6103.

Subsection (b)(5) of the Freedom of Information Act exempts from disclosure interagency of intra-agency memorandums, or letters which would not be available by law to a party other than an agency in litigation with the agency. The three primary privileges covered by this exemption are the deliberative process privilege, the attorney work product privilege, and the attorney client privilege. The deliberative process privilege protects documents, which reflect advisory opinions, recommendations and deliberations comprising the process by which decision and policies are formulated

Subsection (b)(7)(C) of the Freedom of Information Act exempts from disclosure personal information contained in law enforcement records, but only which could reasonably be expected to constitute an unwarranted invasion of personal privacy.

EXHIBIT
1

Subsection (b)(7)(E) of the Freedom of Information Act exempts from disclosure records or information compiled for law enforcement purposes, but only to the extent that the production of such records would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

The Discriminant Function (DIF) score has been deleted from the records you requested under Freedom of Information Act exemption (b)(3), in conjunction with Internal Revenue Code section 6103, because release of this score would seriously impair assessment, collection, and enforcement under the Internal Revenue laws by enabling individuals with access to this score to avoid detection and prosecution. In addition, the release of this score would disclose law enforcement techniques, procedures, and guidelines protected by Freedom of Information Act exemption (b)(7)(E).

Should you have any questions concerning this correspondence, you may contact Disclosure Specialist Charlene Mattox, ID #38-00482, by phone at (313) 628-3250 or by mail to Internal Revenue Service, Disclosure Office, P O Box 330500, Stop 11, Detroit, MI 48232-6500. Please refer to case number 38-2003-04376. The enclosed notice 393 explains your appeal rights.

Sincerely,

Ralph J Suchyta

Ralph J Suchyta
Disclosure Officer, Detroit

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

COMMUNICATIONS AND LIAISON

December 18, 2003

Chamberlain, Hrdlicka, White, Williams & Martin
David D. Aughtry
191 Peachtree Street, NE- Ninth Floor
Atlanta Georgia 30303-1747

RE: Robert Ervin & Laura Kavanaugh

Dear Mr. Aughtry

This is in response to your Freedom of Information Act request dated July 3, 2003 and received in our office on July 18, 2003.

Your request was for copies of the administrative file with regard to Robert Ervin & Laura kavanaugh for the tax years 1999, 2000 and 2001.

We have located 3014 pages of information responsive to your request. We are partially withholding information on 34 pages and we are withholding 1282 pages in their entirety, under Freedom of Information Act exemptions (b)(3), (b)(5), (b)(7)(A), (b)(7)(C) and (b)(7)(E). Current fee regulations state that there is a fee of $0.20 per page for every page over one hundred, pursuant to these regulations there is a fee due in the amount of $326.40 (1632 pages at $0.20 per page), fees are for services rendered and are not refundable. This fee should be mailed to the address shown in the last paragraph of this letter.

Subsection (b)(3) of the Freedom of Information Act exempts from disclosure matters that are specifically exempted by statute. The information being withheld under Freedom of Information Act exemption (b)(3) consists of third party tax information, the disclosure of which is prohibited by Internal Revenue code section 6103.

Subsection (b)(5) of the Freedom of Information Act exempts from disclosure interagency of intra-agency memorandums, or letters which would not be available by law to a party other than an agency in litigation with the agency. The three primary privileges covered by this exemption are the deliberative process privilege, the attorney work product privilege, and the attorney client privilege. The deliberative process privilege protects documents, which reflect advisory opinions, recommendations and deliberations comprising the process by which decision and policies are formulated.

EXHIBIT
2

Subsection (b)(7)(A) of the Freedom of Information Act exempts from disclosure records or information compiled for law enforcement purposes, but only to the extent the production of such records could interfere with pending or prospective enforcement proceedings by revealing the scope and direction or the strengths or weaknesses of the Service's case. This information is also exempt from disclosure under Freedom of Information Act subsection (b)(3) because its release would impair federal tax administration under Internal Revenue Code section 6103.

Subsection (b)(7)(C) of the Freedom of Information Act exempts from disclosure personal information contained in law enforcement records, but only which could reasonably be expected to constitute an unwarranted invasion of personal privacy.

