**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JADE TRADING, LLC, by and through ROBERT W. ERVIN AND LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner,** | ) | |
| **Plaintiffs,** | ) | **NO. 03-2164T** |
| **v.** | ) | **JUDGE MARY ELLEN COSTER WILLIAMS** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

---

**PLAINTIFFS' MEMORANDUM OF AUTHORITY ON APPLICATION OF FINAL *KLAMATH* OPINION**

---

**David D. Aughtry, Esq.**
**Linda S. Paine, Esq.**
**Chamberlain, Hrdlicka, White, Williams & Martin**
**191 Peachtree Street, N.E.**
**Thirty-Fourth Floor**
**Atlanta, Georgia 30303**
**Telephone: (404) 659-1410**

**TABLE OF CONTENTS**

INTRODUCTION ..... 1

A. IN AN EXCEEDINGLY CLEAN ANALYSIS, THE *KLAMATH* COURT ISOLATES THE STARK ECONOMIC SUBSTANCE ELEMENTS WITH A CLARITY THAT HONORS THEIR RESTRAINT ..... 2

B. THE *KLAMATH* COURT'S SUBSTANTIAL AUTHORITY/ORDINARY CARE/REASONABLE CAUSE ANALYSIS FITS THE *JADE TRADING* ISSUES LIKE TONGUE-IN-GROOVE CARPENTRY ..... 6

1. Scope of Partnership Jurisdiction ..... 6

2. Recurring Set of Ten Parallel Facts ..... 7

3. Most Significant Distinction ..... 9

4. Analysis and Rejection of Four Accuracy Penalties ..... 10

5. The *Klamath* Court Concluded that It Possessed Partnership Jurisdiction to Consider Good Faith/Reasonable Cause and that the Investor Partners Possessed that Reasonable Cause ..... 16

CONCLUSION ..... 19

# TABLE OF AUTHORITIES

## Cases


*Coltec Industries, Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006), cert. denied, __ S.Ct. __, No. 06-659, 2007 WL 506052 (Feb. 20, 2007) ........................................3, 11

*Commissioner v. Banks*, 543 U.S. 426 (2005) ........................................14

*Costantino v. TRW, Inc.*, 13 F.3d 969, 981 (6th Cir. 1994) ........................................15

*Cottage Sav. Ass'n. v. Commissioner, 499 U.S. 554 (1991)* ........................................3, 12, 19

*Guilzon v. Commissioner*, 985 F.2d 819, 822 (5th Cir. 1993) ........................................16

*Heasley v. Commissioner*, 902 F.2d 380, 383 (5th Cir. 1990) ........................................11

*Helmer v. Commissioner, T.C. Memo. 1975-160 (1975)* ........................................passim

*Klamath Strategic Inv. Fund, LLC ex rel St. Croix Ventures, LLC v. United States*, 440 F.Supp.2d 608, 626 (E.D.Tex.,2006) ........................................13

*Klamath Strategic Inv. Fund, LLC v. United States*, 5:04-CV-278, 2007 WL 283790 (Jan. 31, 2007 E.D.Tex.) ........................................passim

*Laureys v. Commissioner, 92 T.C. 101 (1989)* ........................................3, 12

*Maloney v. Commissioner*, 25 T.C. 1219 (1956) ........................................3, 12

*United States v. Boyle*, 469 U.S. 241, 250-51 (1985) ........................................17

*Weiner v. United States*, 389 F.3d 152, 161-62 (5th Cir. 2004), *cert. denied*, 544 U.S. 1050 (2005) ........................................11

*Zfass v. Commissioner*, 118 F.3d 184, 190 (4th Cir. 1997) ........................................11


## Federal Regulations


Treas. Reg. § 1.183-2(a) ........................................4

Treas. Reg. § 1.6662-3(b)(1) ........................................14

Treas. Reg. § 1.6662-3(b)(1)(ii) ........................................14

Treas. Reg. § 1.6662-4(d)(2) ........................................12

31 C.F.R. Part 10 ........................................13, 18

**Federal Statutes**

26 U.S.C. § 752 ........ 8, 11, 12

26 U.S.C. § 6226(f) ........ passim

26 U.S.C. § 6230 ........ 17

26 U.S.C. § 6230(c)(4) ........ 16

26 U.S.C. § 6662 ........ 16

26 U.S.C. § 6662(b)(3) ........ 10

26 U.S.C. § 6662(c) ........ 10, 14

26 U.S.C. § 6662(d)(2)(B)(i) ........ 12

26 U.S.C. § 6662(d)(2)(C)(iii) ........ 12

26 U.S.C. § 6662(h) ........ 10

26 U.S.C. § 6664 ........ 6, 16

26 U.S.C. § 7491(c) ........ 17

28 U.S.C. § 1346(a)(1) ........ 6, 16, 17

**Miscellaneous**

N. Jerold Cohen, "Too Good to Be True and Too Bad to Be True," Special Report, 2005 TNT 238-26, 109 Tax Notes 1437 (Dec. 13, 2005) ........ 15

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **JADE TRADING, LLC, by and through ROBERT W. ERVIN AND LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner,** | |
| **Plaintiffs,** | **NO. 03-2164T** |
| **v.** | **JUDGE MARY ELLEN COSTER WILLIAMS** |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

