***No. 03-2164 T***
***(Judge Mary Ellen Coster Williams)***

***IN THE UNITED STATES COURT OF FEDERAL CLAIMS***

JADE TRADING, LLC, by and through ROBERT W. ERVIN and LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

SUPPLEMENTAL MEMORANDUM FOR THE UNITED STATES ON APPLICATION OF *KLAMATH STRATEGIC INVESTMENT FUND, LLC v. UNITED STATES*

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
STUART J. BASSIN
MATTHEW C. HICKS
JENNIFER W. WILSON
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6418

**Page**

## TABLE OF CONTENTS

Supplemental Memorandum for the United States on Application of
*Klamath Strategic Investment Fund, LLC v. United States* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. *Klamath* Reflects a Straightforward Application of the Economic Substance Analysis Outlined in *Coltec* to a Tax Shelter Transaction . . . . . . . . . . 3

II. The *Klamath* Court's Penalty Rulings Should Carry No Weight in this Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TABLE OF AUTHORITIES

**Cases:**

*ACM P'ship v. Comm'r,* 157 F.3d 231, 260 (3d Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Coltec Industries, Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006),
*cert. denied* 2007 WL 506052 (Feb. 20, 2007) . . . . . . . . . . . . . . . . . . . . . . . . 3,4, 5, 6

*Klamath Strategic Investment Fund, LLC v. United States,*
E. D. Tex. No. 5:04-CV-278 (January 31, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*Nicole Rose Corp. v. Commissioner,* 320 F.3d 282 (2d Cir.2002) . . . . . . . . . . . . . . . . . . 4

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 6221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

§ 6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

§ 6662 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Page**

**Miscellaneous:**

Treasury Regulations (26 C.F.R.):

§ 301-6221-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

§ 301.6221-1T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2164 T

(Judge Mary Ellen Coster Williams)

JADE TRADING, LLC, by and through ROBERT W. ERVIN
and LAURA KAVANAUGH ERVIN on behalf of ERVIN
CAPITAL, LLC, Partners Other Than the Tax Matters Partner,

Plaintiffs

v.

THE UNITED STATES,

Defendant

SUPPLEMENTAL MEMORANDUM FOR THE
UNITED STATES ON APPLICATION OF
*KLAMATH STRATEGIC INVESTMENT FUND, LLC v. UNITED STATES*

Pursuant to the Court's order of March 12, 2007, the United States files this supplemental memorandum explaining the application of a recent Texas district court opinion in *Klamath Strategic Investment Fund, LLC v. United States*, E. D. Tex. No. 5:04-CV-278 (January 31, 2007) (hereinafter *Klamath*), to the issues in this case.

BACKGROUND

The previous briefs[1] submitted by the United States in this case separately addressed the

[1] This memorandum will refer to the Post-Trial Brief for the United States (D. Br.); Post-trial Reply Brief for the United States (D. Reply); and the Supplemental Memorandum for the United States on Application of Coltec (Coltec Supp.). The slip opinion in *Klamath* is also attached to this memorandum.

propriety of plaintiffs' proposed treatment of the various steps involved in the Jade "Son of BOSS" tax shelter transaction under the substantive tax law and the applicability of penalties to any underpayment of tax resulting from plaintiffs' improper reporting of the transaction. We explained (D. Br. at 42-53, D. Reply at 11-20, Coltec Supp. at 3-11), that several different lines of authority–principally, the economic substance doctrine–required denial of the tax benefits plaintiffs contend the Son of BOSS tax shelter produced.[2] In addition, we demonstrated (D. Br. at 66-87, D. Reply at 30-37) that various penalties were applicable to underpayments attributable to plaintiffs' improper treatment of the transaction, that the Court lacked jurisdiction in this partnership proceeding to address the Ervins' reasonable cause defense to these penalties, and that the Ervins had nonetheless failed to establish factually any reasonable cause defense.

