129 T.C. No. 5

UNITED STATES TAX COURT

ARLENE NUSSDORF, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 24289-05, 24297-05, 24301-05. Filed August 16, 2007.

Held: Certain items relating to the purported contributions of certain Euro options to Evergreen Trading, LLC, by its respective members, including such members' respective bases in such options, are partnership items, as defined in sec. 6231(a)(3), I.R.C.

David D. Aughtry, Linda S. Paine, and William E. Buchanan, for petitioners.

William C. Bogardus, for respondent.

---

[1]Cases of the following petitioners are consolidated herewith: Glenn Nussdorf & Claudine Strum, docket No. 24297-05, and Stephen & Alicia Nussdorf, docket No. 24301-05.

OPINION

CHIECHI, Judge: These cases are before the Court on respondent's respective motions to dismiss for lack of jurisdiction (respondent's respective motions) and petitioners' respective motions to dismiss partnership items and affected items (petitioners' respective motions). We shall grant respondent's respective motions and deny petitioners' respective motions.

Background

The record establishes and/or the respective parties in these cases do not dispute the following.

Petitioners in these consolidated cases resided in the State of New York at the time they filed their respective petitions.

During the taxable years 1999 and 2000, petitioners Arlene Nussdorf, Glenn Nussdorf, and Stephen Nussdorf, through certain flowthrough entities that they respectively owned and that are to be disregarded for Federal income tax (tax) purposes (flowthrough entities), were members of or partners[2] in Evergreen Trading, LLC (Evergreen Trading), an entity subject to the provisions of sections 6221-6234.[3]

---

[2]The Court's use of the words "members", "partners", and similar words is for convenience only and does not indicate the Court's agreement that such words reflect the substance of what transpired.

[3]All section references are to the Internal Revenue Code (Code) in effect at all relevant times.

On November 18, 1999, each of the flowthrough entities purportedly entered into two option trades involving Euros with AIG International, Inc. (AIG). One of those option trades was the purported purchase from AIG on November 18, 1999, of an option for a stated volume of Euros, which petitioners refer to as the purchased Euro option. The second option trade was the sale to AIG on the same date of an option for essentially the same volume of Euros but at a different so-called strike or exercise price, which petitioners refer to as the sold Euro option. The two option trades with AIG into which petitioners' respective flowthrough entities purportedly entered on November 18, 1999, may be summarized as follows:

| | Option Premium | Payoff Amount (U.S. $ Equivalent) | Strike Price |
|---|---|---|---|
| Long Position | $26,700,190 | $548,240,768 | 1.0535 |
| Short Position | $26,433,172 | $548,761,167 | 1.0545 |

(For convenience, we shall sometimes refer collectively to the purported purchased Euro option and the purported sold Euro option as the Euro options.)

On November 30, 1999, petitioners' respective flowthrough entities purportedly contributed their respective Euro options and $667,500 in cash to Evergreen Trading in exchange for slightly less than a one-third member or partner interest therein.

During December 1999, Evergreen Trading established two substantially similar offsetting currency options that were executed on December 10, 1999, and that had expiration dates of December 21, 1999, and settlement dates of December 21, 2001. The costs of the premiums of those currency options were $93,861,797 and $93,861,531, respectively. The combined positions were established so that one position was guaranteed to have a payout equal to the total premiums of both positions, while the other position was guaranteed to have a minimal payout. The first position created a gain if the CZK/EUR[4] was at or above a set exchange rate, while the second position created a similar gain if the CZK/EUR was below the same exchange rate. The position not incurring a gain and having a minimal payout was settled on December 21, 1999, with a loss reported of $89,215,088 after a payout of $4,646,709. The second position was partially unwound on December 30, 1999, for proceeds of $102,820,761 and a reported gain of $49,788,977.

As a result of the above-described currency transactions, Evergreen Trading reported in its 1999 partnership tax return a total ordinary loss from currency trades of $39,426,091. A portion of such loss totaling $11,691,521 was allocated to petitioners' respective flowthrough entities.

---

[4]CZK/EUR reflects the exchange rate of Czech korunas for Euros.

