IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2164 T

(Judge Mary Ellen Coster Williams)

JADE TRADING, LLC, by and through ROBERT W. ERVIN
and LAURA KAVANAUGH ERVIN on behalf of ERVIN
CAPITAL, LLC, Partners Other Than the Tax Matters Partner,

Plaintiffs

v.

THE UNITED STATES,

Defendant

**OPPOSITION BY THE UNITED STATES
TO SENTINEL ADVISORS, LLC'S MOTION TO PARTICIPATE**

The United States opposes the motion to participate filed by Sentinel Advisors, LLC ("Sentinel") on January 4, 2008. Sentinel's motion is an extraordinary request that should be denied because it is inexcusably late, is contradicted by Sentinel's many prior decisions not to participate in this litigation, and will interfere with the orderly, final resolution of this case.

Sentinel, the tax matters partner and managing partner of Jade Trading, LLC ("Jade"), declined the statutorily-provided opportunity to file a petition commencing this partnership proceeding. After one of the partners filed a petition, Sentinel again declined the opportunity to participate in this proceeding provided by this Court's rules. Indeed, Sentinel resisted the government's request to consolidate this case with *K2 Trading Ventures, LLC v. United States,* Nos. 04-1419T and 04-0420T (a case involving the same Spread Transaction at issue in *Jade*,

but executed by members of Sentinel). Rather than electing to participate in this proceeding, and while carefully maintaining a position of non-participation, Sentinel watched this case unfold from a front row seat, as its principals served as key witnesses in the trial. Only now – after trial, briefing, argument, decision on the merits, and entry of judgment – has Sentinel moved to participate in this proceeding. This motion to participate is extremely late; Sentinel has presented no cause for its lateness; and the purpose served by Sentinel's participation would be inconsequential in this case. The motion should be denied.

## ARGUMENT

### 1. Sentinel's Post-Judgment Motion to Participate in This Proceeding is Inexcusably Late.

Rule 4(c) of Appendix F provides that the "court may grant leave to file a notice of election to intervene or a notice of election to participate out of time upon a showing of sufficient cause." (Emphasis added.) In the analogous context of a motion to intervene pursuant to RCFC 24(a), this court has determined that "a motion to intervene . . . is untimely where, as here, litigation has been concluded and judgment entered" absent "unusual and compelling circumstances."[1] *Cheyenne-Arapaho Tribes of Indians of Oklahoma v. United States*, 1 Cl. Ct. 293, 294 (1983); *see also* 7C Wright *et al.*, Fed. Prac. & Prod. Civ. § 1916, n.19 (3d ed. 2004 & 2007 Supp.) (collecting cases). In the *Cheyenne-Arapaho* case, the court denied a motion to intervene after judgment was entered, finding that since the movants "were aware, or should have been aware, of the pendency of [the claim] in these cases, they should have, and could

[1]With respect to a motion to intervene under RCFC 24(a) generally, this court has held that an untimely application, determined from all the circumstances, must be denied. *Cherokee Nation of Oklahoma v. United States*, 54 Fed. Cl. 116, 118 (2002) (citing *NAACP v. New York*, 413 U.S. 345, 365-66 (1973)).

have, intervened long before judgment was entered in these cases in order to protect whatever interest they might have in any prospective judgment that might be entered." *Id*.

As reason for its post-judgment motion to participate, Sentinel states only that the Court determined the applicability of a negligence penalty against the members of Jade Trading based on the actions of Sentinel in its decision of December 21, 2007, and Sentinel wants to move the Court to reconsider that determination. (Sentinel's Motion at ¶¶ 5, 6.) Sentinel thus asks the Court's permission to participate in this proceeding for the sole purpose of asserting that the Court's analysis on the applicability of one alternative penalty is wrong. Although Sentinel states a purpose in moving to participate (albeit an inconsequential purpose, which we address in the next two sections), it does not offer <u>any</u> cause, much less "sufficient cause," for the lateness of its motion.

