IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2164 T

(Judge Mary Ellen Coster Williams)

JADE TRADING, LLC, by and through ROBERT W. ERVIN and LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner,

Plaintiffs

v.

THE UNITED STATES,

Defendant

**RESPONSE OF THE UNITED STATES TO SENTINEL ADVISORS, LLC'S MOTION FOR RECONSIDERATION**

NATHAN J. HOCHMAN
Assistant Attorney General

DAVID GUSTAFSON
STUART J. BASSIN
JENNIFER P. WILSON
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6495
(202) 514-9440 (facsimile)

## INDEX

Page

Argument:

I. Sentinel fails to meet the legal standard for reconsideration under RCFC 59 . . . . . . . . 2

II. The Court's analysis of the negligence penalty is correct . . . . . . . . 6

III. The reasonable cause defense, if proved, is a defense to the negligence penalty regardless of the conduct considered in determining that the negligence penalty is applicable . . . . . . . . 14

Conclusion . . . . . . . . 16

## CITATIONS

**Cases:**

*Dial USA v. Commissioner*, 95 T.C. 1 (1990) . . . . . . . . 9

*First Fed. Lincoln Bank v. United States*, 60 Fed. Cl. 501 (2004) . . . . . . . . 3

*Fru-con Construction Corp. v. United States*, 44 Fed. Cl. 298 (1999) . . . . . . . . 3

*General Motors Corp. v. United States*, 46 Fed. Cl. 652 (2000) . . . . . . . . 6

*Gustin v. Commissioner*, T.C. Memo. 2002-64 . . . . . . . . 9

*Hansen v. Commissioner*, 471 F.3d 1021 (9th Cir. 2006) . . . . . . . . 14

*Klamath Irrigation District v. United States*, 64 Fed. Cl. 328 (2005) . . . . . . . . 6

*Long Term Capital Holdings v. United States*, 330 F.Supp.2d 122 (D. Conn. 2004) . . . . . . . . 13

*Mapco Alaska Pet. Inc. v. United States*, 30 Fed. Cl. 153 (1993) . . . . . . . . 6

**Page**

**Cases (continued):**

*Pacific Gas & Electric Co. v. United States*, 74 Fed. Cl. 779 (2006) .................. 5

*Santa Monica Pictures v. Commissioner*, T.C. Memo. 2005-104 ............ 2, 7, 12, 13

*Shirlington Limousine & Trans., Inc. v. United States*, 78 Fed. Cl. 27 (2007) ............................................ 2, 3

*Wolf v. Commissioner*, 4 F.3d 709 (9th Cir. 1993) .............................. 13

*Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577 (Fed. Cir. 1990) .......... 2

**Statutes:**

26 U.S.C.:

§ 701 .................................................... 8

§ 6221 .................................................... 7-9

§ 6226 .................................................... 7-9

§ 6662 .................................................... *passim*

§ 6664 .................................................... 14

**Miscellaneous:**

Taxpayer Relief Act of 1997, Pub. L. No. 105-33, 111 Stat. 251 .............. 8, 13

H.R. Rep. No. 105-148 at 593-594 (1997), *reprinted in* 1997-4 C.B. (vol.1.) 319 .... 8

Treas. Reg. (26 C.F.R.):

§ 301.6221-IT ............................................ 7
§ 1.6662-3 ............................................ 7, 8
§ 1.6664-4 ............................................ 14, 15

RCFC 59 ............................................ 2-5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2164 T

(Judge Mary Ellen Coster Williams)

JADE TRADING, LLC, by and through ROBERT W. ERVIN and LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner,

Plaintiffs

v.

