# In the United States Court of Federal Claims

**No. 03-2164T**

**(Filed March 20, 2008)**

* * * * * * * * * * * * * * * * * * * * * * * * *

**JADE TRADING, LLC, by and through, ROBERT W. ERVIN AND LAURA KAVANAUGH ERVIN on behalf of ERVIN CAPITAL, LLC, Partners Other Than the Tax Matters Partner,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

* * * * * * * * * * * * * * * * * * * * * * * * *

**Reconsideration; Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA); 26 U.S.C. §§ 6221-6234, 6662, and 6664; Negligence Penalty; Partnership Item; Reasonable Cause Exception; Clarification.**

David D. Aughtry, Chamberlain, Hrdlicka, White, Williams & Martin, Atlanta, Georgia, and Linda S. Paine, Houston, Texas, for Plaintiffs.

Stuart J. Bassin, U.S. Department of Justice, Tax Division, Washington, D.C. for Defendant. John Dicicco, David Gustafson, and Jennifer Wilson, U.S. Department of Justice, Tax Division, Of Counsel.

Mark D. Allison, Dewey & LeBoeuf, LLP, New York, New York, for Movant, Sentinel Advisors, LLC.

---

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION FILED BY SENTINEL ADVISORS, LLC[1]

---

**WILLIAMS**, Judge.

---

[1] The facts are set forth in detail in Jade Trading LLC v. United States, 80 Fed. Cl. 11 (Fed. Cl. 2007), and familiarity with that decision is presumed.

This matter comes before the Court on a motion for reconsideration filed by Sentinel Advisors, LLC (Sentinel).[2] In the underlying decision, this Court found that spread transactions contributed to a partnership which generated substantial tax losses lacked economic substance and had to be disregarded for tax purposes, -- a finding which triggered the application of four alternative statutory penalties.

Sentinel seeks reconsideration of one narrow aspect of this Court's opinion -- the application of the alternative negligence penalty. Sentinel contends that the Court erred in applying the negligence penalty to the Jade partnership because the partnership item in dispute is the plaintiffs' outside basis in their membership interests in Jade which were not reported on Jade's return. Further, Sentinel points out that it neither reported the inaccurate item itself nor claimed tax losses in connection with this transaction, making its conduct irrelevant.

Sentinel construes the negligence penalty too narrowly. As the managing member and tax matters partner of Jade and the only Jade partner involved in marketing and implementing the spread transaction which generated the substantial tax losses here, Sentinel's conduct is clearly relevant to a determination of whether Jade was negligent. Nothing in the Code prohibits the Court from examining the conduct of a partner which had a major role in facilitating the tax losses at issue. Nor in this partnership proceeding is the Court confined to assessing negligence based solely upon inaccurate reporting on the face of the partnership return. As a pass-through entity, the partnership does not pay taxes, and the losses the partnership generated are fair game in considering penalties -- even though such losses were only reported and claimed at the individual partner level. As such, Sentinel has not established a manifest error of law warranting reconsideration of the applicability of the negligence penalty.

## Discussion

Rule 59(a)(1) of the Rules of the United States Court of Federal Claims provides that:

> reconsideration may be granted to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States. On a motion under this rule, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

---

[2] Although Sentinel was the tax matters partner and the managing member of the partnership, Jade Trading, LLC, it opted not to participate in this litigation until after judgment was entered. On January 29, 2008, the Court granted Sentinel's motion to participate in this action for the sole purpose of filing its motion for reconsideration. Briefing on this motion was completed on March 3, 2008, and the Court held oral argument on March 12, 2008.

In determining whether to grant a motion for reconsideration this Court is granted discretion. Yuba Natural Res. Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). However, the Court must consider such motions with "exceptional care." Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999) (aff'd 250 F.3d 762 (Fed. Cir. 2000) (quoting Seldovia Native Ass'n Inc. v. United States, 36 Fed. Cl. 593, 594 (1996)). Motions for reconsideration are to be granted only upon "a showing of extraordinary circumstances which justify relief." Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting Fru-Con Constr., 44 Fed. Cl. at 300; see also Four Rivers Invs., Inc. v. United States, 78 Fed. Cl. 662 (2007) ("[A] motion for reconsideration of a final judgment functions not as another round of briefing in an open case, but as a request for extraordinary relief in a matter that is now closed.").