The Discriminant Function (DIF) score has been deleted from the records you requested under Freedom of Information Act exemption (b)(3), in conjunction with Internal Revenue Code section 6103, because release of this score would seriously impair assessment, collection, and enforcement under the Internal Revenue laws by enabling individuals with access to this score to avoid detection and prosecution. In addition, the release of this score would disclose law enforcement techniques, procedures, and guidelines protected by Freedom of Information Act exemption (b)(7)(E).

Subsection (b)(7)(E) of the Freedom of Information Act exempts from disclosure records or information compiled for law enforcement purposes, but only to the extent that the production of such records would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

Should you have any questions concerning this correspondence, you may contact Disclosure Specialist Charlene Mattox, ID #12-10675, by phone at (313) 234-1866 or by mail to Internal Revenue Service, Disclosure Office, 985 Michigan Avenue, Detroit, MI 48226. Please refer to case number 38-2003-04047. The enclosed notice 393 explains your appeal rights to the information withheld.

Sincerely,

Ralph J Suchyta

Ralph J Suchyta
Disclosure Officer, Detroit

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

COMMUNICATIONS AND LIAISON

December 18, 2003

Chamberlain, Hrdlicka, White, Williams & Martin
David D. Aughtry
191 Peachtree Street, NE- Ninth Floor
Atlanta Georgia 30303-1747

RE: Gary and Lisa Ervin

Dear Mr. Aughtry

This is in response to your Freedom of Information Act request dated July 3, 2003 and received in our office on July 18, 2003.

Your request was for copies of the administrative file with regard to Gary and Lisa Ervin for the tax years 1999, 2000 and 2001.

We have located 2985 pages of information responsive to your request. We are partially withholding information on 47 pages and we are withholding 1295 pages in their entirety, under Freedom of Information Act exemptions (b)(3), (b)(5), (b)(7)(A), (b)(7)(C) and (b)(7)(E). Current fee regulations state that there is a fee of $0.20 per page for every page over one hundred, pursuant to these regulations there is a fee due in the amount of $318.00 (1590 pages at $0.20 per page), fees are for services rendered and are not refundable. This fee should be mailed to the address shown in the last paragraph of this letter.

Subsection (b)(3) of the Freedom of Information Act exempts from disclosure matters that are specifically exempted by statute. The information being withheld under Freedom of Information Act exemption (b)(3) consists of third party tax information, the disclosure of which is prohibited by Internal Revenue code section 6103.

Subsection (b)(5) of the Freedom of Information Act exempts from disclosure interagency of intra-agency memorandums, or letters which would not be available by law to a party other than an agency in litigation with the agency. The three primary privileges covered by this exemption are the deliberative process privilege, the attorney work product privilege, and the attorney client privilege. The deliberative process privilege protects documents, which reflect advisory opinions, recommendations and deliberations comprising the process by which decision and policies are formulated.

EXHIBIT

3

Subsection (b)(7)(A) of the Freedom of Information Act exempts from disclosure records or information compiled for law enforcement purposes, but only to the extent the production of such records could interfere with pending or prospective enforcement proceedings by revealing the scope and direction or the strengths or weaknesses of the Service's case. This information is also exempt from disclosure under Freedom of Information Act subsection (b)(3) because its release would impair federal tax administration under Internal Revenue Code section 6103.

Subsection (b)(7)(C) of the Freedom of Information Act exempts from disclosure personal information contained in law enforcement records, but only which could reasonably be expected to constitute an unwarranted invasion of personal privacy.

The Discriminant Function (DIF) score has been deleted from the records you requested under Freedom of Information Act exemption (b)(3), in conjunction with Internal Revenue Code section 6103, because release of this score would seriously impair assessment, collection, and enforcement under the Internal Revenue laws by enabling individuals with access to this score to avoid detection and prosecution. In addition, the release of this score would disclose law enforcement techniques, procedures, and guidelines protected by Freedom of Information Act exemption (b)(7)(E).