---

**PLAINTIFFS' MEMORANDUM OF AUTHORITY ON APPLICATION OF FINAL *KLAMATH* OPINION**

---

**INTRODUCTION**

On January 31, 2007, the United States District Court for the Eastern District of Texas issued its final opinion in *Klamath Strategic Inv. Fund, LLC v. United States*, 5:04-CV-278, 2007 WL 283790 (Jan. 31, 2007 E.D.Tex.). That opinion (a copy of which is enclosed as Appendix I) consists of two parts that should directly and indirectly aid the Court here:

(i) The reasonable cause/substantial authority/overvaluation penalty discussion fits *Jade Trading* like tongue-in-groove carpentry because it rejects all of Defendant's Notice 2000-44 arguments in the context of reliance upon local advisors; and

(ii) Even the factually distinct economic substance discussion of the *Klamath* loan is exceedingly helpful in its simplicity and the clarity of the contrast presented by the absolute absence of ANY economic substance there – that is, a loan the Court concluded possessed NO profit potential, NO tax-independent business purpose, and effectively never existed.

In hopes of assisting the Court on both of these principles, Gary, Tim, and Robert Ervin offer a summary of *Klamath's* most pertinent points and a comparison between that case and this.

### A. IN AN EXCEEDINGLY CLEAN ANALYSIS, THE *KLAMATH* COURT ISOLATES THE STARK ECONOMIC SUBSTANCE ELEMENTS WITH A CLARITY THAT HONORS THEIR RESTRAINT.

The beauty of the *Klamath* economic substance analysis lies in its simplicity and the clarity of the type of facts required before a Court may ignore the existence of a loan or other commercial transaction. The Court begins its analysis by reinforcing the principle so often honored by the Supreme Court:

> It is a first principle of tax law that taxpayers are entitled to structure their business transactions in a manner that produces the least amount of tax. *See Compaq Computer Corp. v. Comm'r*, 277 F.3d 778, 781-82 (5th Cir. 2001). "[W]here . . . there is a genuine multiple-party transaction with economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped ***solely*** by tax avoidance features that have meaningless labels attached, the Government should honor the allocation of rights and duties effectuated by the parties." *Frank Lyon Co. v. United States*, 435 U.S. 561, 583-84 (1978); *see Holladay v. Comm'r*, 649 F.2d 1176, 1179 (5th Cir. Unit B Jul. 1981) ("[T]he existence of a tax benefit resulting from a transaction does not automatically make it a sham as long as the transaction is imbued with tax-independent considerations.") *Klamath,* at 15. (Emphasis added).

While the *Klamath* Court noted that the Fifth Circuit had deferred the issue relating to the conjunctive vs. disjunctive application of these two prongs, it confirms that *NO* economic substance, *NO* reasonable possibility of a profit, and *NO* tax-independent business purpose are required before the existence of a transaction may be ignored:

> In *Compaq*, the court noted that a two prong test applied to determine whether a transaction had economic substance. The first prong considers whether the transaction "has ***no*** economic substance because ***no*** reasonable possibility of a profit exists." *Compaq*, 277 F.3d at 781-82. The second prong considers whether there existed ***a*** tax-independent business purpose for the transaction (a subjective inquiry). The Fifth Circuit explained that a court must consider both the economic substance of a transaction as well as its business purpose. *Klamath,* at 16. (Emphasis added).

Having noted the first principle of tax law that a citizen may structure his or her affairs to minimize taxes, the Court does follow the *Coltec* approach of focusing upon the transaction that generates the tax benefits. *Id.* On their face, these concepts would contradict each other if one defines transaction as that thin slice of the structure that the Supreme Court has repeatedly assured people they could chose for the express purpose of minimizing their taxes.[1] As between these two concepts, the right of the citizen to structure his affairs must dominate as longer held and more deeply rooted in higher authority. The two, however, can be easily reconciled. The transactions must be defined as the financial transactions – the investment in the spread options here, the overall loan transaction in *Klamath*, and the formation and use of a subsidiary in *Coltec*. The transactions cannot be defined as that structural choice the Supreme Court and every other court in the land recognize may be chosen for the purpose of minimizing taxes in the handling of an investment that is also imbued with tax independent considerations.

Consistent with that reconciliation, the *Klamath* Court applies a three-factor objective test and the subjective test to the use of a loan. Notably, the loan in *Klamath* did not fall within the *Cottage Savings*, *Maloney*, and *Laureys*[2] line of cases that define the economic substance of spread options, debt bundles, straddles, and the like based on the separate nature of the long and

---

[1] That is precisely what Defendant attempted to do after the record was closed when it shifted from the "critical issue" of the basis in the hands of the Ervins (D. Final St'm't. Cont., at 14) to the act of contributing the Purchased Euro Options to Jade Trading. Here, of course, contributing the appreciating Purchased Euro Options would have furthered Jade's trading through greater leverage/margin abilities and demonstrably greater profit potential, had the Euro continued to appreciate as predicted. *See* Pl. Br. Re: *Coltec*, at 11-12; Pl. Reply Re: *Coltec*, at 1-2. While Plaintiff would have tendered additional evidence at trial had Defendant's Final Statement of Contentions properly identified that issue (as required by RCFC App. A Rule 14(a)(2) and (b)), the result remains the same because the separate nature of the Purchased Euro Options – *i.e.*, their substance as defined by the Supreme Court – remains unchanged through their contribution. That separate substance reflects the contracts that created these options.