*Klamath* is a recent trial court opinion from another circuit which addresses comparable issues in the context of a different type of Son of BOSS tax shelter transaction. The taxpayers in that shelter allegedly engaged in various loan and foreign exchange transactions through a set of related entities. When they withdrew from the shelter soon thereafter, the taxpayers claimed large loss deductions attributable to the difference between the economic value of their ownership interests in certain entities and the inflated tax basis they ascribed to those interests. After the Service issued an FPAA determining that the tax treatment underlying these loss deductions was improper and determining the applicability of penalties, the taxpayers brought suit. Following a

[2] We also explained (D. Br. at 53-66, D. Reply at 20-29) how several different lines of authority require characterization of the option spreads as a single small position, not as two gigantic offsetting trades (as plaintiffs argued). *Klamath* does not address this argument or the applicable authority, although the opinion emphasized that–"The court must judge the economic substance of these transactions by what the entire record reflects, as opposed to the terms of the written agreements." Slip op. at 17. Here, too, the Court should evaluate the true substance of the offsetting positions, not the paper formalities.

trial, the *Klamath* court upheld the Service's determinations on the proper tax treatment of the shelter, concluding that the transaction which produced the claimed tax benefits must be disregarded because it lacked economic substance. Slip op. at 15-21. Nonetheless, the court ruled that penalties could not be imposed upon the taxpayer under the unique facts of that case. Id. at 22-35.

## ANALYSIS

### I. *KLAMATH* REFLECTS A STRAIGHTFORWARD APPLICATION OF THE ECONOMIC SUBSTANCE ANALYSIS OUTLINED IN *COLTEC* TO A TAX SHELTER TRANSACTION.

*Coltec Industries, Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006), *cert. denied* 2007 WL 506052 (U.S., Feb. 20, 2007) (hereinafter *Coltec*), established the parameters of the economic substance doctrine in the Federal Circuit. Most important, it established that the doctrine required an objective analysis of the profit potential of "the transaction . . . that gave rise to the alleged tax benefit." 454 F.3d at 1356-57. Applying an objective analysis to the transaction that gave rise to the alleged tax benefits–Garrison's assumption of Garlock's asbestos liabilities in exchange for the $375 million note– the Federal Circuit concluded that as–

> Garrison's assumption of Garlock's liabilities in exchange for the Stemco note served no purpose other than to artificially inflate Garlock's basis in its Garrison stock[. T]hat transaction must be disregarded for tax purposes."

Id. at 1360. Thus, having objectively determined that the relevant step in the transaction did not produce non-tax benefits (and discounting subjective testimony from Coltec's executives about their subjective beliefs), the Federal Circuit concluded that the transaction lacked economic substance and that Coltec was not entitled to the disputed tax benefits.

*Coltec* defines the burden plaintiffs must meet here under the economic substance

analysis. The decision first requires the Court to identify the transaction giving rise to the claimed tax benefit–i.e., the Ervin LLCs' contributions of the option spreads to Jade in exchange for ownership interests in Jade. That is the step which plaintiffs contend produced the disparity between tax basis and economic value at the core of the shelter. (Coltec Supp. at 8.) Next, *Coltec* requires the Court to objectively determine whether that transaction would produce a profit after transaction costs aside from tax benefits. As we explained, the $750,000 consulting fee each of the Ervins' LLCs paid to New Vista destined the Ervin LLCs to incur massive losses on the contributed option spreads, even if one ignores the other fees and transaction costs they paid. (Coltec Supp. at 9-11.) In sum, a proper application of *Coltec* leads inexorably to the conclusion that the Ervin LLCs could not earn a profit from their contribution of the option spreads to Jade and that the contribution must be disregarded for tax purposes.

The *Klamath* court's analysis, while differing in its particulars from *Coltec*, reaches the same result mandated here by *Coltec*. Describing the economic substance doctrine, the court noted that–

> a two prong test applie[s] to determine whether a transaction had economic substance. The first prong considers whether the transaction "has no economic substance because no reasonable possibility of a profit exists." *Compaq*, 277 F.3d at 781-82. The second prong considers whether there existed a tax-independent business purpose for the transaction (a subjective inquiry). . . .
>
> When applying the economic substance doctrine, courts emphasize that the transaction to be analyzed is the particular transaction that gives rise to the tax benefit, and not collateral transactions which do not produce tax benefits. *Coltec Indus., Inc. v. United States,* 454 F.3d 1340, 1356-57 (Fed.Cir.2006); *Nicole Rose Corp. v. Comm'r,* 320 F.3d 282, 283-84 (2d Cir.2002); *ACM P'ship v. Comm'r,* 157 F.3d 231, 260 (3d Cir.1998). In the present case, the transactions that provide the cornerstone for the tax benefits are the loan agreements with NatWest. If these transactions fail the economic substance test, then the court will disregard those transactions for federal tax purposes.