On January 18, 2000, the remaining balance of the second option was unwound resulting in $79,208,185 received by Evergreen Trading with respect to which Evergreen Trading reported in its 2000 partnership tax return a gain of $38,378,419. A portion of such gain totaling $11,247,796 was allocated to petitioners' respective flowthrough entities.

During the latter part of March 2000, petitioners' respective flowthrough entities withdrew from Evergreen Trading and paid a 5-percent withdrawal fee of $159,302. When such entities withdrew from Evergreen Trading, each received a liquidating distribution of 192,602 Euros with a fair market value of $185,438. No other cash or property was distributed to petitioners' respective flowthrough entities (or to petitioners in these cases).

On December 17, 2002, respondent issued a notice of beginning of administrative proceeding with respect to Evergreen Trading for the taxable year 1999, and on March 19, 2003, respondent issued such a notice with respect to Evergreen Trading for the taxable year 2000. On September 26, 2005, respondent issued a notice of final partnership administrative adjustment (FPAA) with respect to Evergreen Trading for the taxable years 1999 and 2000.

In the FPAA that respondent issued with respect to Evergreen Trading for the taxable years 1999 and 2000, respondent made the

following adjustments:

1. It is determined that neither Evergreen Trading, LLC nor its purported partners have established the existence of Evergreen Trading, LLC as partnership as a matter of fact.

2. Even if Evergreen Trading, LLC existed as a partnership, the purported partnership was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners. The formation of Evergreen Trading, LLC, the acquisition of any interest in the purported partnership by the purported partner, the purchase of offsetting options, the transfer of offsetting options to a partnership in return for a partnership interest, the purchase of assets by the partnership, and the distribution of those assets to the purported partners in complete liquidation of the partnership interests, and the subsequent sale of those assets to generate at a loss, all within a period of less than six months, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes. Accordingly, the partnership and the transactions described above shall be disregarded in full and any purported losses resulting from these transactions are not allowable as deductions are not allowed for federal income tax purposes.

3. It is determined that Evergreen Trading, LLC was a sham, lacked economic substance and, under § 1.701-2 of the Income Tax Regulations, was formed and availed of in connection with a transaction or transactions in taxable year 1999, a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. It is consequently determined that:

    a. the Evergreen Trading, LLC is disregarded and that all transactions engaged in by the purported partnership are treated as engaged in directly by its purported partners. This includes the

determination that the assets purportedly acquired by Evergreen Trading, LLC, including but not limited to foreign currency options, were acquired directly by the purported partners.

b. the foreign currency option(s), purportedly contributed to or assumed by Evergreen Trading, LLC, are treated as never having been contributed to or assumed by said partnership and any gains or losses purportedly realized by Evergreen Trading, LLC on the option(s) are treated as having been realized by its partners.

c. contributions to Evergreen Trading, LLC will be adjusted to reflect clearly the partnership's or purported partners' income.

4. It is determined that the Euro short positions (written call options) transferred to Evergreen Trading, LLC constitute liabilities for purposes of Treasury Regulation §1.752-6T, the assumption of which by Evergreen Trading, LLC shall reduce the purported partners' bases in Evergreen Trading, LLC in the amounts of $26,433,171 for each of the three partners, but not below the fair market value of the purported partnership interest.

5. It is determined that trading losses of $38,837,363 claimed by Evergreen Trading, LLC are part of straddle positions as governed by § 1092 and as such are nondeductible losses in the 1999 tax year. Limitations imposed by § 1092 include the limitation that deductible trading losses incurred as part of straddle positions are limited to only those amounts in excess of unrecognized trading gains.

6. It is determined that neither Evergreen Trading, LLC nor its purported partners entered into the option(s) positions or purchase the foreign currency or stock with a profit motive for purposes of § 165(c)(2).

7. It is determined that, even if the foreign currency option(s) are treated as having been con-

tributed to Evergreen Trading, LLC, the amount treated as contributed by the partners under section 722 of the Internal Revenue Code is reduced by the amounts received by the contributing partners from the contemporaneous sales of the call option(s) to the same counter-party. Thus, the basis of the contributed option(s) is reduced, both in the hands of the contributing partners and Evergreen Trading, LLC. Consequently, any corresponding claimed increases in the outside basis in Evergreen Trading, LLC resulting from the contributions of the foreign currency option(s) are disallowed.