Like the movants in the *Cheyenne-Arapaho* case, Sentinel has had numerous opportunities to participate in this case. Sentinel was the tax matters partner and managing member of Jade. *See Jade Trading, LLC et al. v. United States*, – Fed. Cl. –, 2007 WL 4553043 (Dec. 21, 2007) (slip op. at 8);[2] *see also* Complaint at ¶ 8 (Docket Entry No. 1). As tax matters partner, Sentinel was provided a period of 90 days following the date the notice of final partnership administrative adjustment ("FPAA") was mailed to it on April 15, 2003, in which to file a petition for a readjustment of the partnership items. *See* 26 U.S.C. § 6226(a). Sentinel declined this opportunity, and instead a petition was filed by a notice partner on September 12, 2003. *See* § 6226(b)(1) (providing that any notice partner may file a petition, if the tax matters

[2]Although the decision has been published and is currently available for viewing on Westlaw, the Westlaw version is not yet paginated. Accordingly, we provide page references to the Court's slip opinion.

partner does not, within 60 days after the close of the 90-day period). Sentinel itself could have filed during this notice partner period. *See Barbados #6, Ltd. v. Commissioner*, 85 T.C. 900, 903-905 (1985).[3] Sentinel thus declined its first two opportunities to participate as of right in this case.

Sentinel's third opportunity to participate as of right in this action arose by operation of Rule 4(a) of Appendix F to the rules of this Court. The rule provides that the tax matters partner may elect to intervene in an action filed for readjustment of partnership items brought by another partner by filing a notice of election to intervene within 45 days of the Notice of Assignment. The Notice of Assignment was made in this case on September 12, 2003, and Sentinel's period to file a notice of election to intervene as of right expired on October 27, 2003. Sentinel did not file a notice within that time, thus declining its third opportunity to participate in this case.

In addition to foregoing these two opportunities to participate as of right, in 2004, Sentinel opposed the government's attempt to include Sentinel as a participant in this case. On October 21, 2004, the United States moved to consolidate this case with *K2 Trading*. (Docket Entry No. 74.) On November 8, 2004, New Vista (a subsidiary of Sentinel and the managing member of *K2 Trading*) and the Ari Bergmann Revocable Trust (a purported partner in *K2 Trading*) filed a motion to intervene for the limited purpose of opposing the government's motion to consolidate the two cases. (Docket Entry No. 88.) In that motion, New Vista and Bergmann asserted that

---

[3]Indeed, in *Tigers Eye Trading, LLC v. Commissioner*, Docket No. 14510-05, the Tax Court concluded in an order dated March 9, 2007, that "Although Sentinel is the TMP, it is also a notice partner and thus regarded, under the jurisprudence of this Court, as being entitled to file as a notice partner under section 6226(b)(1)." Moreover, in *K2 Trading Ventures, LLC v. United States*, 04-1419T, New Vista (a subsidiary of Sentinel), the tax matters partner and a notice partner, filed the petition for readjustment as a notice partner within the time period prescribed in § 6226(b)(1). *See* Complaint at ¶ 4 (Docket Entry No. 1).

*K2 Trading* and *Jade* "do not involve questions or law or fact that are sufficiently common to justify consolidation." (Motion to Intervene at ¶ 4.) The Court granted their motion to intervene on November 24, 2004. (Docket Entry No. 93.) During a hearing on January 11, 2005, it was determined that the cases would not be consolidated.[4] In resisting the government's attempt to consolidate *K2 Trading* and *Jade,* Sentinel declined yet another opportunity to participate in this case. *See Cherokee*, 54 Fed. Cl. at 119 (denying a motion to intervene under RCFC 24(a) and noting with respect to the movant that: "By *electing* to avoid asserting itself as a party to this case, the [party] passed up an opportunity to dispute its position . . . .") (emphasis provided).

Sentinel had ample opportunity to seek leave to participate if it had wanted to do so in order to develop facts and/or present arguments with respect to negligence (or any other issue) as this case progressed. The following, non-exclusive list of facts reveals that Sentinel was undoubtedly aware of the issues presented in this case, the development of the facts through discovery, and the arguments asserted by the parties:

- As tax matters partner, Sentinel received the FPAA for Jade from the IRS. (JX 109.) The FPAA, by explaining the administrative adjustments made by the IRS, identified the core issues, including the 20-percent negligence penalty, to be litigated in this proceeding. (*Id*.)