THE UNITED STATES,

Defendant

**RESPONSE OF THE UNITED STATES TO SENTINEL ADVISORS, LLC'S MOTION FOR RECONSIDERATION**

The Court concluded that the 20-percent negligence penalty in 26 U.S.C. § 6662(b)(1) is applicable at the partnership level in its December 21, 2007, decision. In so concluding, the Court considered the conduct of Jade Trading, its managing member and tax matters partner, Sentinel Advisors, LLC, and the Ervins. Sentinel was permitted to intervene in this action in order to move for reconsideration. Sentinel argues that the Court was wrong to consider the actions of the partnership and its managing member, rather than limiting its consideration to the conduct of the Ervins. Sentinel's motion should be denied because it does not meet the standard for reconsideration. Even if the Court reaches the merits of Sentinel's motion, however, the requested relief should be denied because the Court's analysis with respect to the negligence penalty is correct.

## ARGUMENT

## I.

## SENTINEL FAILS TO MEET THE LEGAL STANDARD FOR RECONSIDERATION UNDER RCFC 59

Sentinel is seeking reconsideration of the Court's decision with respect to the imposition of the negligence penalty because "in determining the applicability of the negligence and other penalties the Court (i) incorrectly found that Sentinel and Mr. Bergmann had 'reported' substantial tax losses, (ii) inappropriately considered the actions of the partnership and its managing member, and (iii) misapplied the Tax Court's decision in Santa Monica Pictures, LLC v. Commissioner, T.C. Memo 2005-104."[1] (Motion at 1-2.) Sentinel argues that these are "manifest errors of law that should be corrected the Court," in order to "avoid a misapplication of the Court's holding in other partnership cases before this Court which may require the consideration of a negligence penalty." (Motion at 6-7.)

RCFC 59(a)(1) provides, in pertinent part:

> . . . reconsideration may be granted to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States.

The decision whether to grant a motion for reconsideration is within the court's discretion. *See Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990). In this court, a party seeking reconsideration is required to "identify a manifest error of law or mistake of fact." *Shirlington Limousine & Trans., Inc. v. United States*, 78 Fed. Cl. 27, 29 (2007). In order to

---

[1]We assume that the first purpose identified by Sentinel, to correct a factual error in the Court's opinion, has been resolved by the Court's order correcting clerical mistakes, entered on January 16, 2008. Accordingly, we do not address that issue in this brief.

demonstrate a "manifest error" of law or fact, a movant must demonstrate "either '(1) that an intervening change in controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent a manifest injustice."[2] *Id.* (quoting *First Fed. Lincoln Bank v. United States*, 60 Fed. Cl. 501, 502 (2004)); *Fru-con Construction Corp. v. United States*, 44 Fed. Cl. 298, 301 (1999) (collecting cases). A movant is required to show "extraordinary circumstances" to justify relief pursuant to RCFC 59. *Fru-con Construction Corp.*, 44 Fed. Cl. at 300-301 ("Because '[t]he litigation process rests on the assumption that both parties present their case once, to their best advantage,' a strong public policy precludes a reconsideration motion based on evidence that was readily available at the time the original motion was heard"). Sentinel fails to meet the high standard for reconsideration.

First, Sentinel has failed to demonstrate that an "intervening change in controlling law has occurred." To the contrary, Sentinel characterizes the legal issue it raises in its motion as "an issue of first impression." (Motion at 7.) The Court has not overlooked a controlling authority in reaching its decision. Indeed, Sentinel fails to point to <u>any</u> authority it considers relevant, much less controlling. Sentinel simply argues that the Court took the wrong approach on a novel issue of law in the absence of any controlling authority. Sentinel's argument amounts to no more than disagreement with the Court's analysis, and its motion should be denied. *See Shirlington Limousine & Trans., Inc.*, 78 Fed. Cl. at 31 (finding no "manifest error of law" where movant cited no controlling legal authority, and instead relied on "counsel's understanding of 'tradition,' 'policy,' and the implication of the court's ruling for his other pending cases"); *Fru-con*

---

[2]Because Sentinel does not contend that "previously unavailable evidence is now available," the United States does not address this factor.

*Construction Corp.*, 44 Fed. Cl. at 300 (RCFC 59 "is not intended to give an unhappy litigant an additional chance to sway the court.")