To succeed on its motion for reconsideration, Sentinel must show that the Court's opinion contained a manifest error of law or mistake of fact. Mathews v. United States, 73 Fed. Cl. 524, 526 (2006); Shirlington Limousine & Trans., Inc. v. United States, 78 Fed. Cl. 27, 29 (2007); Fru-Con Constr. Corp., 44 Fed. Cl. at 301. In order to demonstrate the existence of a manifest error of law or fact, Sentinel must show "(1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice. Mathews, 73 Fed. Cl. at 526; Fru-Con Constr., 44 Fed. Cl. at 301; Shirlington Limousine, 78 Fed. Cl. at 29; First Fed. Lincoln Bank v. United States, 60 Fed. Cl. 501, 502 (2004).

Sentinel lodges two arguments in its motion for reconsideration: 1) that the Court erred in applying the negligence penalty at the partnership level because the partnership return was not inaccurate, and 2) that the Court improperly considered the conduct of Sentinel in applying the negligence penalty because Sentinel itself did not inaccurately report an understatement of tax.

In arguing that the Court should not have applied the negligence penalty to the partnership, Sentinel points out that the inaccurate reporting occurred on the individual partners' -- the Ervins' -- tax returns, not on Jade's.[3] However, this does not mean that the negligence penalty cannot be applied at the partnership level here. The Code dictates that the Court assess the applicability of the negligence penalty with respect to the partnership in the context of this partnership proceeding. First,

[3] At oral argument Sentinel also urged the Court to consider the applicability of the negligence penalty solely with respect to the Ervins, -- as individual partners -- even though this is a partnership proceeding. However, the Court cannot apply the negligence penalty to select individual partners in a partnership proceeding and ignore the conduct of the remaining partners. The goal of TEFRA is to ensure equal treatment of all partners of a partnership by "uniformly adjusting partners' tax liabilities and channeling any challenges to these adjustments into a single, unified proceeding" at the partnership level. Kaplan v. United States, 133 F.3d 469, 471 (7th Cir. 1998). See generally, Rhone-Poulenc Surfactants & Specialties, L.P. v. Comm'r, 249 F.3d 175, 178 (3d Cir. 2001).

section 6621,[4] "Tax Treatment Determined at Partnership Level," directs that the tax treatment of any "partnership item" and the applicability of any penalty which "relates to" an adjustment to a "partnership item" shall be determined at the partnership level. Second, section 6626(f), "Scope of Judicial Review," gives this Court jurisdiction to determine the applicability of any penalty which relates to the adjustment of a "partnership item." 26 U.S.C. 6626(f). Here, this Court held that "the Ervin LLC's contributions to Jade and Jade's distributions to them for purposes of its books and records and furnishing information to its partners, were "partnership items," relying on Nussdorf v. Commissioner, 129 T.C. 30 (2007).[5] The negligence penalty clearly related to the inflated basis the spread transaction in the partnership generated on the Ervins' individual returns --which in turn caused the Ervins' tax losses. Further, as the pertinent Treasury Regulation recognizes, the Court's jurisdiction extends to all the legal and factual determinations that underlie the determination of any penalty. Treas. Reg. § 301.6221-1T(c) (1999). Here, as in Nussdorf, the character of spread transactions contributed to and redeemed from the partnership were determinations underlying the application of the negligence penalty which the Court had to make.

Although typically accuracy-related penalties are applied at the partnership level based upon the partnership return's inaccurate reporting, it would be inappropriate to eliminate the penalty here solely because there are no numerical inaccuracies on Jade's partnership tax return.[6] Applying the negligence penalty to the partnership here is particularly appropriate because it was only the construct of forming the partnership and contributing the spread to the partnership that permitted the tax losses to be realized. Had the Ervin LLCs simply done the spread transactions on their own without contributing them to Jade there would have been no substantial losses. As the Court recognized: "packaging the investment in the partnership vehicle was an absolute necessity for securing the tax benefits." Jade, 80 Fed. Cl. at 14.