Subsection (b)(7)(E) of the Freedom of Information Act exempts from disclosure records or information compiled for law enforcement purposes, but only to the extent that the production of such records would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

Should you have any questions concerning this correspondence, you may contact Disclosure Specialist Charlene Mattox, ID #12-10675, by phone at (313) 234-1866 or by mail to Internal Revenue Service, Disclosure Office, 985 Michigan Avenue, Detroit, MI 48226. Please refer to case number 38-2003-04045. The enclosed notice 393 explains your appeal rights to the information withheld.

Sincerely,

Ralph J Suchyta

Ralph J Suchyta
Disclosure Officer, Detroit

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

COMMUNICATIONS AND LIAISON

December 16, 2003

Chamberlain, Hrdlicka, White, Williams & Martin
David D. Aughtry
191 Peachtree Street, NE- Ninth Floor
Atlanta Georgia 30303-1747

RE: Timothy & Vicki Ervin

Dear Mr. Aughtry

This is in response to your Freedom of Information Act request dated July 3, 2003 and received in our office on July 18, 2003.

Your request was for copies of the administrative file with regard to Timothy & Vicki Ervin for the tax years 1999, 2000 and 2001.

We have located 2669 pages of information responsive to your request. We are partially withholding information on 34 pages and we are withholding 1266 pages in their entirety, under Freedom of Information Act exemptions (b)(3), (b)(5), (b)(7)(A), (b)(7)(C) and (b)(7)(E). Current fee regulations state that there is a fee of $0.20 per page for every page over one hundred, pursuant to these regulations there is a fee due in the amount of $260.60 (1303 pages at $0.20 per page), fees are for services rendered and are not refundable. This fee should be mailed to the address shown in the last paragraph of this letter.

Subsection (b)(3) of the Freedom of Information Act exempts from disclosure matters that are specifically exempted by statute. The information being withheld under Freedom of Information Act exemption (b)(3) consists of third party tax information, the disclosure of which is prohibited by Internal Revenue code section 6103.

Subsection (b)(5) of the Freedom of Information Act exempts from disclosure interagency of intra-agency memorandums, or letters which would not be available by law to a party other than an agency in litigation with the agency. The three primary privileges covered by this exemption are the deliberative process privilege, the attorney work product privilege, and the attorney client privilege. The deliberative process privilege protects documents, which reflect advisory opinions, recommendations and deliberations comprising the process by which decision and policies are formulated.

EXHIBIT
4

Subsection (b)(7)(A) of the Freedom of Information Act exempts from disclosure records or information compiled for law enforcement purposes, but only to the extent the production of such records could interfere with pending or prospective enforcement proceedings by revealing the scope and direction or the strengths or weaknesses of the Service's case. This information is also exempt from disclosure under Freedom of Information Act subsection (b)(3) because its release would impair federal tax administration under Internal Revenue Code section 6103.

Subsection (b)(7)(C) of the Freedom of Information Act exempts from disclosure personal information contained in law enforcement records, but only which could reasonably be expected to constitute an unwarranted invasion of personal privacy.

The Discriminant Function (DIF) score has been deleted from the records you requested under Freedom of Information Act exemption (b)(3), in conjunction with Internal Revenue Code section 6103, because release of this score would seriously impair assessment, collection, and enforcement under the Internal Revenue laws by enabling individuals with access to this score to avoid detection and prosecution. In addition, the release of this score would disclose law enforcement techniques, procedures, and guidelines protected by Freedom of Information Act exemption (b)(7)(E).

Subsection (b)(7)(E) of the Freedom of Information Act exempts from disclosure records or information compiled for law enforcement purposes, but only to the extent that the production of such records would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

Should you have any questions concerning this correspondence, you may contact Disclosure Specialist Charlene Mattox, ID #12-10675, by phone at (313) 234-1866 or by mail to Internal Revenue Service, Disclosure Office, 985 Michigan Avenue, Detroit, MI 48226. Please refer to case number 38-2003-04046. The enclosed notice 393 explains your appeal rights to the information withheld.