[2] *Cottage Sav. Ass'n. v. Commissioner*, 499 U.S. 554 (1991) ("legally distinct entitlements"); *Maloney v. Commissioner*, 25 T.C. 1219 (1956); *Laureys v. Commissioner*, 92 T.C. 101 (1989).

short positions. Nor did that Court have the benefit of an uncontroverted record as to that critical fact. The greatest help to this Court lies in the clarity of the contrast between the sole purpose served by the *Klamath* loan and the dual purposes provided by the Euro options here.

**Economic Substance Comparison Between *Klamath* and *Jade Trading***

| | *Klamath* | *Jade Trading* |
|---|---|---|
| 1. | <u>Focus</u>.<br>Nonrecourse loans with negative carry and no direct profit potential; profit depended upon continued participation in three-stage, 7-year program. *Klamath, S*lip Op. at 16-17. | "Critical issue" is basis of the options in hands of the Ervins. D. Final St'm't. Cont., at p. 14. FPAA, Item 5 treats the Purchased and Sold Options as one, without asserting economic substance. |
| 2. | <u>Three Factor Objective Test.</u> | |
| a. | Both Presidio and the bank structured transaction so that the bank could use "economic pressure to force the investor to exit at the end of Stage I" prior to higher risk, higher reward stages. *Id.* at 17-18. | Sentinel wanted (Tr. 3625: 22-25) and the Ervins expected (Tr. 3625: 15-21) continued participation as long as Sentinel delivered attractive multiples. No forced early termination. Both the Ervins and Sentinel discussed later $20 mil. contribution of the Apex funds. Tr. 3609:3-6; Tr. 3625:24-3626:5. |
| b. | No intent to fund foreign currency trades (sole profit potential) with the loan proceeds. *Id.* at 19. Contemporaneous bank documents provided that "the negative spread implications are such that in practice they will only invest in time deposits with us." *Id.* at 20. | The sets of Euro spread options are themselves foreign currency trades that were both presented as AND objectively would "DOUBLE YOUR MONEY" if Euro continued to climb as predicted. Tr. 282:15-17; Tr. 1079:19-23. |
| c. | No reasonable possibility that loan would produce profit.[3] *Id.* at 20-21.<br>• Funds never used to facilitate foreign currency investment.<br>• Negative interest spread.<br>• Fee based on tax loss.<br>• Zero credit risk loans. | Again, sets of spread options presented both distinct ability to "double your money" and leverage/margin that appreciation into higher multiple trades. Tr. 282:15-17; Tr. 1079:19-23.<br>• Essential part of foreign currency investment. Tr. 3613:14-25. |

[3] Expectation of profit must only be genuine, not reasonable. *See, e.g.,* Treas. Reg. § 1.183-2(a) ("a reasonable expectation of profit is not required").

| | | |
|---|---|---|
| | | • Negotiated superior fee with AIG that eliminated bid/ask spread. Tr. 1373:20-1374:7.<br>• Results driven partnership fee based on 2% of (appreciated) capital AND 20% of net appreciation. Jt. Ex. 60.<br>• Even New Vista consulting fee based on percentage of long premium which the uncontroverted record establishes as the normal reference for fees. Tr. 1333:16-24; Stip. ¶ 29; Jt. Exs. 48-50.<br>• Ervins given actual examples of recently profitable spread options. Tr. 557: 22-559:3; Pl. Ex. 228. |
| 3. | Objective Conclusion.<br>"[I]n truth, NatWest did not make any loans." *Id.* at 20. | Stipulated (*i.e.*, real) options (Stip. ¶ 25), with stipulated separately priced separate contracts (Stip. ¶¶ 21, 22; Jt. Ex. 31- 36; Pang Tr. 94:15-95:15), that were later separately valued (Stip. ¶¶ 35, Jt. Ex. 63, 64, 65; Pang Tr. 129:14-22); admitted separate assets with unrelated owners (D. Resp. to Pl. RFA ¶ 70); undisputed ability to separately exercise, restrike, leg-in, leg-out, assign, lapse, etc. (Pang Tr. 115:7-117:4), like collar options. |
| 4. | Subjective Test.<br>"NO tax-independent purpose for Presidio to recommend and structure the loan transactions. Instead, the ONLY REASON for the loans, including . . . their subsequent contributions to *Klamath* was to generate tax losses . . . . Presidio and NatWest understood that the loan proceeds would never be used to facilitate Presidio's investment plan." *Id.* at 21. (Emphasis added). | *Sine qua non* for rejecting Jenkins and investing through Sentinel with undisputed ability to "DOUBLE YOUR MONEY" on bullish Euro spread options, entered before resolution of issues needed to enter partnership, and then contributed Purchased Euro Options to partnership where appreciation could be leveraged into knock-out options with returns up to 38:1. Tr. Tr. 1077:12–1078:23; 1079:19-23. |

At every turn, the contrast in *Klamath* proves that the separate options – which undeniably exist here – cannot be ignored.