Slip op. at 8-9. Analyzing the economic substance of the critical transaction–*i.e.*, the NatWest loan agreements–the *Klamath* court found that–

> in truth, NatWest did not make any loans and therefore the court determines that there was no reasonable expectation that the loans would yield a profit. Instead, because of the structure of the agreements and the tacit understandings between the bank and Presidio, all of the investors would cease their participation in the plan at the end of 60 days or very soon thereafter. In light of the restrictions on the use of the collateral and the collateral value ratio required by the bank, there is no reasonable possibility that these plaintiffs could have used the loan proceeds for leverage in foreign currency trading transactions, as Presidio had represented they could. The loan transactions lacked economic substance.

Slip op. at 20-21. Accordingly, the *Klamath* court concluded that the loan transactions lacked economic substance and disregarded those transactions, thereby denying the taxpayers the claimed tax benefits.

In sum, *Klamath* reinforces the conclusion, required by *Coltec*, that the Jade Son of BOSS transaction at issue here lacks economic substance. Both decisions require this Court to identify the transaction which produces the claimed tax benefits, and both decisions focus upon the objective facts concerning the profit potential of that transaction–and no other.[3] Likewise, as the *Coltec* court disregarded implausible testimony from the company's executives regarding their subjective purposes for the transaction, the *Klamath* court's analysis of economic substance gave no weight to its findings that the taxpayers irrationally thought the transactions could be

---

[3] The second prong of the analysis undertaken by the *Klamath* court–its exploration of the taxpayers' subjective purpose–is not called for under *Coltec*. Under *Coltec*, an objective analysis of profit potential is paramount. Thus, the laundry list of statements regarding the Ervins' supposed expectations and Sentinel's sales puffery regarding profit potential listed by plaintiffs (at 4-5) are of no consequence in this circuit.

profitable.[4] Ultimately concluding that the critical transactions could not produce economic benefits in excess of the transaction costs, both the *Coltec* and the *Klamath* courts concluded that the transactions lacked economic substance. And, as we have shown before, a similar analysis requires this Court to conclude that the Ervin LLCs' contribution of the option spreads lacked economic substance.

## II. THE *KLAMATH* COURT'S PENALTY RULINGS SHOULD CARRY NO WEIGHT IN THIS CASE.

Our post-trial briefs on the penalty issues demonstrated three principal points. First, we demonstrated that various penalties imposed by Section 6662(b)–the overvaluation penalty, the substantial understatement penalty, and the negligence penalty–applied to underpayments attributable to Jade's erroneous tax treatment of the Son of BOSS transaction. (Def. Br. at 66-83; Def. Reply at 30-37.) Second, we established that this Court lacked jurisdiction in this proceeding to address the partner-level reasonable cause defense asserted by the Ervins based upon the Curtis Mallet opinion letter. (Def. Br. at 41-42 and 81-83, Def. Reply at 33-35.) Finally, we showed that, even if the Court were to reach the merits of the reasonable cause defense, plaintiffs had not established the factual predicate necessary to support the defense. (Def. Br. at 76-86, Def. Reply at 35-37.)

When presented with different governing precedent and a far different set of facts, the *Klamath* court reached different conclusions on the three corresponding legal and factual issues in that case. First, the court determined that, as a matter of law, the overvaluation penalty and

---

[4] The *Klamath* court (slip op. at 8) found that Nix and Patterson's "primary motives had been to make a profit. They also recognized that there was a potential for a very large profit return" (footnote and record citations omitted). Those findings of subjective wishful thinking, however, did not support a finding that the transactions had economic substance.

substantial understatement penalties do not apply where the overvaluation or understatement results from application of the economic substance doctrine. Slip op. at 23-24. Second, to the extent that negligence penalties were applicable, the *Klamath* court ruled that it had jurisdiction to determine a partner-level reasonable cause defense to the penalty. Slip op. at 29-32. Finally, the *Klamath* court ruled that the participants in the Klamath transaction had established reasonable cause. Slip op. at 32-35. None of those rulings should have any application here.

A. The *Klamath* court's determination of the applicability of the overvaluation and substantial understatement penalties to underpayments created by application of the economic substance doctrine reflects nothing more than adherence to Fifth Circuit precedent on a legal question–precedent that has been rejected by Tax Court and five other circuits. As the *Klamath* court stated–

> According to the plaintiffs, if the court disregards the loan transactions because the transaction lacks economic substance, then the underpayment of tax is not "attributable to" any gross valuation misstatement. Instead, the underpayment would be attributable to the disregard of the transactions. . . .
>
> Although the rule in the Fifth Circuit differs from the rule in other circuits, . . . this court is bound to follow the law in the Fifth Circuit. Accordingly, the penalty for a gross valuation misstatement does not apply when the IRS totally disregards a transaction as lacking economic substance.