8. It is determined that the adjusted bases of the long call positions (purchased call options), zero coupon notes, and other contributions purportedly contributed by the partners to Evergreen Trading, LLC has not been established under I.R.C. § 723. It is consequently determined that the partners of Evergreen Trading, LLC have not established adjusted bases in their respective partnership interests in an amount greater that zero (-0-).

9. It is further determined that, in the case of a sale, exchange, or liquidation of Evergreen Trading, LLC partners' partnership interests, neither the purported partnership nor its purported partners have established that the bases of the partners' partnership interests were greater than zero for purposes of determining gain or loss to such partners from the sale, exchange, or liquidation of such partnership interest.

10. Accuracy-Related Penalties

It is determined that the adjustments of partnership items of Evergreen Trading, LLC are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the partnership or its partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions. In addition, all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum, (1) substantial understatements of

> income tax, (2) gross valuation misstatement(s), or (3) negligence or disregarded rules or regulations. There has not been a showing by the partnership or any of its partners that there was a reasonable cause for any of the resulting underpayments, that the partnership or any of its partners acted in good faith, or that any other exceptions to the penalty apply. It is therefore determined that, at a minimum, the accuracy-related penalty under Section 6662(a) of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of Evergreen Trading, LLC. The penalty shall be imposed on the components of underpayment as follows:
>
> A. a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.
>
> B. a 20 percent penalty shall be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), 6662(c) of the Internal Revenue Code.
>
> C. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as provided by sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.
>
> D. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3), and 6662(e) of the Internal Revenue Code. [Reproduced literally.]

On September 26, 2005, respondent issued respective notices of deficiency to petitioners in these cases for the taxable years 1999 and 2000. In those respective notices, respondent made the

following determinations:[5]

1. The $11,606,771 and $15,301,146 grantor trust losses for 1999 and 2000 flowed from Evergreen Trading to the Arlene Nussdorf Trust then to your 1040s, interest income in the amounts of ($2,488) and ($2,842) for 1999 and 2000 flowed from Evergreen Trading to the Arlene Nussdorf Trust then to your 1040s, Investment interest of $83,527 and $195,776 for 1999 and 2000 flowed from Evergreen Trading to the Arlene Nussdorf Trust then to your 1040s, Short term capital gain of ($324) for 2000 flowed from Evergreen Trading to the Arlene Nussdorf Trust then to your 1040. All of these items are disallowed because you have failed to establish (1) that the purported loss was sustained in any amount by either you or any entity in which you held an interest, (2) that the transaction purportedly generating the loss in question was entered into for profit within the meaning of I.R.C. Section 165(c)(2), or (3) that any portion of the loss in question is allowable as a deduction under any other provision of the Internal Revenue Code. You have also failed to establish that, even if loss was sustained and would otherwise be deductible, any deduction relating to the loss is not specifically limited or disallowed by any provision of the Internal Revenue Code, including without limitation §§165, 183, 212, 704(d), 1366(d), or 465.

2. It is further determined that to the extent the loss in question is attributable to an investment in offsetting options, the loss is disallowed because the transactions were entered into for purposes of tax avoidance. The transactions giving rise to the loss, including the formation of the purported partnership, Arlene Nussdorf Trust's acquisition of an interest in the partnership, the purchase of the offsetting options, the subsequent

[5]For convenience, we quote from the notice of deficiency that respondent issued to petitioner Arlene Nussdorf in the case at docket No. 24289-05. That notice of deficiency is virtually the same as the respective notices of deficiency that respondent issued to petitioners in the cases at docket Nos. 24297-05 and 24301-05.

transfer of the options by the Arlene Nussforf Trust to a partnership in return for a partnership interest, the purchase of assets by the partnership, and the distribution of those assets to the Arlene Nussdorf Trust in complete liquidation of it's partnership interest, and the subsequent sale of those assets to generate at a loss, all within a period of less than 5 months, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes. As such, any loss incurred in connection with the transactions in question are not deductible.

3. It is further determined that the loss deduction claimed on your 1999 and 2000 federal income tax return is disallowed because the Evergreen Trading partnership with reference to which you determined basis in the Euros sold is a sham and should not be recognized for federal income tax purposes.