- By operation of Rule 5 of Appendix F of this Court's rules, Sentinel was copied on all papers issued by the Court and all other papers required to be served in this proceeding, which gave Sentinel the opportunity to follow the facts and arguments as they were being developed by the Court and the participating parties.

- Sentinel was heavily involved in the discovery of facts in this case because several of its members were key witnesses, and the government requested a large number of Sentinel and New Vista documents. Counsel for Sentinel represented the members of Sentinel at their depositions. Thus, the members of Sentinel and their counsel were aware of the

[4]The Court later entered an order on February 11, 2005, removing the intervenors from this action. (Docket Entry No. 148.)

facts with respect to their conduct that were available for presentation at trial.

- Several of the members of Sentinel (Ari Bergmann, Smita Conjeevaram, and Abraham Pfeiffer) were called as witnesses at trial, and many of the Sentinel and New Vista documents were trial exhibits. Counsel for Sentinel attended most, if not all, of the trial proceedings in Atlanta and Washington, D.C.

In sum, Sentinel made a calculated decision not to participate in this action until now, presumably in order to avoid collateral estoppel from attaching in other proceedings involving the Spread Transaction in which Sentinel is a party (*e.g.*, *K2 Trading Ventures, LLC v. United States*, Nos. 04-1419T and 04-1420T, and *Asuma Trading Ventures, LLC v. Commissioner*, No. 26772-06 (pending in Tax Court)), among other possible strategic considerations. Sentinel remained on the sidelines, closely watching the action unfold in this case for over four years. Now that the action has been completed and the Court has issued a decision that is adverse to Sentinel's interests, Sentinel is seeking leave to participate. Quite simply, it is too late. *See Belton Industries, Inc. v. United States et al.*, 6 F.3d 756, 762 (Fed. Cir. 1993) (denying post-judgment motion to intervene and noting: "Both [movants] were to content to sit on the sidelines during this dispute and let other parties, particularly the United States Government, do the heavy lifting. They sought to intervene only when they realized, too late, that these other parties would not do all of their work for them.")

**2. The Purpose for Which Sentinel Seeks To Participate Is Inconsequential in this Litigation.**

Sentinel is seeking to participate in this action in order to move the Court to reconsider the portion of its decision determining the applicability of the alternative 20-percent negligence penalty. (Sentinel's Motion at ¶ 5.) As the Court observed in its decision of December 21, 2007, the FPAA issued to Jade imposed four penalties:

> (1) A 40-percent gross valuation misstatement penalty;
>
> (2) **Alternatively**, a 20-percent negligence penalty;
>
> (3) **Alternatively**, a 20-percent substantial understatement of income tax penalty;
>
> (4) **Alternatively**, a 20-percent "substantial understatement of income tax [penalty] because the transaction is a tax shelter, no substantial authority has been established for the position taken, and there was no reasonable belief upon the filing of the return that the position taken was more likely than not the correct treatment of the transaction.

(Slip op. at 64) (emphasis added.) The Court analyzed the applicability of each of the four penalties, and concluded that each of the four penalties is applicable at the partnership level. (Slip op. at 65-73.) Although the Court concluded that each of the four penalties is applicable, it observed that the government "may not stack or compound these alternatively imposed penalties to impose a penalty greater than the maximum penalty of 20 percent on any given portion of an underpayment, or 40 percent if such portion is attributable to a gross valuation misstatement." (Slip Op. at 73 n.84.)

Sentinel has stated that the only argument it would raise, if permitted to participate, would be that the Court should reconsider its analysis of the 20-percent negligence penalty. This alternative penalty determination is inconsequential in this case for the taxpayers against whom the penalty will ultimately be assessed (the Ervins), because it will not have any financial impact unless (a) the 40-percent penalty and the other two 20-percent penalties are found inapplicable by the Federal Circuit on appeal; or (b) the taxpayers prevail in a partner-level proceeding on a partner-level defense on the other two 20-percent penalties and the 40-percent penalty, but not on the 20-percent negligence penalty. These are highly unlikely scenarios.