Moreover, Sentinel is simply seeking to raise a new argument with respect to an issue that was thoroughly addressed by the United States in post-trial briefing and decided by the Court in its decision on the merits. The United States explained its position with respect to the conduct at issue in determining the applicability of the negligence penalty in its post-trial brief, filed on November 1, 2005, by stating (in relevant part):

> Section 6221 authorizes the Court to determine only "the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." The partnership items in this case relate to Jade's reporting of the Son of BOSS transaction. In contrast, the Ervins' reporting of losses on their individual returns arising out of the Jade Son of BOSS transaction is not a "partnership item" and is, therefore, not the subject of the negligence inquiry.
>
> . . . .
>
> Specifically, five groups of facts support application of the negligence penalty at the partnership level . . . .

(Post Trial Brief for the United States at 74-75) (emphasis in original). The United States proceeded to detail the facts demonstrating negligence, which included conduct by Sentinel, and Bergmann in particular, in developing and promoting the Son of BOSS transaction, and then executing it on behalf of the Ervins. (*Id.* at 75-81.) In particular, the United States stated:

> Sentinel and Jade knew better than anyone the actual economic value of the Ervins' contributions, which it recorded on its books and used for trading. (PF 252-254). Moreover, Mr. Bergmann, Sentinel's managing member, knew that the shelter was predicated on a mismatch between the economic value of spreads and their tax treatment, a mismatch that enabled a claim of benefits far in excess of actual investment. (PF 59). Sentinel nevertheless negligently reported the Ervins as partners on Jade's Form 1065, despite knowing that the Ervins had joined not to earn a profit but to claim a tax benefit grossly in excess of their investment.

(*Id.* at 76.) The United States clearly stated its position that the conduct of Sentinel and the Ervins is relevant in determining the applicability of the negligence penalty.

In their reply to the United States' post-trial brief, plaintiffs did not directly contradict the position of the United States that applicability of the negligence penalty should be determined by reference to the conduct of Sentinel and the Ervins.

The Court apparently agreed with the position of the United States, and concluded that the negligence penalty is applicable on the basis of conduct by Sentinel and the Ervins. (Corrected slip op., at 68-70.) Sentinel now argues that the Court was wrong to consider its conduct. Assuming Sentinel could have obtained leave to participate pursuant to Rule 4 of Appendix F, Sentinel could have participated during post-trial briefing in order assert this argument.[3] Instead, Sentinel chose to rest on plaintiffs' arguments.[4] Sentinel should not be permitted to raise an argument now that it could have raised long ago. *See Pacific Gas & Electric Co. v. United States*, 74 Fed. Cl. 779, 782-84 (2006) (denying motion for reconsideration where plaintiff was attempting to relitigate an issue after it did not "zealously advance a position concerning this issue at trial," and finding that the "clearly apparent or obvious" error was with plaintiff's litigation strategy, not the court's decision).

Finally, Sentinel has failed to demonstrate that "the motion is necessary to prevent a manifest injustice." This court has held, in the context of a motion pursuant to RCFC 59(a)(1),

---

[3]The United States continues to contend that Sentinel was on notice of this issue at a much earlier date in this proceeding, and thus could have moved for leave to participate at a more appropriate time. (*See* Opposition by the United States to Sentinel's Motion to Participate.)

[4]Sentinel has stated that its "interests were consistent with and fully represented by the Ervins and their counsel" throughout this proceeding. (Sentinel's Reply to the United States' Response to Its Motion to Participate, ¶ 6.)