---

[4] Unless otherwise indicated, section references are to the applicable section of the Internal Revenue Code.

[5] This Court's conclusion that the Ervins' contributions to Jade and the distributions they received upon exiting Jade are partnership items is the law of the case and a necessary underpinning of this Court's threshold determination that it possesses jurisdiction -- a matter not challenged.

[6] Cf. Santa Monica Pictures LLC v. Comm'r, T.C. Memo 2005-104, 89 T.C.M. (CCH) 1157, 1124 (2005). Defendant contends that there was inaccurate reporting on Jade's return in the column entitled "distributions -- property other than money." Specifically, the FPAA adjusted the as-reported distribution of $398,279 to zero. The $398,279 represented the market value of the euros and Xerox stock that the Ervins received in redemption of their partnership interests in Jade. In point of fact, the Ervins received that amount upon exiting Jade. Thus, the return is not technically inaccurate. However, as Defendant points out, the adjustment of the amount of that distribution to zero represents the Internal Revenue Service's assessment that the partnership was a sham, the transaction lacked economic substance and the Jade partnership could not be used as a funnel to facilitate the generation of the artificial tax losses.

Sentinel's second argument is that it was error for the Court to consider the conduct of the tax matters partner and managing member, Sentinel, and its principals in applying the negligence penalty here because Sentinel did not inaccurately report its basis or understate its taxes.

However, the Code sections 6621, 6226(f) and 6662(b) and (c), read together permit the Court to determine whether an underpayment on an individual partner's tax return is "attributable to" negligence that "relates to" partnership items. In doing so, the Court is free to analyze the conduct at the partnership level which generated the losses. Section 6662 provides that a 20 percent accuracy-related penalty shall be imposed on any portion of an underpayment of tax required to be shown on a return if such portion of the underpayment of tax is "attributable to" "negligence or disregard of rules or regulations." Section 6662(c) defines negligence as "any failure to make a reasonable attempt to comply with this title of the Internal Revenue Code." The statute is silent as to whose negligence can be assessed at the partnership level and does not restrict a court examining negligence in a partnership proceeding to the four corners of the partnership tax return or to the conduct of partners whose returns inaccurately report losses. Because a partnership is a pass-through entity which itself does not pay tax, the Court should not be hamstrung in looking only at the four corners of the partnership's return in order to ascertain whether the negligence penalty is applicable.

As the legislative history of TEFRA recognizes, "many penalties are based upon the conduct of the taxpayer" and "with respect to partnerships, the relevant conduct often occurs at the partnership level." H.R. Rep.105-148 at 594 (1997) Conf. Rep. (emphasis added). Thus, the negligence penalty is applied based upon conduct -- conduct which has been defined as a failure to do what a reasonably prudent person would do under the circumstance. Marcello v. Comm'r, 380 F.2d 499, 509 (5th Cir. 1967); Neely v. Comm'r, 85 TC 934, 947 (1985). Here, as the Court found, Sentinel and its principals' conduct occurred at the partnership level:

> [Sentinel's] Bergmann was instrumental in developing the spread transaction with BDO Seidman and paramount in marketing the transaction to the Ervins. It was Bergmann's pitch, along with BDO Seidman's and Curtis Mallet's recommendations, which persuaded the Ervins to do the deal. Further, while Sentinel and Bergmann were to do the trading, that was not their only role -- Sentinel's CFO, Conjeeveram, prepared the paperwork for the Ervin LLCs and worked with AIG devising the procedures to be followed -- using Sentinel personnel and its accounting firm, Untracht. Sentinel was involved not only in executing the spread transaction but also in facilitating contributions to and redemptions from the partnership, including valuing the partnership assets and determining the assets to be redeemed. . . . Finally, Sentinel's accounting firm, Untracht, prepared and signed Jade's 1999 tax return.
>
> The spread transaction contributed to Jade was structured to yield and did yield tax benefits which Bergmann should have recognized as being "too good to be true." The Ervin LLCs only had to "invest" $150,002 to purchase the spread options but in return received approximately $15 million each in taxable losses. The Ervin LLCs