Sincerely,

Ralph J Suchyta

Ralph J Suchyta
Disclosure Officer, Detroit

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JADE TRADING, LLC, by and through ROBERT W. ERVIN AND LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner, | § | |
| Plaintiffs, | § | |
| v. | § | NO. 03-2164 T |
| UNITED STATES OF AMERICA, by and through its agent, the INTERNAL REVENUE SERVICE, | § | Judge Mary Ellen Coster Williams |
| Defendant. | § | |

---

**AFFIDAVIT OF JESSE T. MOUNTJOY**

---

STATE OF KENTUCKY )
)
COUNTY OF DAVIESS )

BEFORE ME, an officer duly authorized to take acknowledgements and administer oaths, this day personally appeared Affiant, **JESSE T. MOUNTJOY**, who being over the age of eighteen (18) years and having personal knowledge of the facts contained herein, and being first duly sworn on oath, states as follows:

1. Affiant suffers no legal disabilities and is competent to give this affidavit.

2. Affiant is a U.S. citizen and has resided in Owensboro, Kentucky since 1974.

3. Affiant is an attorney with, and a partner of, the law firm of Sullivan, Mountjoy, Stainback & Miller, P.S.C., with offices at 100 St. Ann Building, P.O. Box 727, Owensboro, Kentucky 42301-0727, and has been admitted to the practice of law in the

Commonwealth of Kentucky, and is a member (#50355) of the Kentucky Bar Association. Further, Affiant is authorized and licensed to practice before the Internal Revenue Service (tax practitioner #CAF5000-18727R).

4. Pursuant to Internal Revenue Code § 7521(c), Affiant is a taxpayer representative for Robert W. Ervin and Laura Kavanaugh Ervin, Gary E. and Lisa A. Ervin, and Timothy W. and Vicki L. Ervin ("Ervins").

5. As the Ervins' representative, Affiant received all correspondence sent by the Internal Revenue Service to the Ervins throughout the course of their audits.

6. On June 28, 2002, the Ervins received letters from the Internal Revenue Service notifying them that their federal individual income tax returns for the year 1999 had been selected for examination.

7. Also on June 28, 2002, Information Document Requests 99-01 were issued by the Internal Revenue Service to each of the Ervins (although the dates on such requests read June 28, 2000), each containing forty-eight (48) separate inquiries or requests .

8. Responses to Information Document Requests 99-01 were submitted by or on behalf of the Ervins, to the Internal Revenue Service on September 27, 2002 (including a total of eighty-five (85) exhibits to such responses).

9. On December 16, 2002, Affiant received a copy of Notices of Beginning of Administrative Proceeding ("NBAPS") issued to Ervin Capital, LLC, for Robert W. Ervin, Ervin Holdings, LLC, for Gary E. Ervin, and Ervin Investments, LLC, for Timothy W. Ervin, indicating that the Ervins had been selected for audit by the Internal Revenue Service. The original NBAPs were issued to the Ervins.

10. On January 13, 2003, the Ervins received a letter notifying them that their federal individual income tax returns for the year 2000 would also be included within the scope of the Internal Revenue Service examination.

11. On January 13, 2003, Information Document Requests 99-02 were issued by the Internal Revenue Service to each of the Ervins, each containing thirty-nine (39) separate inquiries or requests.

12. Responses to Information Document Requests 99-02 were submitted by or on behalf of the Ervins to the Internal Revenue Service on March 17, 2003 (including a total of sixty (60) exhibits to such responses).

13. On March 25, 2003, Preliminary Reports (Form 4549A, Income Tax Examination Changes) were issued by the Internal Revenue Service to each of the Ervins (which Reports were subsequently withdrawn by the Internal Revenue Service on or about May 12, 2003).

14. On April 9, 2003, Robert W. Ervin, Gary E. Ervin, and Timothy W. Ervin ("Ervin Brothers") were interviewed by Revenue Agents James Hogue and Janice Ambrose at the Internal Revenue Service's office in Owensboro, Kentucky. Said interviews began at approximately 9:00 a.m. and continued until mid-afternoon of that day.

15. Each of the Ervin Brothers answered all of Agent Hogue's questions to the best of his recollection and ability.

16. On April 15, 2003, Notices of Final Partnership Administrative Adjustment were issued by the Internal Revenue Service to Ervin Capital, LLC, Ervin Holdings, LLC, and Ervin Investments, LLC.