**B. THE *KLAMATH* COURT'S SUBSTANTIAL AUTHORITY/ORDINARY CARE/REASONABLE CAUSE ANALYSIS FITS THE *JADE TRADING* ISSUES LIKE TONGUE-IN-GROOVE CARPENTRY.**

This Court, of course, need not address all the evidence relating to ordinary care, substantial authority, and reasonable cause unless it concludes that *Jade Trading* erred as to one of the two remaining substantive issues: the (admitted) separate nature of the Purchased Euro Options and the (stipulated) member status of Gary, Tim, and Robert Ervin. Even then, the finding of good faith/reasonable cause negates any need to address the penalties as a whole.

Rather than focusing upon reasonable cause trumping all penalties, the *Klamath* Court provides one of the most thorough discussions in the case law of the four accuracy-related penalties Defendant asserts here and in all the 1999 cases it attacked under Notice 2000-44 after the transactions were closed. Based on the same authorities and double-barrel reliance upon longtime and specially qualified tax advisors presented by *Jade*, the Court in *Klamath* struck the four penalties one by one and then reinforced those holdings with the conclusion that the same facts which defeat the four penalties also establish the global "good faith/reasonable cause" defense under Section 6664. The *Klamath* Court simply takes a more deliberate approach.

**1. <u>Scope of Partnership Jurisdiction</u>.**

The *Klamath* Court begins with the partnership jurisdictional analysis and its holding that 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 6226(f) bestow upon it (and this Court) the jurisdiction in a partnership proceeding to "determine the applicability of any penalty . . . which relates to an adjustment to a partnership issue." *Klamath*, at 22. Just as Defendant confirmed in his closing argument here that the Court should consider the conduct by all partners (Cl. Arg. Tr., p. 3855:

1-9, 15-19),[4] the Court in *Klamath* returns to embrace that jurisdictional point at the end of the opinion. There, the Court concludes that a partnership proceeding can and should consider the partners' reliance upon opinions relating to partnership items. *Id.* at 30-32.

### 2. Recurring Set of Ten Parallel Facts.

After addressing the scope of its jurisdiction, the Court marches through one penalty after another. In rejecting each of those penalties, the *Klamath* Court repeatedly relies on a recurring set of facts that remarkably parallel those in *Jade Trading*:

**Ordinary Care Comparison of *Klamath* and *Jade Trading* Facts/Issues**

| | *Klamath* | *Jade Trading* |
|---|---|---|
| (i) | Reliance upon qualified long-time CPA. | |
| | Relied on Pollans & Cohen, CPA prior to, during, and following investment. *Klamath*, Slip Op. at 8, 27, 34. | Relied on S. Martin McElroy, Jr., CPA prior to, during, and following investment. Tr. 1398-99, 1402, 1411-15, 1429-31; Jt. Stip. ¶¶ 8, 18. |
| (ii) | Bolstered reliance upon qualified local tax attorney. | |
| | Prior to investment, Beaumont CPA consulted with leading Texas tax attorney in Houston who concluded the tax treatment was above board. *Id.* at 7. | Prior to, during, and following investments, Martin McElroy, consulted with leading tax attorney in Western Kentucky, Jesse T. Mountjoy, who confirmed the authorities and conclusions drawn by specialized international tax advisors. Tr. 593-94, 1411-12, 1625-28, 1632, 1634-37 Pl. Req. Findings, Nos. 192, 209, 338, 346, 349-351, 358, 371. |

---

[4] During Defendant's closing argument, the Court put this question to counsel for Defendant:

THE COURT: And whose conduct am I looking at?

MR. BASSIN: *All of the partners in Jade*, focusing primarily upon the managing partner, Sentinel, which had the most knowledge.

Cl. Arg. Tr. 3855: 15-19. Because Defendant admits and/or stipulates that the managing member for Jade Trading filed a correct partnership return for 1999, the ordinary care focus must shift to the three partners who owned 90 percent of Jade and who are the only partners impacted by the "applicability of any penalty . . . which relates to an adjustment of a partnership item."

(iii) Formal opinions from specialized firms with prior exposure to investment.

Formal opinions rendered to investors by Holland & Hart and Olson Lemons reaching many of the same conclusions the *Klamath* Court later reached in granting partial summary judgment on Section 752 basis issues. *Id.* at 15, 26.

Formal opinions by international law firm Curtis, Mallet-Prevost, Colt & Mosle, including 124 page research summary; also, extensive 37-page model opinion by BDO Seidman, an international accounting firm. Tr. 364-365; Pl. Req. Findings, Nos. 129, 348; Jt. Exs. 23, 89-91.

(iv) Substantial authority in opinions.

Contained in Holland & Hart and Olson Lemons formal opinions. *Id.* at 26, 27, 34.

Same authorities (*Helmer*, *et al.*, contingent obligation line of cases, *etc.*) in BDO Seidman and Curtis Mallet opinions (incl. 124 page summary). Tr. 364-365; Pl. Req. Findings, Nos. 129, 348; Jt. Exs. 23, 89-91.

(v) Based on those authorities, the authors reached many of the same (more likely than not) conclusions the Court reached in earlier opinion granting partial summary judgment on Section 752 basis issues.

Yes. *Id.* at 26.

Yes. Tr. 364-365; Pl. Req. Findings, Nos. 129, 348; Jt. Exs. 23, 89-91.

(vi) Decided to enter, entered, and completed transactions before Notice 2000-44 issued.