Slip op. at 24 (citations omitted). Thus, the *Klamath* court did nothing more than follow eccentric circuit precedent on a disputed issue of law. This Court, however, is not bound by Fifth Circuit precedent and it should, as we have explained before, follow the majority view that the overvaluation and substantial understatement penalties are applicable to underpayments resulting from application of the economic substance doctrine. (See Def. Br. at 69-71; Def. Reply at 32.)

B. Contrary to the *Klamath* court's conclusion, this Court lacks jurisdiction to address

a partner-level reasonable cause defense like that asserted by the Ervins in this case and by Messrs. Nix and Patterson (or their LLCs, St. Croix and Rogue) in *Klamath*. As we explained before (D. Br. at 41-42, D. Reply at 34-35), this Court's jurisdiction is limited to determination of the "tax treatment of any partnership item (and, the applicability of any penalty . . . which relates to the an adjustment to a partnership item)." Section 6221. A "partnership item" is defined as "any item required to be taken into account for the partnership's taxable year . . . to the extent regulations prescribed by the Secretary provide that . . . such item is more appropriately determined at the partnership level than at the partner level." Section 6231(a)(3). The regulations implementing these provisions specifically provide that "partner-level defenses . . . [to penalty determinations] can only be asserted through refund actions following assessment and payment." Temp. Treas. Reg. §301.6221-1T(c).[5] In sum, the issue is resolved by the language of the statute and regulations, which firmly establish that a partner-level reasonable cause defense may not be litigated in an FPAA proceeding like the instant case.

---

[5] During preparation of this brief, the United States discovered a technical, non-substantive error in its prior briefs (Def. Br. at 41 and 84; Def. Reply at 34) on this issue. The temporary regulation quoted above applies to the year in suit and all tax years beginning after 1997. The final regulation, which replaced the temporary regulation was quoted in our prior briefs, applied only to post-suit tax years. That final regulation (not applicable here, but quoted previously) includes an equivalent provision that "partner-level defenses . . . [to penalty determinations] may not be asserted in the partnership-level proceeding, but may be asserted through separate refund actions." Treas. Reg. § 301.6221-1(d). Thus, the controlling temporary regulation and the previously quoted final regulation state much the same rule; if anything, the controlling temporary regulation is even clearer that a partner-level reasonable cause defense "can only be asserted through [a] refund action."

More important, the *Klamath* court did not discuss either the temporary or the final regulation in its opinion. Slip op. at 31. It, therefore, erroneously stated that the regulation only "suggests" that the reasonable cause defense of a partner is a partner-level defense. To the contrary, the language of the regulation is explicit, clear, and binding; it has the force of law and is not a suggestion.

A reasonable cause defense asserted by a non-managing partner, like that asserted by the Ervins and their LLCs in this case, is such a partner-level defense that cannot be litigated in an FPAA proceeding. Under the facts presented in *Klamath*, the partnership could have asserted a partnership-level reasonable cause defense in the FPAA proceeding if, for example, Klamath itself or, depending upon the circumstances, Klamath's managing partner (Presidio), had established reasonable cause and good faith based upon a satisfactory opinion letter. In *Klamath*, however, the reasonable cause defense was predicated upon opinion letters obtained by St. Croix and Rogue (entities occupying the same position in the structure as the Ervin LLCs). These entities did not control or manage Klamath and, therefore, their assertion of reasonable cause is a partner-level defense which can only be presented in a subsequent refund suit. That is even more so in this case, where the Ervins did not control or manage Jade and Mr. Bricker had not even been retained at the the time that Jade filed the return in dispute; any reasonable cause defense asserted by the Ervins relates to partner level conduct and it may not be litigated in this partnership level proceeding. Nonetheless, while its reasoning is far from clear,[6] the *Klamath*

---

[6] The *Klamath* court summarized its rather convoluted support for this conclusion by stating that–