4. It is further determined that the deductions referred to under 1) claimed as a loss for tax years 1999 and 2000 are disallowed because you have failed to establish the basis in the partnership interests in Evergreen Trading held by the Arlene Nussdorf Trust was greater than zero. You have failed to establish the basis in the Euros sold or disposed of was greater than zero ($0) for purposes of determining the amount of the purported loss under §165(b).

5. It is further determined that the deduction for the loss claimed is disallowed to the extent that the provisions of Chapter 1, Subchapter K of the Internal Revenue Code were used to calculate basis in the Property sold. Evergreen Trading was formed or availed of in connection with a transaction or transactions in taxable years 1999 and 2000 a principal purpose of which was to reduce substantially the present value of your federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. The manner in which you and Evergreen Trading accounted for the foreign currency option transactions in question violated the intent of Subchapter K. Accordingly, the parties' accounting for the transactions should be

adjusted, pursuant to the authority contained in Treas. Reg. § 1.701-2, to achieve results that are consistent with the intent of subchapter K by ignoring the existence of the partnership, or treating transactions purportedly engaged in by the partnership as engaged in directly by the purported partners.

6. It is further determined, in the alternative, that the loss claimed on your 1999 and 2000 federal income tax returns should be decreased by the items listed under 1) in the amount of $11,687,810 and $15,495,756 to reflect the limitation on Arlene Nussdorf Trust's adjusted basis in it's partnership interests resulting from it's contribution of it's position(s) in the option transaction(s) to the partnerships, pursuant to Treas. Reg. § 1.752-06T.

7. It is further determined, in the alternative, that the loss claimed on your 1999 and 2000 federal income tax return should be decreased in the amount of $11,687,810 and $15,495,756 to limit any loss incurred by you and the partnership in connection with the option transaction to the amount actually at risk in the transaction, pursuant to Internal Revenue Code § 465(b)(4).

8. It is further determined, in the alternative, that the loss claimed on your 1999 and 2000 federal income tax return should be decreased by the amount of $11,687,810 and $15,495,756 to reflect the fact that the amount invested in the option transaction purportedly generating the losses claimed represents a single, unitary investment of $26,700,190 in a single option position rather than a net investment in the same amount in offsetting option positions.

9. It is further determined that no deduction is allowed for any legal, accounting, consulting and advisory fees claimed since you failed to establish that such expenditures were incurred, and if incurred, are deductible under any provision of the Internal Revenue Code, including but not limited to Internal Revenue Code §§ 183 and 212.

> 10. The partnership's primary purpose was for the creation of tax losses. The tax losses reported in the 1999 tax year are straddle transactions as defined by IRC 1092. As such the losses are subject to offsetting of the unrecognized gains reported in the 2000 tax year. Additionally, the partnership is disregarded for federal tax purposes with all transactions being reversed and previously reported inflated basis if the partners relating to contribution of offsetting long and short currency positions are disregarded along with reported capital losses, investment interest expense, distributed property and capital contributions reversed in their entirety and all transactions are treated as having been engaged in by the partners directly. [Reproduced literally.]

Petitioners in these cases timely filed petitions in response to the respective notices of deficiency that respondent issued to them. In those respective petitions, petitioners alleged in pertinent part that petitioners invoked "the jurisdiction of this Court primarily for the purpose of confirming that the Notice [of deficiency] is invalid and no jurisdiction exists" and that "The adjustments and penalties in the Notice [of deficiency] constitute partnership and/or affected items * * * under Code Sections 6221 and 6231."[6] Petitioners further alleged in pertinent part in the respective petitions in these cases:

> e. No partnership proceeding has yet been commenced under Section 6226, much less concluded.
>
> f. On the same day Respondent issued the

[6]For convenience, we quote from the petition filed in the case at docket No. 24289-05. That petition is virtually the same as the respective petitions filed in the cases at docket Nos. 24297-05 and 24301-05.

Notice, September 26, 2005, Respondent also issued a notice of Final Partnership Administrative Adjustment ("FPAA") to Evergreen Trading.

g. Consistent with the precedent of this Court in, inter alia, Maxwell, supra, the ostensible Notice is a nullity.