Given that this issue is inconsequential to the taxpayers against whom the penalty will

be assessed (the Ervins), Sentinel's motivation in pursuing this argument here is unclear. It appears that Sentinel may be seeking reconsideration of the negligence penalty because the findings made by the Court with respect to the negligent conduct of Sentinel (*see* slip op. at 69-70) are adverse to Sentinel's position in <u>other</u> cases, not this case. In particular, the Court's conclusions that the "transaction which Bergmann brought to BDO Seidman from the street was an elaborate fictional construct with no economic consequences other than tax benefits," and that a "reasonably prudent investor with Bergmann's hedge fund and market experience would have known there was no investment and no potential for profit in the spread transaction" (slip op. at 70), are adverse to Sentinel in the *K2 Trading* and *Asuma Trading* cases, in which Bergmann and other members of Sentinel used the Spread Transaction to generate tax benefits for themselves, rather than their clients. The Court's determination that Sentinel acted negligently may also be adverse to Sentinel in its defense of civil lawsuits brought by its former clients, purchasers of the Spread Transaction. Sentinel's interest in this issue thus appears to be entirely collateral to this proceeding.

**3. The Negligence Penalty Will Be Paid by the Ervins, Not Sentinel, and They Are Capable of Raising the Argument Identified by Sentinel.**

All of the tax liabilities and penalties (including the negligence penalty) flowing from the adjustments to the partnership items at issue in this case will be assessed against and paid by the Ervins. (*See* Amendment to Complaint (Docket Entry No. 59) at ¶¶ 19(e)-(k); JX 109 (Explanation of Adjustments in FPAA issued to Jade Trading at ¶¶ 11-3, 6).) Although Sentinel was a partner in Jade, neither Sentinel nor its members reported on their Sentinel partnership return or their individual tax returns any of the artificial losses generated by the Spread

Transactions that were purchased by the Ervin brothers and passed through Jade.[5] (Amendment to Complaint (Docket Entry No. 59) at ¶¶ 19(e)-(k).) While Sentinel has the collateral interests described in the preceding section, Sentinel does not have a financial interest in the negligence penalty. The Ervins do. The Ervins are parties to this action; they have been participating throughout the proceedings, and they are represented by counsel. The Ervins are free to move to reconsider this aspect, and/or any other, of the Court's ruling. They are also free to raise the issue on appeal. Thus, there is no reason for the Court to grant Sentinel's motion to participate in order to address this issue.

If the Court decides to reconsider its conclusion that the 20-percent negligence penalty is applicable, then the government is prepared to submit a brief explaining why the Court's decision on this point is correct.

---

[5]The members of Sentinel reported artificial losses on their individual tax returns in 1999, 2000, and 2001; but those losses were generated by Spread Option transactions that they entered into personally and passed through two different partnerships – Asuma Trading Ventures, LLC and K2 Trading Ventures, LLC. (*See* Pretrial Memorandum for the United States in *K2 Trading* at pp. 3-4, 9-13 (*K2 Trading* Docket Entry No. 51).) Those losses are at issue in *K2 Trading Ventures, LLC v. United States*, 04-1419T, 0420T, and *Asuma Trading Ventures, LLC v. Commissioner*, No. 26772-06 (Tax Court).

**CONCLUSION**

In sum, Sentinel has made an extraordinary and untimely request to move from its sideline position to participant, after judgment has been entered, in this action that took more than four years to litigate from start to finish. In so moving, Sentinel has not bothered to assert any cause (much less a "sufficient cause") for the lateness of its motion. The purpose for which Sentinel seeks to participate is inconsequential in this litigation, and Sentinel appears to be motivated entirely by collateral concerns. For all of the reasons discussed above, Sentinel's motion should be denied.

Respectfully submitted,

s/Stuart J. Bassin
STUART J. BASSIN
Attorney of Record for Defendant
Department of Justice
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
TELEPHONE (202) 307-6418
FAX (202) 514-9440

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
JENNIFER P. WILSON
Trial Attorney

s/David Gustafson
Of Counsel

January 9, 2008