that a "manifest injustice" "refers to injustice that is apparent to the point of being almost indisputable." *Pacific Gas & Electric Co.*, 74 Fed. Cl. at 785. Sentinel contends only that the Court should correct its decision in order to "avoid a misapplication of the Court's holding in other partnership cases before this Court which may require the consideration of a negligence penalty." (Motion at 7.) This same argument could be raised by any person who disagrees with this Court's decision. Sentinel is not arguing that the Court's determination will result in a manifest injustice to it directly, presumably because the Ervins, and not Sentinel, will ultimately pay the negligence penalty. Instead, Sentinel argues that the Court's determination may result in a manifest injustice based on the possible application (or, as Sentinel calls it, "misapplication") of this decision in other cases. Because this Court's decision is not binding precedent in any other case (absent some *res judicata* or collateral estoppel effect), Sentinel or any other party will be able to argue that this Court's negligence determination is distinguishable and/or wrong. *See Klamath Irrigation Dist. v. United States*, 64 Fed. Cl. 328, 335 (2005); *General Motors Corp. v. United States*, 46 Fed. Cl. 652 (2000); *Mapco Alaska Pet. Inc. v. United States*, 30 Fed. Cl. 153, 154 (1993). Accordingly, Sentinel's stated concern does not rise to the level of a "manifest injustice."

## II.

## THE COURT'S ANALYSIS OF THE NEGLIGENCE PENALTY IS CORRECT

Sentinel argues that the Court was wrong, as a matter of law, to consider the conduct of the partnership and its managing member in determining the applicability of the negligence penalty in this case. (Motion at 4.) Sentinel contends that the Court was wrong to consider such conduct because the partnership return (Form 1065) "did not contain any incorrect information

about either its inside tax basis in its assets or its members' outside tax basis, and thus did not report 'substantial tax losses from a fictional transaction.'" (*Id.*) In addition, Sentinel argues that the Court incorrectly relied on the decision in *Santa Monica Pictures* because the decision is distinguishable. (*Id.* at 5-6.) Sentinel's arguments are wrong.

The Court's discussion of penalties began, appropriately, with an analysis of the Court's jurisdiction over penalties. (Corrected slip op., at 64.) Based on the provisions of §§ 6221 and 6226(f), the Court concluded that it has jurisdiction to determine the "applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." (*Id.*) In addition, the Court noted that Temp. Treas. Reg. § 301.6221-1T(c) (1999) provides that the Court could determine, at the partnership level, "all the legal and factual determinations that underlie the determination of any penalty . . . other than partner-level defenses . . . ." (*Id.*) Sentinel has not challenged the Court's jurisdictional determination.

The Court also correctly identified the definition of negligence in § 6226(c), and articulated the negligence standard by reference to Treas. Reg. § 1.6662-3(b)(i)(ii) and relevant caselaw from various United States Circuit Courts of Appeal and the United States Tax Court. (Corrected slip op., at 68.) Sentinel agrees that the Court "correctly identifies the applicable legal standard for determining negligence . . . ." (Motion at 2.)

The standard for determining negligence, as correctly explained by this Court, involves the analysis of conduct. The question in this partnership-level proceeding is <u>whose</u> conduct should be considered.

The Court determined that it would examine "the conduct of Jade, its managing member and tax matters partner, Sentinel, as well as the parties here – the Ervins." (Corrected slip op., at

68.) The Court found the conduct of Ari Bergmann, a principal of Sentinel, relevant to this analysis because of his "status as the managing member and tax matters partner of Jade." (*Id.*) The Court's determination that it is appropriate to consider the conduct of Sentinel and Bergmann in determining the applicability of the negligence penalty in this partnership-level proceeding is correct based on the provisions in §§ 6221, 6226(f), 6662(b)(1), and related Treasury Regulations.[5]

First, the Court has jurisdiction to determine "all partnership items" and the "applicability of any penalty . . . which relates to an adjustment to a partnership item." § 6226(f) (emphasis added). The emphasized provision was added to §§ 6226(f) and 6221 as part of the Taxpayer Relief Act of 1997, Pub. L. No. 105-33, 111 Stat. 251. Under prior law, penalties were not determined at the partnership level. The legislative history states that one of the reasons for adding this provision is that, "[m]any penalties are based upon the conduct of the taxpayer. With respect to partnerships, the relevant conduct often occurs at the partnership level." H.R. Rep. No. 105-148, at 593-594 (1997), *reprinted in* 1997-4 C.B. (vol. 1) 319.