> were protected from realizing any significant financial losses as they could lose no more than their initial investment in Jade. The transaction which Bergmann brought to BDO Seidman from the street was an elaborate fictional construct with no economic consequences other than tax benefits. A reasonably prudent investor with Bergmann's hedge fund and market experience would have known there was no investment and no potential for profit in the spread transaction. A reasonably prudent person with Bergmann's CPA background and tax experience would not have conducted himself as Bergmann did here in promoting and facilitating the reporting of such substantial tax losses from a fictional transaction.

Jade, 80 Fed. Cl. at 56.

Moreover, Sentinel was Jade's managing member and the tax matters partner -- Jade's agent whose conduct is properly imputed to Jade under fundamental precepts of agency law. Restatement (Third) of Agency, § 1.03 (2006) ("A partner's act binds the partnership if the act appears to carry on partnership business in the usual way."). Nor would it be appropriate, as Sentinel suggests, to look solely at the conduct of the Ervins in ascertaining whether this penalty is applicable. The partnership was not comprised solely of the Ervins; Sentinel, as the tax matters partner and managing member of Jade, is a party to this action de jure under section 6226(c), directed Jade as an entity, executed the transactions which gave rise to the tax losses generated here, and facilitated their reporting on the Ervins' returns.

Because Sentinel has not demonstrated a manifest error of law in the Court's application of the negligence penalty to Jade, its motion for reconsideration is denied.

**Plaintiffs' Request for Clarification**

Plaintiffs have asked the Court to "clarify" its decision and rule that "the Ervins' reasonable cause (including any good faith reliance on their traditional tax advisors) would operate in their partner-level refund proceeding "to bar the imposition of the penalties to them alone." Pl.'s Reply at 2. The request for clarification attempts to inject into the Court's decision both findings of fact and legal conclusions which were not made. The reasonable cause defense of the Ervins was not adjudicated by this Court, as the Court ruled that it lacked jurisdiction over this defense.

The reasonable cause exception, codified in section 6664(c), states: "No penalty shall be imposed under section 6662 . . . with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." Treasury Regulation § 301.6221-1T(d) provides that partner-level defenses to any penalty relating to a partnership item may not be asserted in the partnership-level proceeding, and cited section 6664(c)(1)(reasonable cause exception) as an example of such a defense. Plaintiffs asked the Court to invalidate this regulation, and the Court declined. The Court expressly deferred any adjudication of the reasonable cause defense to any subsequent individual partner refund action, stating: "the individual partners may still avail themselves of a section 6664's protection and defeat

the penalties if they can show the requisite reasonable cause and good faith." 80 Fed. Cl. at 59.

Lacking jurisdiction over this defense, the Court did not make findings of fact with respect to whether any individual partner met the particularized requirements of the reasonable cause exception in section 6664(c)(1). See generally, Thompson v. Comm'r, 499 F.3d 129, 134 (2d Cir. 2007) (recognizing that "it is a question of fact whether the elements that constitute 'reasonable cause' are present in a given situation" and remanding the matter because the Tax Court's findings were insufficient to support a determination of reasonable cause.).[7]

In sum, it would be inappropriate for the Court to clarify its opinion to suggest that the reasonable cause exception had been met when the Court lacked jurisdiction over the defense and did not purport to make the findings necessary to adjudicate the merits of that defense.

## Conclusion

1. Sentinel's motion for reconsideration is **DENIED**.
2. Plaintiff's request for clarification is **DENIED.**

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

---

[7] The Second Circuit stated:

> The factors set out in the regulations search the good faith of the taxpayer-either in assessing its own liability or in relying on an expert to do so. But the Tax Court made no finding as to whether the Estate's reliance on its experts was reasonable and in good faith, or whether the Estate knew or should have known that they lacked the expertise necessary to value the Company.

Thompson, 499 F.3d at 135.