17. On August 18, 2003, Notices of Deficiency were issued to Robert W. Ervin and Laura Kavanaugh Ervin, Gary E. and Lisa A. Ervin, and Timothy W. and Vicki L. Ervin.

Further Affiant sayeth not.

JESSE T. MOUNTJOY

Sworn to and Subscribed
before me this 21st day of
January, 2004.

Notary Public, Kentucky State at Large

My Commission Expires: 9-1-05

[Notary Seal]

157544.1
002871-000000:1/15/04

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JADE TRADING, LLC, by and through ROBERT W. ERVIN AND LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, by and through its agent, the INTERNAL REVENUE SERVICE,<br><br>Defendant. | § § § § § § § § § § § § § § § | NO. 03-2164 T<br><br>Judge Mary Ellen Coster Williams |

## AFFIDAVIT OF LAWRENCE H. COHEN

STATE OF NEW YORK )
)
COUNTY OF NEW YORK )

BEFORE ME, an officer duly authorized to take acknowledgements and administer oaths, this day personally appeared, **LAWRENCE H. COHEN**, who being over the age of eighteen (18) years and having personal knowledge of the facts contained herein, and being first duly sworn on oath, states as follows:

1. My name is Lawrence H. Cohen. I suffer no legal disabilities and am competent to give this affidavit.

2. I am a U.S. citizen and have resided in Dix Hills, New York since 1984.

3. Pursuant to Internal Revenue Code § 7521(c), I am the taxpayer representative for Jade Trading, LLC ("Jade").

4. As Jade's representative, I received all correspondence sent by the Internal Revenue Service to Jade throughout the course of its partnership level audit.

5. On December 16, 2002, I received a copy of the Notice of Beginning of Administrative Proceeding ("NBAP") issued to Jade, indicating that Jade had been selected for audit by the Internal Revenue Service. The original NBAP was issued to the Tax Matters Partner of Jade.

6. Prior to that date, the IRS had obtained documents relating to the audit at the individual member level.

7. Also on December 16, 2002, Information Document Request 99-01 was issued by the Internal Revenue Service to Jade.

8. The response to Information Document Request 99-01 was submitted to the Internal Revenue Service on March 31, 2003.

9. On April 15, 2003, a Notice of Final Partnership Administrative Adjustment was issued by the Internal Revenue Service to Jade.

Further affiant sayeth not.

Lawrence H Cohen
LAWRENCE H. COHEN

Sworn to and Subscribed
before me this 23rd day of
January, 2004.

Stephanie D. Regan
Notary Public
My Commission Expires:

STEPHANIE D. REGAN
Notary Public, State of New York
No. 43-4704738
Qualified in Richmond County
Commission Expires Sept. 30, 2005

[Notary Seal]

157550.2
002871-000000:1/20/2004

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **RESPONSE BY PLAINTIFFS TO DEFENDANT'S RULE 56(F) MOTION, MEMORANDUM OF AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR RELIEF UNDER RCFC 56(f), NICOLE A. ZALENSKI AFFIDAVIT, JESSE T. MOUNTJOY AFFIDAVIT, and LAWRENCE H. COHEN AFFIDAVIT** were sent via Federal Express on this 26th day of January, 2004, addressed to:

George L. Squires, Esq.
William K. Drew, Esq.
U.S. Department of Justice
Tax Division
Court of Federal Claims
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044

Mr. Ari Bergmann
Sentinel Advisors, LLC
68 Carman Avenue
Cedarhurst, New York 11516

Robert W. Ervin and Laura Kavanaugh
Ervin Capital, LLC
Timothy W. Ervin and Vicki L. Ervin
Ervin Investments, LLC
Gary Ervin and Lisa A. Ervin
Ervin Holdings, LLC
450 Pryor Boulevard, P.O. Box 409
Sturgis, Kentucky 42459

Banque Safra – Luxembourg
c/o Jean-Luc Collot
10A Boulevard Joseph II, B.P. 887
Luxembourg, L-2018

David D. Aughtry