Yes.

Yes, and later obtained extensive supplemental opinion that Notice 2000-44 does not alter the law. Jt. Ex. 99.

(vii) Investors complied with all notices and document requests issued in partnership proceeding.

Yes. *Id.* at 29.

Yes. Tr. 1934:18-1937:14.

(viii) Appeared for interviews.

| | |
|---|---|
| Never requested. *Id.* at 29. | Yes voluntarily, despite defects in request. Tr. 1643:12-1644:9; Def. Ex. 642, p. 1. |

(ix) Grantor Trust.

| | |
|---|---|
| Yes, but reported on individual return. *Id.* at 35. | Reported on individual return; no use of grantor trust. Jt. Exs. 96-98; Pl. Exs. 259-261. |

(x) Government relies on facts not disclosed to investors.

| | |
|---|---|
| Yes. Court rejects use of concealed facts in determining penalties. *Id.* at 27. | Yes, Defendant relies heavily on documents the Ervins never saw, prepared by people the Ervins never met, and containing statements the Ervins never heard. |

One must ask, as the Court seems to ask in *Klamath*, what more can reasonably be demanded of ordinary care and reasonable cause?

### 3. Most Significant Distinction.

As close as these ten points parallel each other, the Court in *Klamath* lacked the single most astounding fact relating to the IRS asserting four accuracy penalties against Jade Trading and its partners in this partnership proceeding:

> ***The IRS and both of its designated representatives have admitted and/or stipulated that the Jade Trading Partnership return was accurate.*** *See* Pl. Req. Findings, Nos. 330, 331.

How in God's green earth can Defendant assert 1999 accuracy penalties against the partnership for filing AN ACCURATE RETURN and then attempt to draw an iron curtain on the partners' continuing efforts to ensure that their tax treatment of the partnership items is correct? Yet both of Defendant's Designated Representatives admit that Jade accurately reported both the

contributions and distributions. Pl. Req. Findings, Nos. 330-331. The Ervins' status as members - the only other substantive issue reflected on the partnership return – is beyond question because both parties stipulated that the Ervins were members of Jade in 1999 under the Jade Trading LLC Agreement that governed the allocation of profits, gains, losses, etc., among them and the other two stipulated members. Stip. ¶¶ 30-34.

Other less significant distinctions exist and reinforce why no penalties should be applied here. For example, the investors in *Klamath* knew that the firm they engaged also represented the promoter, Presidio. The investors inquired further and concluded that the multiple representation involved a community of interest, rather than a conflict. Here, no one ever told the Ervins that Curtis Mallet represented any promoter or faced any question as to conflict of interest. Similarly, the plaintiffs in *Klamath* never contended that they rejected an earlier proposal for want of profit focus or that they selected these investments based on specific representations and examples as to multiple returns they could reap. *See* Pl. Req. Findings, Nos. 35-36, 51, 52, 368h. And the *Klamath* record (with its preprogrammed termination at the end of Stage I) contains no contemplation of the Plaintiffs investing an additional $20 million the following Spring, as the Ervins contemplated upon liquidation of the Apex/Dycom stock. Tr. 3609:3-6; Tr. 3625:24-3626:5.

**4. Analysis and Rejection of Four Accuracy Penalties.**

With this context in mind, we turn to the Court's discussion of the four penalties.

a. As a matter of law, the Court concludes that neither of the two valuation penalties can apply where the issue disregards the existence of an entire transaction, rather than merely adjusting value or basis.

Here and in *Klamath*, Defendant asserts a 40 percent valuation penalty under Section 6662(b)(3) and (h), and a 20 percent valuation penalty under Section 6662(b)(3) and (c). Those

penalties apply to taxes attributable to a valuation (or basis) adjustment. To our knowledge, no one contends that any adjustment turns on valuation. Indeed, the parties stipulated to the (separate) value of the options. *See, e.g.*, Jt. Exs. 38-43. Instead, Defendant seeks in *Klamath* and here to disregard the entire transactions that later created basis in the partnership. Here, Defendant concedes the basis issue – that is, the sold option constitutes a contingent obligation under the *Helmer* line of cases, not a "liability" under the Section 752 basis rules. D. Supp. Memo. Re: *Coltec*, at 12. The Plaintiffs in *Klamath* emphasized that the Court had already held in the summary judgment ruling that they and their advisors correctly applied the (*Helmer*-based) Section 752 basis rules[5] and that any adjustment arose from the complete disregard of the transactions – not a valuation or basis adjustment within the meaning of these narrowly-construed, specific-purpose penalties. The Court agreed and followed the reasoning in the two leading Fifth Circuit opinions on the subject. *Heasley v. Commissioner*, 902 F.2d 380, 383 (5th Cir. 1990); and *Weiner v. United States*, 389 F.3d 152, 161-62 (5th Cir. 2004), *cert. denied*, 544 U.S. 1050 (2005). *Contra Zfass v. Commissioner*, 118 F.3d 184, 190 (4th Cir. 1997) (valuation penalty can apply to economic substance disallowance). After noting the conflict among the Circuits, the Court held that no valuation/basis-specific penalty applies where the existence of the underlying transaction is disregarded based upon the economic substance theory.