> this case involves claims by Klamath and Kinabalu through St. Croix and Rogue. The FPAAs were based, in part, on the agreements between St. Croix and Rogue, on the one hand, and NatWest, on the other. The determination of the partners' proper bases in the partnership is affected by the court's decision that the loans must be disregarded-a decision that all concede the court has jurisdiction to make. The FPAAs for Klamath and Kinabalu implicate the information and advice received by St. Croix and Rogue. It is also undisputed that the IRS delved into these taxpayers' defenses to penalties during the administrative process preceding these adjustments. As a result, no administrative benefit would be gained by requiring additional proceedings. The court, therefore, determines that the reasonable cause defenses involving St. Croix and Rogue may be considered in connection with "the applicability of any penalty, addition to tax, or additional

court appears to have concluded that St. Croix and Rogue's reasonable cause defense could be asserted in a partnership level proceeding because it would be efficient to do so.

The United States respectfully disagrees. The statutes and the governing regulations establish the bounds of the Court's jurisdiction, and that jurisdiction may not be expanded by judicial ruling, even if the *Klamath* court felt that "no administrative benefit would be gained by requiring additional proceedings." Slip op. at 32. Here, the statutes and regulations are clear, and they mandate a conclusion that a partner-level reasonable cause defense, like that the Ervins and their LLCs assert here, may not be litigated in an FPAA proceeding. Congress might have enacted a different jurisdictional statute–one more to the liking of the *Klamath* court–but it did not, and this Court has no choice other than to follow the law and to decline jurisdiction over the Ervins' partner-level reasonable cause claim.[7]

C. Even if the Court were to determine that it had jurisdiction to address the reasonable cause issue in this case, differences in the facts between *Klamath* and this case render that court's analysis of reasonable cause unhelpful. For example, in *Klamath*, the critical fact finding made by the court was that the taxpayers "developed an understanding of the tax benefits

---

amount which relates to a partnership item."

Slip op. at 32 (citations omitted).

[7] Plaintiffs (at 7 n.4) badly misread counsel's statements at closing argument in suggesting that the United States has argued that the conduct of all partners is relevant to the reasonable cause defense. Review of the following page of the transcript (Tr. 3856) demonstrates that counsel argued that the conduct of all partners was relevant to the applicability of penalties, but that the evidence about the opinion letters obtained by the Ervins was relevant only to the partner-level reasonable cause defense. (The transcript may incorrectly suggest that the statements on page 3856 were made by the Court; the context, however, demonstrates that those statements were made by counsel.)

available to them only after they elected not to stay in the investments." Slip op. at 34. Here, the Ervins' exploration of their tax shelter began with a review of the BDO tax marketing opinion and meetings with Mr. DiMuzio–a BDO tax specialist. In *Klamath*, the court did not address the factual representations underlying the opinion letters. Slip op. at 33-34. Here, the Ervins' erroneous factual representations, such as their claimed ability to profit from the Jade Son of BOSS transaction, were an essential factual predicate for the opinion letters issued by Mr. Bricker. Likewise, the *Klamath* court did not address the independence of the law firm which rendered the opinion letter. Slip op. at 34. In contrast, the evidence in this case demonstrates that BDO and Sentinel engaged Mr. Bricker to operate an opinion-writing mill, that Mr. Bricker had been allowed to execute his own Son of BOSS transactions by the promoters without paying the same fees as his clients, and that Mr. Bricker had copied much of his analysis verbatim from the BDO tax marketing opinion. These and other factual differences between the cases doom any attempt to apply any lessons from the *Klamath* reasonable cause analysis to this case.[8]

[8] Plaintiffs' attempt (at 7-9) to cherry-pick various facts of dubious accuracy and marginal significance in support of their reasonable cause argument must fail. The bottom-line is that reasonable cause inevitably turns upon the unique facts of each case; the critical facts here are that plaintiffs intended to purchase a tax shelter from the outset and the infirmities in the opinion letter they obtained from Mr. Bricker render that letter worthless as "penalty insurance."

CONCLUSION

In sum, *Klamath* has little bearing on the proper resolution of this case. Accordingly, as we have demonstrated before, the law and the facts presented here mandate that the Court sustain the Service's FPAA determinations.

Respectfully submitted,

s/ Stuart J. Bassin
STUART J. BASSIN
Attorney of Record for Defendant
Department of Justice
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
TELEPHONE (202) 307-6418
FAX (202) 514-9440
E-MAIL: stuart.j.bassin@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MATTHEW C. HICKS
Trial Attorney
JENNIFER P. WILSON
Trial Attorney

Of Counsel

March 23, 2007