Around February 21, 2006, petitioners Glenn Nussdorf and Claudine Strum in the case at docket No. 24297-05 filed on behalf of GN Investments, LLC,[7] a partner other than the tax matters partner of Evergreen Trading, a complaint in the United States Court of Federal Claims that alleges error in the adjustments made in the FPAA issued with respect to Evergreen Trading for the taxable years 1999 and 2000. That case is still pending in that Court.

## Discussion

In respondent's respective motions, respondent asks the Court to dismiss these cases for lack of jurisdiction on the ground that the respective notices of deficiency for the taxable years 1999 and 2000 that respondent issued to petitioners in these cases are invalid. That is because, according to respondent, those notices contain only determinations that constitute partnership items, as defined in section 6231(a)(3), or affected items, as defined in section 6231(a)(5), relating to Evergreen

[7]GN Investments, LLC, is a flowthrough entity that petitioner Glenn Nussdorf used in order to become a member of or partner in Evergreen Trading.

Trading.[8]

In petitioners' respective motions, petitioners ask the Court to dismiss these cases for lack of jurisdiction as to all the determinations in the respective notices of deficiency for the taxable years 1999 and 2000 that respondent issued to them except the determination set forth in paragraph 8 of those notices.[9] That paragraph stated:[10]

> It is further determined, in the alternative, that the loss claimed on your 1999 and 2000 federal income tax return should be decreased by the amount of $11,687,810 and $15,495,756 to reflect the fact that the amount invested in the option transaction purportedly generating the losses claimed represents a single, unitary investment of $26,700,190 in a single option position rather than a net investment in the same amount in offsetting option positions.

In support of petitioners' position in petitioners' respective motions that the Court has jurisdiction over the above-quoted determination, petitioners argue:[11]

---

[8]With respect to the affected items, respondent points out that the partnership proceeding for the taxable years 1999 and 2000 with respect to Evergreen Trading is currently pending in the United States Court of Federal Claims.

[9]With the exception of the determination set forth in paragraph 8 of the respective notices of deficiency in question, petitioners agree with respondent that the determinations in those notices constitute partnership items, as defined in sec. 6231(a)(3), or affected items, as defined in sec. 6231(a)(5), relating to Evergreen Trading.

[10]See supra note 5.

[11]For convenience, we quote from petitioner's motion in the case at docket No. 24289-05. That motion is virtually the same (continued...)

10. The determination of the cost basis of the Purchased Euro Option in the hands of Petitioner is a pure nonpartnership item that must be determined in this individual proceeding. Although that cost basis (along with the cash contributed) becomes the basis of * * * [the partner's] partnership interest [in Evergreen Trading], the later contribution does not convert a nonpartnership issue into a partnership item. Just as if Ms. Nussdorf [petitioner in the case at docket No. 24289-05] had purchased a partnership interest from an outsider, the determination of Ms. Nussdorf's cost basis in her Purchased Euro Option is irrelevant to any other partner and cannot be determined by examining the partnership books. * * *

11. The cost basis of the Purchased Euro Option in the hands of Ms. Nussdorf must be determined by looking to I.R.C. § 1012 and the authorities thereunder * * *.

12. An issue concerning the cost basis of property in the hands of the taxpayer, pre-contribution, inevitably turns on law and facts unique to the taxpayer and the particular property in question, which are the hallmark of "nonpartnership items." * * * To consider issues "peculiar to a single partner" as partnership items, even those relating to partnership gains or losses, would "blur or erase . . .the distinction between proceedings involving partnership items and those involving nonpartnership items" and "would be contrary to the system of separate treatment of partnership and nonpartnership issues Congress established by enacting TEFRA." [Reproduced literally, citations omitted.]

Respondent counters:[12]

---

[11](...continued)
as petitioners' respective motions in the cases at docket Nos. 24297-05 and 24301-05.

[12]For convenience, we quote from respondent's response to petitioner's motion in the case at docket No. 24289-05. That response is virtually the same as respondent's respective responses to petitioners' respective motions in the cases at docket Nos. 24297-05 and 24301-05.