Second, the language of § 6662 provides that an accuracy-related penalty shall apply "to the portion of the any underpayment which is attributable to . . . (1) Negligence or disregard of rules or regulations." § 6226(b) (emphasis added). In the context of a partnership proceeding, the underpayment is always on the partner's individual return because "partnerships themselves do not pay federal income taxes." (Corrected slip op., at 49 n.61.) Although "TEFRA requires a partnership to file an annual information return that reports its partners' distributive shares of

---

[5]Sentinel does not challenge the appropriateness of the Court's consideration of the Ervins' conduct at the partnership level. As a result, we do not address the Ervins' negligence in this brief.

income, gains, deductions, and credits," "[p]artners are individually responsible for reporting their pro rata share of tax on their personal income tax returns." *Id.*; *see also* § 701.

Reading §§ 6221, 6226(f), and 6662(b)(1) together, then, the determination of the applicability of the negligence penalty at the partnership level requires a court to determine whether an underpayment on an individual partner's tax return is "attributable to" negligence that "relates to" partnership items.

Sentinel does not challenge the Court's "partnership item" conclusion. Instead, Sentinel incorrectly contends that the only "'partnership item' in dispute is the Ervins' outside tax basis in their membership interests in Jade Trading . . . ." (Motion at 3.) Contrary to Sentinel's characterization, outside basis is not a partnership item in this case. *See Dial USA v. Commissioner*, 95 T.C. 1, 4-6 (1990); *Gustin v. Commissioner*, T.C. Memo. 2002-64 at *5. Moreover, Sentinel's characterization of outside basis as the only "partnership item" at issue is incorrect as it ignores all the "partnership items" that the Court properly concluded are at issue in this partnership-level proceeding. These "partnership items" include the components used to compute outside basis.

In fact, the Court determined that "because Jade had to make the underlying determinations regarding the Ervin LLCs' contributions to Jade and the distributions to them for purposes of its books and records and furnishing information to its partners, these are partnership items." (Correct slip op., 51.) The Court then summarized by stating that "the matters addressed in the FPAA here are partnership items and must be determined at the partnership-level." (*Id.*) The FPAA makes the following adjustments:

1. It is determined that Jade Trading, LLC, is a sham and, under §1.701-2, was formed or availed of in connection with a transaction or transactions in taxable year 1999, a principal purpose of which was to reduce substantially the present value of the partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. It is consequently determined that the partnership is disregarded and that all transactions engaged by Jade Trading, LLC, are treated as engaged in directly by the purported partners. This includes the determination that the Euros and Xerox stock purportedly acquired by the partnership were acquired directly by purported partners Ervin Holdings, LLC, Ervin Capital, LLC, and Ervin Investments, LLC.

2. It is determined that, under §1.701-2 of the Treasury Regulations, Euro currency options, purportedly contributed to or assumed by the partnership, are treated as never having been contributed to or assumed by the partnership and any gains or losses purportedly realized by the partnership on the options are treated as having been realized by the purported partners Ervin Holdings, LLC, Ervin Capital, LLC, and Ervin Investments, LLC.

3. It is further determined that, under §1.701-2 of the Treasury Regulations, Ervin Holdings, LLC, Ervin Capital, LLC, and Ervin Investments, LLC, should be treated as not being partners in the partnership.

4. It is further determined that, under §1.701-2 of the Treasury Regulations, contributions to the partnership will be adjusted to reflect clearly the partnership's or partner's income.

5. Even if Euro currency options were to be treated as contributed to the partnership, the bases of the options are reduced, both in the hands of the contributing partners and the partnership, by any amount received by the contributing partner from the contemporaneous sale of a substantially similar option to the same counter-party. Thus, any amount treated as an increase in outside basis from the contribution of the Euro currency options is disallowed.