Of course, one need not reach the conflict between the Circuits if either Plaintiffs are correct on the two substantive issues or possess good faith/reasonable cause.

---

[5] That partial summary judgment in *Klamath* parallels the three Motions for Partial Summary Judgment Plaintiffs filed in this case.

b. No substantial understatement penalty can apply under Section 6662(d)(2)(B)(i) and (d)(2)(C)(iii) because the Plaintiffs both possessed "substantial authority" and reasonably believed that the position taken was more likely than not the correct position.

The *Klamath* Court tracks through the substantial understatement penalty to the "substantial authority" exception in Section 6662(d)(2)(B)(i) which eliminates the foundation for the penalty as to:

> . . . that portion of the understatement which is attributable to . . . the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment.

The *Klamath* Court notes that substantial authority is an objective standard, falling below the more-likely-than-not but above the reasonable-basis standards. *Klamath*, at 25, *citing* Treas. Reg. § 1.6662-4(d)(2). The Court notes that, while opinions are not themselves authorities, the authorities cited therein will constitute substantial authority, where their weight is substantial relative to the facts and contrary authority. *Id.* at 26. Here, of course, the *Helmer* line of cases, like the *Cottage Savings, Maloney*, and *Laureys, et al.,* line of cases, represented the unrivalled authority – as punctuated by the IRS' attempt to retroactively reverse *Helmer* four years later.

In the instance of an investment or other arrangement with a significant tax avoidance purpose (that is, a tax shelter as defined by the statute), the Court notes that the taxpayer must also reasonably believe the position taken is "more-likely-than-not" the proper treatment. *Id. citing* 26 U.S.C. § 6662(d)(2)(C)(iii). Based on many of the previously-noted parallel facts, the Court first held:

> The record supports a finding that substantial authority existed. The plaintiffs obtained comprehensive opinions of counsel before they filed their returns. The Holland & Hart and Olson Lemons opinion letters relied on the relevant authority at the time. (P. Exhs. 78, 81, 176, 179). In fact, this court reached some of the same conclusions when it found that the taxpayers' liabilities were properly calculated under Section 752. *Klamath*, Slip Op. at 27.

While the Court does not recite the authorities in this opinion, it did in its partial summary judgment opinion where it confirmed that *Helmer* constituted good law in 1999. *Klamath Strategic Inv. Fund, LLC ex rel St. Croix Ventures, LLC v. U.S.*, 440 F.Supp.2d 608, 626 (E.D.Tex.,2006).[6] The Court then noted that the opinions comported with Circular 230 according to an expert the Court found persuasive. A comparison of those opinions with the Curtis Mallet opinions and research given to the Ervins reflects an almost identical overlap in authorities and conclusions. Both sets comport with Circular 230 despite the IRS leveling the same criticisms here as it urged unsuccessfully in *Klamath*. The Court then held that:

> The record also supports a finding that the taxpayers reasonably believed that the tax treatment applied to the loan transactions was more likely than not the proper treatment. The plaintiffs sought the advice from Pollans, Cohen and Hrdlicka before deciding to perform these transactions. (Tr. I, 66). Although they are experienced attorneys, Patterson and Nix are not qualified tax lawyers. They sought to make a profit from the investment plan when they entered the pertinent transactions. (Tr. I, 74-75; Tr. II, 179). Based on all of the record evidence, the court finds that they were unaware of the understandings and agreements between Presidio and NatWest when they decided to enter the transactions and when they filed their returns. Accordingly, the substantial understatement penalty does not apply. *Klamath*, Slip Op. at 27.

Consider these two conclusions in light of the Ervins who lack college degrees, much less law degrees, and who relied upon every one of their long-time trusted tax advisors to confirm the reliability of the same authorities and same more-likely-than-not conclusions drawn by Curtis Mallet here and by Holland & Hart, Olson Lemons, and Judge Ward in *Klamath*.

---

[6] Specifically, the Court held: "In June of 2003, the government issued a retroactive regulation that changed the definition of liabilities to specifically include contingent obligations as well. The issuance of this regulation was due in large part to the government's attempt to curb alleged taxpayer abuse through the use of transactions similar to the ones utilized by Plaintiffs. However, taxpayers-like the Plaintiffs in this case-that engaged in the conduct before issuance of any notice could justifiably rely on *Helmer* and its progeny. Thus, the retroactivity of the Regulation is ineffective as to these Plaintiffs."

c. Plaintiffs neither negligently nor intentionally disregarded rules and regulations under Section 6662(c).

The Court separately analyzed the two prongs for the Section 6662(c) penalty.

(i) The Court rejected the heart of Defendant's negligence penalty assertion ("too good to be true") because, by regulation, no negligence penalty applies in the face of reasonable basis AND, by regulation, a taxpayer is only required to make a reasonable attempt to ascertain the correctness of the position.