5. The petitioner contends the explanatory language in paragraph eight[13] allows the Court in this proceeding to determine the pre-contribution cost basis of a purchased Euro option in the hands of petitioner. They contend that the basis of the purchased Euro option before its contribution to the partnership is a nonpartnership item that must be determined in this partner-level proceeding and that such basis should be determined without considering the effect on the basis of the offsetting sold Euro option. In effect, petitioner contends the offsetting options should not be integrated.

6. Petitioner's contentions are wrong. The statutory notice of deficiency, including paragraph number eight, challenge[s] the so-called Son of Boss transaction that involve[s] purported contribution of an option spread to a partnership. This contribution was an integral and vital part of the transaction. Petitioner used the contribution to inflate her basis in the partnership. Petitioner then attached this inflated basis to the assets distributed to petitioner by the partnership. See I.R.C. § 732(b).

7. Section 6231(a)(3) provides that the term "partnership item" includes any item required to be taken into account for the partnership's taxable year under Subtitle A to the extent provided by the regulations. * * * the purported partnership here was required under Subtitle A of the Code to determine the partners' basis in the contributed options. See I.R.C. § 723 (partnership receives carryover basis from partner). Treas. Reg. § 301.6231(a)(3)-1(c)(2)(iv) makes this carryover basis a partnership item under section 6231(a)(3). Section 6221 requires such partnership item to be determined in a partnership proceeding rather than in a deficiency proceeding. * * * Contrary to petitioner's contention, the status of an item as a partnership item depends solely on whether the partnership must determine the item under Subtitle A and whether the regulations make such an item a partnership item, not on where the partnership has to look to find

---

[13]Respondent indicates in respondent's respective motions that the determination set forth in paragraph 8 of the respective notices of deficiency in question "is commonly referred to as the integration argument".

> such information.
>
> 8. In determining its basis in the contributed options, the purported partnership was required to take into account the amount and character of the contribution, which included the fair market value and basis of the contribution, whether the obligation leg was a "liability" assumed by the partnership, and whether the legs of the options needed to be aggregated. * * * [Citations omitted.]

We agree with respondent. Section 6231(a)(3) defines the term "partnership item" to mean

> with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

Section 6231(a)(4) defines the term "nonpartnership item" to mean "an item which is (or is treated as) not a partnership item."

Section 6231(a)(5) defines the term "affected item" to mean "any item to the extent such item is affected by a partnership item."

Section 723 provides in pertinent part that the basis of property contributed to a partnership by a partner is the adjusted basis of such property to the contributing partner at the time of the contribution.[14] Thus, in order for a partnership to

---

[14]Sec. 1.723-1, Income Tax Regs., promulgated under sec. 723 further provides in pertinent part:

(continued...)

determine, as required by section 723, its basis in the property that a partner contributed to it, the partnership is required to determine the basis of such partner in such property. In making those determinations, the partnership is required, inter alia, to determine the character of any property received by the partnership, such as whether it is a contribution or a loan.

In the instant cases, in order for Evergreen Trading to determine, as required by section 723, its respective bases in the properties that its partners purportedly contributed to it, Evergreen Trading was required to determine the respective bases of such partners in such properties. In making those determinations, Evergreen Trading was required, inter alia, to determine the character of any property that Evergreen Trading received from each member, such as whether it was a contribution or a loan and whether any such property received from each member should be aggregated with other property received from each such member.

The following regulations promulgated under section 6231(a)(3), which defines the term "partnership item", provide that the above-described items relating to the purported contributions of certain properties to Evergreen Trading by its respec-

---

[14](...continued)

Since such property [contributed to the partnership by a partner] has the same basis in the hands of the partnership as it had in the hands of the contributing partner, the holding period of such property for the partnership includes the period during which it was held by the partner. * * *

tive members, with respect to which Evergreen Trading was required make certain determinations, are partnership items. Section 301.6231(a)(3)-1(a)(4), Proced. & Admin. Regs., states that the following items, inter alia, which are required to be taken into account under subtitle A of the Code, are more appropriately determined at the partnership level than at the partner level and therefore are partnership items:[15]