6. Accuracy-Related Penalties

   It is determined that the underpayment of tax for the taxable year 1999 is due to a gross valuation misstatement of the adjusted basis in the partners' basis in their partnership interest and the consequent basis in

> the Euros and Xerox stock distributed to partners to which their partnership basis attached. Therefore, the 40 percent penalty is imposed on the underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a), 6662(b), 6662(e) and 6662(h) of the Internal Revenue Code.
>
> Alternatively, it is determined that all or part of the underpayment of tax for the taxable year 1999 is due to negligence or disregard of rules and regulations for filing income tax returns. Consequently, the 20 percent penalty is imposed on the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), 6662(c) of the Internal Revenue Code.
>
> Alternatively, it is determined that the underpayment of tax for the taxable year 1999 is due to an underpayment attributable to substantial understatement of income tax. Consequently, the 20 percent penalty is imposed on the underpayment attributable to the [substantial understatement] [sic] as provided by Sections 6662(a), 6662(b)(2), 6662(c) of the Internal Revenue Code.
>
> Alternatively, it is determined that the underpayment of tax for the taxable year 1999 is a substantial understatement of income tax because the transactions is a tax shelter, no substantial authority has been established for the position taken, and there was no reasonable belief upon the filing of the return that the position taken was more likely than not the correct treatment of the transaction. Consequently, the 20 percent penalty is imposed on the underpayment attributable to the [substantial understatement] [sic] as provided by Sections 6662(a), 6662(b)(2), 6662(c) of the Internal Revenue Code.

(JX 109.)

The underpayments reported on the Ervins' individual returns relate to all of the "partnership item" components that are used to compute outside basis. Essentially, the inflated outside basis is derived from (and would not have been possible without) the formation of and the Ervins' participation in Jade. As this Court found:

> [T]he formation of the Jade partnership as the vehicle through which to make investments had no real economic purpose. Funneling the trades through the partnership did nothing to enhance the investment potential of the spread

> transaction or the other trades Jade did, but it was crucial for tax purposes to have the individual partners contribute the spreads to Jade and redeem the unexercised spreads from Jade in order to generate the inflated bases. Absent the partnership, the spreads would have had no meaningful economic consequences – other than the cost of playing.

(Corrected slip op., at 55.) Sentinel, as managing member and tax matters partner of Jade, was responsible for recording the contribution of the spread options on the partnership's books, preparing and filing the partnership return, and reporting that the Ervins were partners on the partnership return. (*Id.*, at 44, 69.) As the Court found, Sentinel (and Bergmann in particular) was aware that these were crucial steps in the creation of the artificial losses reported by the Ervins on their individual returns, and Sentinel was negligent in "promoting and facilitating the reporting of such substantial tax losses from a fictional transaction." (*Id.*, at 70.)

Accordingly, the underpayments on the Ervins' individual returns are "attributable to" Sentinel's negligence that "relates to" the formation and reporting of a partnership that lacked economic purpose (partnership item no. 1); booking the contribution of the spread options (partnership item no. 2); and reporting that the Ervins were partners (partnership item no. 3).[6] Having concluded that the penalties relate to "partnership items," the Court appropriately analyzed the conduct of the partnership and its managing member in determining the applicability of the negligence penalty.

The final issue to address is Sentinel's contention that the Court was wrong to rely on the Tax Court's analysis of the negligence penalty in *Santa Monica Pictures*. (Motion at 5-6.) The main distinction Sentinel makes is that the claimed losses in *Santa Monica Pictures* were

---

[6]Viewed more broadly, the underpayments on the Ervins' individual returns are directly related to their purported participation in Jade, as opposed to, for example, an underpayment resulting from claiming children who are not actually dependents.

reported on the partnership returns and on the partners' individual returns, whereas the artificial losses at issue in this case are reported only on the partners' individual returns. (*Id.*) This distinction is meaningless in the context of determining the applicability of the negligence penalty in this case. In both cases, the underpayment is reported on the partners' individual returns, and the underpayment is "attributable to" negligence by the partnership and its managing member that "relates to" partnership items. Thus, the Court's reliance on *Santa Monica Pictures* is appropriate because a similar issue is presented. The Court's reliance is appropriate for the additional reason that *Santa Monica Pictures* is the only decision (other than this Court's decision) to discuss the conduct giving rise to a negligence penalty at the partnership level after the amendments in the Taxpayer Relief Act of 1997 were enacted.[7] *See Santa Monica Pictures*, T.C. Memo 2005-104 n.187. Indeed, Sentinel has not pointed to any other more relevant authority.[8]

---

[7]In a decision that pre-dates the Taxpayer Relief Act of 1997, the Ninth Circuit Court of Appeals affirmed the Tax Court's imposition of the negligence penalty against a taxpayer on the basis of conduct by both the taxpayer and the partnership. *Wolf v. Commissioner*, 4 F.3d 709, 715 (9th Cir. 1993).