The *Klamath* Court begins here by recognizing that, where a taxpayer exercises "ordinary and reasonable care in the preparation of a tax return," no negligence penalty can apply. *Id.* at 27, *citing* 26 U.S.C. § 6662(c), and Treas. Reg. § 1.6662-3(b)(1). Yet, the IRS tosses the phrase "too good to be true" around here and there as if it imposes strict liability. As the *Klamath* Court carefully documented, the opposite is true under Defendant's own regulations. First, no negligence penalty can be imposed where the taxpayer possesses a "reasonable basis" for the treatment later found to be in error. *Id.* at 28 ("There can be no finding of negligence if there was a reasonable basis for a return position. Treas. Reg. § 1.6662-3(b)(1).") By regulation, negligence applies to a situation that appears "too good to be true" ***IF*** "THE TAXPAYER FAILS TO MAKE A REASONABLE ATTEMPT TO ASCERTAIN THE CORRECTNESS OF A DEDUCTION OR CREDIT." *Id.* at 27, *quoting* Treas. Reg. § 1.6662-3(b)(1)(ii).

The tax law regularly departs from generally accepted accounting principles – just as tax accounting and GAAP regularly depart from economics. When the result so often worked by the tax law is "too bad to be true," the Commissioner is perfectly content to reap the windfall. Consider the tax on Sentinel's phantom income in 1998, tax on gross income long since lost with no recognition of the capital losses, or the Supreme Court's *Banks* opinion where the taxes can exceed the net recovery under a "winning" judgment. The best summary of these considerations can be found in the article by the longtime Sutherland Asbell & Brennan partner and former IRS

Chief Counsel who tried *Klamath*. N. Jerold Cohen, "Too Good to Be True and Too Bad to Be True," Special Report, 2005 TNT 238-26, 109 Tax Notes 1437 (Dec. 13, 2005).

(ii) The Court also rejects Defendant's suggestion that the Plaintiffs intentionally disregarded the rules and regulations based on Notice 2000-44.

"This argument is rejected" constitutes the simple response by the *Klamath* Court to Defendant's argument that the Plaintiffs somehow intentionally disregarded the rules and regulations of the Secretary in the form of Notice 2000-44. Of course, the IRS could have issued a regulation or revenue ruling, rather than a non-precedential oblique notice lacking that standing. And the IRS certainly could have timely adopted the regulation the IRS determined FOUR YEARS EARLIER was needed to reverse *Helmer*. *See* Pl. Req. Findings, Nos. 331-337; Tr. 364-365; Jt. Exs. 1, 303. For reasons that still evade comprehension, the IRS chose to issue no regulation, no revenue ruling, and not even a warning to the Plaintiffs in *Klamath* and the Ervins here until after they were persuaded to invest and after their investments were closed.

The *Klamath* Court cited five reasons for rejecting Defendant's arguments: (i) those investors, like the Ervins, decided to invest prior to the IRS issuing Notice 2000-44; (ii) those investors, like the Ervins, complied with all IRS partnership notices; (iii) those investors, like the Ervins, sought advice from qualified tax professionals; (iv) those investors, like the Ervins, promptly responded when the IRS requested information; and (v) the IRS never requested an interview of the *Klamath* investors, in contrast to the Ervins who voluntarily submitted for interview despite defects in the request. The Court does not directly address the principle that the phenomenon of (*in terrorem*) IRS notices does not rise to the level of a published revenue ruling with its added safeguards and that such a notice does not alter the law.[7]

---

[7] *See, e.g., Costantino v. TRW, Inc.*, 13 F.3d 969, 981 (6th Cir. 1994); *Guilzon v. Commissioner*,

5. **<u>The *Klamath* Court Concluded that It Possessed Partnership Jurisdiction to Consider Good Faith/Reasonable Cause and that the Investor Partners Possessed that Reasonable Cause</u>.**

After quoting Section 6664, the reasonable cause statute that overrides all four penalties, the *Klamath* Court returned to jurisdiction and then to the merits of the reasonable cause defense.

a. <u>Partnership jurisdiction includes the good faith/reasonable cause defense within the Section 6226(f) mandate of "*the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.*"</u> *Klamath*, Slip Op. at 30.

As here, Defendant asserted penalties in *Klamath* but then sought to bar the Plaintiffs from advancing their reasonable cause defense on the contention that it constituted a partner level defense that can only be asserted at the partner level under Section 6230(c)(4). Unlike the Defendant's candid response to the Court's question during oral argument here, Defendant never acknowledged in *Klamath* that the Court should consider the conduct by all partners in this partnership proceeding.

The Plaintiffs in *Klamath* pointed out that the partner level language in Section 6230(c)(4) cited by Defendant is permissive, not mandatory, and that the IRS' own Final Partnership Administrative Adjustment ("FPAA") (and the opinions) address the loans entered by the partners. The Court did not enumerate the added argument that the explicit conditions in the Section 6662 penalty statute also require consideration of the exact same facts in the context of "substantial authority," "reasonably-believed-more-likely-than-not-the-correct-position," "reasonable basis," *etc.* Based on the Court's reading of the two jurisdiction statutes (26 U.S.C. § 6226(f) and 28 U.S.C. § 1346(a)(1)) and the case law applying those statutes, the Court concluded that it possessed the partnership jurisdiction to consider the applicability of any penalty that relates to a partnership item – including the reasonable cause bar to that

---

985 F.2d 819, 822 (5th Cir. 1993).

applicability. The Court noted that the case law does not read Section 6230 or Defendant's partner-level regulation as narrowly as Defendant urges in these cases. *Id.* at 31. The *Klamath* Court then draws a parallel between that case law and its situation – a parallel that directly applies here:

> Similarly, this case involves claims by Klamath and Kinabalu through St. Croix and Rogue [the two investors' single member LLCs]. The FPAAs were based, in part, on the agreements between St. Croix and Rogue, on the one hand, and NatWest, on the other. The determination of the partners' proper bases in the partnership is affected by the court's decision that the loans must be disregarded-a decision that all concede the court has jurisdiction to make. The FPAAs for Klamath and Kinabalu implicate the information and advice received by St. Croix and Rogue. It is also undisputed that the IRS delved into these taxpayers' defenses to penalties during the administrative process preceding these adjustments. (Tr. II, 212-214). As a result, no administrative benefit would be gained by requiring additional proceedings. The court, therefore, determines that the reasonable cause defenses involving St. Croix and Rogue may be considered in connection with "the applicability of any penalty, addition to tax, or additional amount which relates to a partnership item." 26 U.S.C. § 6226(f). *Klamath*, Slip Op. at 32.

That parallel applies with equal force to the Ervins, their single member LLCs, options, FPAA, penalties, and defenses.

b. Like *Jade* and its partners, the *Klamath* investors possessed the requisite good faith/reasonable cause.

The Court begins this discussion by imposing the burden of proof upon the Plaintiffs without consideration of the Section 7491(c) penalty provisions, the excessive and erroneous nature of the FPAA, or the fact that the penalties are based on a "new issue" (economic substance not raised in the FPAA). *Id.* at 32. The Court cites the Supreme Court's precedent in *United States v. Boyle*, 469 U.S. 241, 250-51 (1985) for the proposition that to establish reasonable cause and good faith via justified reliance:

> ***. . . a taxpayer is not required to challenge the advisor's conclusion, seek a second opinion, or check the advice himself.***
> *Id.* at 33. (Emphasis added).

The Court provides three examples of unjustified reliance (advisor unfamiliar with business, advisor with [known] conflict of interest, and advisor who has been deprived of material information). There, the government urged that the *Klamath* partners failed to inquire into profits by prior BLIPS investors, knew about the tax benefits, knowingly relied upon a firm with a conflict of interest whose opinion was part of a "cookie-cutter" process that contained factual errors, and that the investors never communicated the facts to the firms. *Id.* at 33.

The Court rejected those arguments for a number of reasons, including the *Klamath* investors (like the Ervins) relied upon their longtime CPAs who (like Martin McElroy) consulted with a respected local tax lawyer (like Jesse Mountjoy), both the investors and their CPA (like the Ervins, their CPA, and their longtime tax lawyer) relied upon extensive opinions by respected firms who (consistent with IRS Circular 230) relied on the same applicable authorities and drew the same reasonable conclusions as Curtis Mallet and Judge Ward in the earlier *Klamath* opinion. Indeed, the most significant distinctions are that the Ervins appear to have been more diligent on the front end in investigating Sentinel and its bullish Euro recommendations through the Ervins' brokers (Cheyne Pace and Dagny Maidman) and in investigating the tax treatment through their Kentucky tax advisors. Similarly, Curtis Mallet and the Ervins appear to have been more diligent in analyzing the legal significance of Notice 2000-44 on the back end.

## CONCLUSION

The clarity of *Klamath* compels the conclusion that the separate "legally distinct entitlements" of the "double your money" options require that they be recognized under *Cottage Savings*, just as the uncanny parallel between the ordinary care there and here confirms that the Ervins and their trusted advisors exercised extraordinary care.

Respectfully submitted,

s/ David D. Aughtry
DAVID D. AUGHTRY
Georgia Bar No. 028010

s/ Linda S. Paine
LINDA S. PAINE
Texas Bar No. 15414000

Chamberlain, Hrdlicka, White,
Williams & Martin
191 Peachtree Street, N.E.
Thirty-Fourth Floor
Atlanta, Georgia 30303
Telephone: (404) 659-1410
Facsimile: (404) 659-1852

COUNSEL FOR PLAINTIFFS

246039.21
002871-000001

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2007, I electronically filed the foregoing **PLAINTIFFS' MEMORANDUM OF AUTHORITY ON APPLICATION OF FINAL *KLAMATH* OPINION** to the Clerk of the Court using the CM/ECF System, which will automatically send email notification of such filing to the following attorneys of record:

Stuart J. Bassin, Esq.
U.S. Department of Justice
Tax Division
Court of Federal Claims
555 4th Street, NW, Room 8822
Washington, D.C. 20044

**and via Federal Express Mail addressed to:**

Mr. Ari Bergmann
Sentinel Advisors, LLC
68 Carman Avenue
Cedarhurst, New York 11516

Robert W. Ervin and Laura Kavanaugh
Ervin Capital, LLC
450 Pryor Boulevard, P.O. Box 409
Sturgis, Kentucky 42459

Timothy W. Ervin and Vicki L. Ervin
Ervin Investments, LLC
450 Pryor Boulevard, P.O. Box 409
Sturgis, Kentucky 42459

Gary Ervin and Lisa A. Ervin
Ervin Holdings, LLC
450 Pryor Boulevard, P.O. Box 409
Sturgis, Kentucky 42459

Banque Safra - Luxembourg sa
c/o Michel Priester - Legal Dept.
10A Boulevard Joseph II, B.P. 887
Luxembourg, L-2018

s/ David D. Aughtry
David D. Aughtry