> (1) The partnership aggregate and each partner's share of each of the following:
>
> * * * * * * *
>
> (v) Partnership liabilities (including determinations with respect to the amount of the liabilities, whether the liabilities are nonrecourse, and changes from the preceding taxable year); * * *
>
> * * * * * * *
>
> (4) Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner:
>
> (i) Contributions to the partnership * * *

---

[15] Sec. 301.6231(a)(3)-1(b), Proced. & Admin. Regs., further provides:

> (b) <u>Factors that affect the determination of partnership items</u>.-- The term "partnership item" includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc. * * *

Section 301.6231(a)(3)-1(c), Proced. & Admin. Regs., which provides illustrations of section 301.6231(a)(3)-1(a)(4), Proced. & Admin. Regs., states in pertinent part:

> (c) Illustrations.--(1) In general.-- This paragraph (c) illustrates the provisions of paragraph (a)(4) of this section [301.6231(a)(3)-1]. The determinations illustrated in this paragraph (c) that the partnership is required to make are not exhaustive; there may be additional determinations that the partnership is required to make which relate to a transaction listed in paragraph (a)(4) of this section. The critical element is that the partnership needs to make a determination with respect to a matter for the purposes stated; failure by the partnership actually to make a determination (for example, because it does not maintain proper books and records) does not prevent an item from being a partnership item.
>
> (2) Contributions.-- For purposes of its books and records, or for purposes of furnishing information to a partner, the partnership needs to determine:
>
> > (i) The character of the amount received from a partner (for example, whether it is a contribution, a loan, or a repayment of a loan);
>
> * * * * * * *
>
> > (iv) The basis to the partnership of contributed property (including necessary preliminary determinations, such as the partner's basis in the contributed property).
>
> To the extent that a determination of an item relating to a contribution can be made from these and similar determinations that the partnership is required to make, therefore, that item is a partnership item. To the extent that the determination requires other information, however, that item is not a partnership item. For example, it may be necessary to determine whether contribution of the property causes recapture by the contributing partner of the investment credit under section 47 in certain circumstances in which that determination is irrelevant to the partnership.

We conclude that the following determinations of certain items relating to the purported contributions of the Euro options in question to Evergreen Trading by its respective members can be made from determinations that Evergreen Trading was required to make for purposes of Evergreen Trading's books and records or for purposes of furnishing information to each member: The character of any property that Evergreen Trading received from each member, such as whether any such property received from each member was a contribution or a loan[16] and whether any such property should be aggregated with other property received from each such member, and the basis to Evergreen Trading of any property contributed to it by each member, including necessary preliminary determinations, such as the basis of each such member in such property. See sec. 301.6231(a)(3)-1(a)(4), -1(c)(2), Proced. & Admin. Regs. We further conclude that none of such determinations relating to the purported contributions of the Euro options in question to Evergreen Trading by its respective members required information other than the information that Evergreen Trading was required to use in making such determinations that it was required to make for purposes of its books and records or for purposes of furnishing information to a member. See id.

---

[16]In determining whether any property that Evergreen Trading received from each member was a contribution or a liability, Evergreen Trading was required to determine whether the so-called obligation leg (i.e., the short position) of the Euro options in question was a liability that Evergreen assumed.

We hold that the determination set forth in paragraph 8 of the respective notices of deficiency that respondent issued to petitioners in these cases relates to certain partnership items described above. We further hold that we do not have jurisdiction over those items. E.g., Trost v. Commissioner, 95 T.C. 560 (1990); Maxwell v. Commissioner, 87 T.C. 783 (1986). We also hold, and respondent and petitioners agree, that we do not have jurisdiction over the remaining determinations set forth in those respective notices because those remaining determinations relate to partnership items, e.g., Trost v. Commissioner, supra; Maxwell v. Commissioner, supra, or affected items, e.g., GAF Corp. & Subs. v. Commissioner, 114 T.C. 519 (2000); N.C.F. Energy Partners v. Commissioner, 89 T.C. 741 (1987).

We have considered all of the contentions and arguments of petitioners that are not discussed herein, and we find them to be without merit and/or irrelevant.

To reflect the foregoing,

Orders granting respondent's respective motions and denying petitioners' respective motions and dismissing these cases for lack of jurisdiction will be entered.