[8]Sentinel contends that the decision in *Long Term Capital Holdings v. United States*, imposes a "negligence penalty as a result of overstatement if inside tax basis of assets" in a transaction determined to lack economic substance. (Motion at 5) (emphasis in original). Sentinel is wrong. At the district court level, the court concluded that it did not need to reach the negligence penalty issue because it determined that the 40-percent penalty for gross valuation misstatement and the 20-percent penalty for substantial understatement were applicable. *Long Term Capital Holdings v. United States*, 330 F. Supp.2d 122, 196 (D. Conn. 2004). The decision was affirmed by the Second Circuit, obviously without discussion of the negligence penalty. 150 Fed. Appx. 40 (2d Cir. 2005).

III.

## THE REASONABLE CAUSE DEFENSE, IF PROVED, IS A DEFENSE TO THE NEGLIGENCE PENALTY REGARDLESS OF THE CONDUCT CONSIDERED IN DETERMINING THAT THE NEGLIGENCE PENALTY IS APPLICABLE

During a hearing on January 29, 2008, counsel for the Ervins expressed concern that confusion may arise in a partner-level refund action later brought by the Ervins with respect to the relationship between their reasonable cause defense, pursuant to 26 U.S.C. § 6664(c), and this Court's determination that the negligence penalty is applicable based on the conduct of the partnership and its managing member. In particular, counsel for the Ervins speculated that a court presiding over the partner-level refund action could conclude that the reasonable cause defense cannot negate the negligence penalty because its application was determined on the basis of conduct by the partnership and managing member. Counsel for the Ervins referred to this as an "asymmetry."

The "asymmetry" described by counsel for the Ervins will not lead to the confusion they posit. The plain language of § 6664(c), which provides that the reasonable cause defense will prevent the imposition of any penalty under § 6662 – including the 20-percent negligence penalty – resolves this concern:

> (1) In General.–No penalty shall be imposed under section 6662 or 6663 with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.

*See also* Treas. Reg. § 1.6664-4(a); *Hansen v. Commissioner*, 471 F.3d 1021, 1029 (9th Cir. 2006) ("The Code provides an exception to the negligence penalty when a taxpayer can demonstrate both reasonable cause for the underpayment and good faith in acting pursuant to

such cause").

The court considering the Ervins' reasonable cause defense in a partner-level proceeding will not be limited to considering evidence of the Ervins' conduct. Treas. Reg. § 1.6664-4(e) provides:

> (e) Pass-through items. The determination of whether a taxpayer acted with reasonable cause and in good faith with respect to an underpayment that is related to an item reflected on the return of a pass-through entity is made on the basis of all pertinent facts and circumstances, including the taxpayer's own actions, as well as the actions of the pass-through entity.

Thus, while the Ervins will be bound by the factual findings and conclusions of law made in this partnership-level proceeding if/when they proceed to a partner-level proceeding, they will have the opportunity to present additional evidence regarding their conduct as well as the conduct of the partnership and its managing partner as it bears on the Ervins' reasonable cause defense.

## CONCLUSION

For the foregoing reasons, the Court should deny Sentinel's motion for reconsideration.

Respectfully submitted,

s/Stuart J. Bassin
STUART J. BASSIN
Attorney of Record for Defendant
Department of Justice
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
TELEPHONE (202) 307-6418
FAX (202) 514-9440

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
JENNIFER P. WILSON
Trial Attorney

s/David Gustafson
Of Counsel

February 15, 2008