# In the United States Court of Federal Claims

No. 03-2164T

(Filed: April 29, 2011)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| | * | |
| **JADE TRADING, LLC, ET AL.,** | * | Tax Equity and Fiscal |
| | * | Responsibility Act of 1982, |
| Plaintiffs, | * | 26 U.S.C. §§ 6226, 6662; |
| | * | Jurisdiction to Apply |
| v. | * | Accuracy-Related Penalties in |
| | * | a Partnership Proceeding; |
| **THE UNITED STATES,** | * | Outside Basis; Lack of |
| | * | Economic Substance. |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * * * | | |

<u>David D. Aughtry</u>, Chamberlain, Hrdlicka, White, Williams, & Martin, 191 Peachtree Street, N.E., 34th Floor, Atlanta, GA, and <u>Linda S. Paine</u>, Chamberlain, Hrdlicka, White, Williams, & Martin, 1200 Smith Street, 14th Floor, Houston, TX, for Plaintiffs.

<u>Joseph B. Syverson</u>, U.S. Department of Justice, P.O. Box 26, Ben Franklin Post Office, Washington, D.C., for Defendant.

---

**OPINION AND ORDER FOLLOWING REMAND**

---

**<u>WILLIAMS</u>, Judge.**

This tax case comes before the Court on remand from the United States Court of Appeals for the Federal Circuit for a determination of whether this Court possesses jurisdiction to apply accuracy-related penalties in this partnership proceeding. In <u>Jade Trading, LLC v. United States</u>, 80 Fed. Cl. 11 (2007) ("<u>Jade Trading I</u>"), this Court found that a variation of a bond and options sales strategy ("Son of BOSS") transaction lacked economic substance and that accuracy-related penalties applied at the partnership level.

On appeal, the Federal Circuit affirmed that the transaction lacked economic substance but vacated the determination that penalties applied because this Court had relied upon the individual partners' outside bases, which are not partnership items, in applying the penalties. The Federal

1

Circuit remanded the case to this Court to determine "whether any part of the penalties could have been assessed without relying on the Ervins' outside bases." Jade Trading, LLC v. United States, 598 F.3d 1372, 1381 (Fed. Cir. 2010) ("Jade Trading II"). On remand, this Court concludes that none of the penalties could have been applied without relying on the individual partners' outside bases. As such, the Court lacks jurisdiction to determine the applicability of the penalties in this partnership proceeding.

## **Background**

Robert W. Ervin and his two brothers were equal partners in a cable business. They sold the business in 1999, resulting in a total gain per brother of approximately $13.5 million. In September of 1999, the Ervin brothers each formed a single-member LLC (collectively, the "Ervin LLCs"). On September 15, 1999, each Ervin LLC entered into a separate master trading agreement with American International Group, Inc. ("AIG"), requiring each Ervin LLC to pay an $84,100 account opening fee. On September 29, 1999, each Ervin LLC purchased from AIG a call option on the euro at a strike price of 1.0840 for $15,000,020 and sold to AIG a call option on the euro at a strike price of 1.0850 for $14,850,018. "The options were all European-style options that expired on September 29, 2000, and had a face amount of 290,540,000 euros." Jade Trading II, 598 F.3d at 1375. Each Ervin LLC paid AIG only $150,002 -- the difference in the premiums of the offsetting options. On October 2, 1999, each Ervin LLC entered into a 15-month consulting agreement with New Vista, LLC ("New Vista"), requiring each Ervin LLC to pay New Vista $750,000 for "consulting services." Id. Payment of this fee was a prerequisite to the Ervin LLCs being admitted to the Jade Trading, LLC partnership ("Jade"), which Sentinel Advisors, LLC ("Sentinel") and Banque Safra, a Luxembourg financial institution, had created on September 23, 1999; Sentinel was the managing partner. On October 6, 1999, each Ervin LLC entered Jade as a partner.[1] That same day, each Ervin LLC contributed these euro call options as well as $75,000 cash to Jade. In December of 1999, each Ervin LLC withdrew from Jade. Each Ervin LLC's interest in assets distributed to it by Jade was valued at $126,122 and consisted of Xerox stock, which was sold in 1999, and euros.

Each Ervin brother claimed approximately $15 million in tax losses for tax year 1999, resulting from each brother increasing the basis of his interest in Jade -- outside basis -- by the $15 million cost of the purchased call option and "not decreasing this basis by the amount of the potential liability that Jade assumed under the sold call option." Id. at 1375-76.

On its Schedule K for tax year 1999, Jade reported a loss of "other income" in the amount of $292,015 and "[o]rdinary loss from Sec. 988 transactions" in the amount of $314,416. Jt. Ex. 84. The Government asserted that the $314,416 in reported losses included the disregarded spread transaction but could not explain what other transactions were included in the Section 988

---

[1] Plaintiffs aver that Jade included two other partners who received no tax benefits as a result of the transaction. Tr. 13. Unless otherwise indicated, "Tr." refers to the transcript of the January 12, 2011 oral argument that was held in this matter on remand.

transactions or what portion of the $314,416 in losses the spread transaction generated.[2]  Tr. 136-43.

After auditing Jade's partnership return for tax year 1999, the Internal Revenue Service ("IRS") issued a Notice of Final Partnership Administrative Adjustment ("FPAA") to Jade.  The FPAA made the following determinations:

1. It is determined that Jade Trading, LLC, is a sham and, under [Treasury Regulation] § 1[.]701-2, was formed or availed of in connection with a transaction or transactions in taxable year 1999, a principal purpose of which was to reduce substantially the present value of the partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. It is consequently determined that the partnership is disregarded and that all transactions engaged [in] by Jade Trading, LLC, are treated as engaged in directly by the purported partners. This includes the determination that the Euros and Xerox stock purportedly acquired by the partnership were acquired directly by purported partners Ervin Holdings, LLC, Ervin Capital, LLC, and Ervin Investments, LLC.

2. It is determined that, under § 1[.]701-2 of the Treasury Regulations, Euro currency options, purportedly contributed to or assumed by the partnership, are treated as never having been contributed to or assumed by the partnership and any gains or losses purportedly realized by the partnership on the options are treated as having been realized by the purported partners Ervin Holdings, LLC, Ervin Capital, LLC, and Ervin Investments, LLC.

3. It is further determined that, under § 1[.]701-2 of the Treasury Regulations, Ervin Holdings, LLC, Ervin Capital, LLC, and Ervin Investments, LLC, should be treated as not being partners in the partnership.

4. It is further determined that, under § 1[.]701-2 of the Treasury Regulations, contributions to the partnership will be adjusted to reflect clearly the partnership's or partners' income.

5. Even if Euro currency options were to be treated as contributed to the partnership, the bases of the options are reduced, both in the hands of the contributing partners and the partnership, by an amount received by the contributing partner from the contemporaneous sale of a substantially similar option to the same counter-party[.]  Thus, any amount treated as an increase in outside basis from the contribution of Euro currency options is disallowed.

---

[2] Although the Court afforded the parties an opportunity for supplemental briefing to address this issue, neither party deemed it necessary.  Tr. 149-51.

6. Accuracy-Related Penalties[:]  It is determined that the underpayment of tax for the taxable year 1999 is due to a gross valuation misstatement of the adjusted basis in the partners' basis in their partnership interest and the consequent basis in the Euros and Xerox stock distributed to partners to which their partnership basis attached[.]  Therefore, the 40 percent penalty is imposed on the underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e) and 6662(h) of the Internal Revenue Code.

Alternatively, it is determined that all or part of the underpayment of tax for the taxable year 1999 is due to negligence or disregard of rules and regulations for filing income tax returns.  Consequently, the 20 percent penalty is imposed on the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), [and] 6662(c) of the Internal Revenue Code.

Alternatively, it is determined that the underpayment of tax for the taxable year 1999 is due to an underpayment attributable to substantial understatement of income tax.  Consequently, the 20 percent penalty is imposed on the underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a), 6662(b)(2), [and] 6662(c) of the Internal Revenue Code.

Alternatively, it is determined that the underpayment of tax for the taxable year 1999 is a substantial understatement of income tax because the transaction is a tax shelter, no substantial authority has been established for the position taken, and there was no reasonable belief upon the filing of the return that the position taken was more likely than not the correct treatment of the transaction.  Consequently, the 20 percent penalty is imposed on the underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a), 6662(b)(2), [and] 6662(c) of the Internal Revenue Code.

Jt. Ex. 109.

**Jade Trading I**

In Jade Trading I, the Court held that the spread transaction lacked economic substance, stating:

In sum, this transaction's fictional loss, inability to realize a profit, lack of investment character, meaningless inclusion in a partnership, and disproportionate tax advantage as compared to the amount invested and potential return, compel a conclusion that the spread transaction objectively lacked economic substance.

80 Fed. Cl. at 14.

The Court further determined that the accuracy-related penalties applied because § 6226(f) confers jurisdiction on this Court to determine the "applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." Id. at 41 (quoting 26 U.S.C. § 6226(f)). Specifically, § 6226(f) provides:

> Scope of Judicial Review. A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the [FPAA] relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

26 U.S.C. § 6226(f). Section 6231(a)(3) defines "partnership item" as follows:

> Partnership item. The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A . . . to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle . . . such item is more appropriately determined at the partnership level than at the partner level.

26 U.S.C. § 6231(a)(3). Section 6231(a) also defines "nonpartnership item" and "affected item":

> (4) Nonpartnership item. The term "nonpartnership item" means an item which is (or is treated as) not a partnership item.
>
> (5) Affected item. The term "affected item" means any item to the extent such item is affected by a partnership item.

26 U.S.C. § 6231(a)(4),(5). An affected item is not a partnership item. Petaluma FX Partners, LLC v. Comm'r, 135 T.C 29, 2010 WL 5209376, at *3 (Dec. 15, 2010) ("Petaluma III"), appeal docketed, No. 024717-05 (D.C. Cir. Mar. 8, 2011).

**Penalties Applied in Jade Trading I**

In Jade Trading I, this Court applied a 40 percent gross valuation misstatement penalty because the Ervin LLCs' bases in their Jade partnership interests exceeded the correct amounts by 400 percent or more. Specifically, this Court found that although each Ervin LLC treated its partnership interest in Jade as having a basis of approximately $15 million, the actual basis was $225,002. 80 Fed. Cl. at 53.

In the alternative, this Court applied the 20 percent negligence penalty at the partnership level, reasoning:

5

[I]n the instant case, Sentinel's principal, Bergmann, while not an attorney, was a CPA with tax experience, having headed the Transaction Development Group at Bankers Trust which, inter alia, advised clients on tax transactions and hedge fund structures. Bergmann was instrumental in developing the spread transaction with BDO Seidmann [sic] and paramount in marketing the transaction to the Ervins. It was Bergmann's pitch, along with BDO Seidman's and Curtis Mallet's recommendations, which persuaded the Ervins to do the deal. Further, while Sentinel and Bergmann were to do the trading, that was not their only role -- Sentinel's CFO, Conjeevaram, prepared the paperwork for the Ervin LLCs and worked with AIG devising the procedures to be followed -- using Sentinel personnel and its accounting firm, Untracht. Sentinel was involved not only in executing the spread transaction but also in facilitating contributions to and redemptions from the partnership, including valuing the partnership assets and determining the assets to be redeemed. Finally, Sentinel's accounting firm, Untracht, prepared and signed Jade's 1999 tax return.

The spread transaction contributed to Jade was structured to yield and did yield tax benefits which Bergmann should have recognized as being "too good to be true." The Ervin LLCs only had to "invest" $150,002 to purchase the spread options but in return received approximately $15 million each in taxable losses. The Ervin LLCs were protected from realizing any significant financial losses as they could lose no more than their initial investment in Jade. The transaction which Bergmann brought to BDO Seidman from the street was an elaborate fictional construct with no economic consequences other than tax benefits. A reasonably prudent investor with Bergmann's hedge fund and market experience would have known there was no investment and no potential for profit in the spread transaction. A reasonably prudent person with Bergmann's CPA background and tax experience would not have conducted himself as Bergmann did here in promoting and facilitating the reporting of such substantial tax losses from a fictional transaction.

Nor does the Ervins' reliance on Curtis Mallet and BDO Seidman defeat the partnership's negligence penalty here. "While it is true that actual reliance on the tax advice of an independent, competent professional may negate a finding of negligence . . . the reliance itself must be objectively reasonable in the sense that the taxpayer supplied the professional with all the necessary information to assess the tax matter and that the professional himself does not suffer from a conflict of interest or lack of expertise that the taxpayer knew of or should have known about." Both BDO Seidman's model opinion and Curtis Mallet's opinion were premised on the fallacy that the spread transaction could generate a profit. Moreover, Jade itself did not obtain an opinion from Curtis Mallet, only the Ervins did. Nor does Sentinel's and the Ervins' reliance on BDO Seidman advance their cause. "It is well established that taxpayers generally cannot reasonably rely on the professional advice of a tax shelter promoter."

Id. at 56-57 (internal citations omitted).

Sentinel moved the Court for reconsideration, arguing that the Court erred in applying the negligence penalty at the partnership level because the partnership item in dispute was each Plaintiff's outside basis in Jade, which was not reported on Jade's return, and Sentinel's conduct should not have been considered in applying the negligence penalty. See Jade Trading, LLC v. United States, 81 Fed. Cl. 173, 174 (2008). In denying reconsideration, the Court stated:

> "[the Ervin LLCs'] contributions to Jade and Jade's distributions to them for purposes of its books and records and furnishing information to its partners, were 'partnership items'" . . . The negligence penalty clearly related to the inflated basis the spread transaction in the partnership generated on the Ervins' individual returns -- which in turn caused the Ervins' tax losses. . . . [T]he Court's jurisdiction extends to all the legal and factual determinations that underlie the determination of any penalty. . . . [T]he character of spread transactions contributed to and redeemed from the partnership were determinations underlying the application of the negligence penalty which the Court had to make.

Id. at 176 (internal citations omitted).[3] The Court further observed that applying the penalty in Jade Trading I was proper because "'packaging the investment in the partnership vehicle was an absolute necessity for securing the tax benefits.'" Id. (quoting Jade Trading I, 80 Fed. Cl. at 14).

In addition to the gross valuation misstatement and negligence penalties, the Court determined, in the alternative, that a substantial understatement penalty applied. An understatement is substantial if it exceeds the greater of $5,000 or 10 percent of the tax required to be reported on the return. Jade Trading I, 80 Fed. Cl. at 57. To obtain relief from the penalty, the taxpayer has the burden of showing that "substantial authority" supported its position. Id. Where, as here, an understatement was attributable to a tax shelter, the taxpayer is required to prove that it "'reasonably believed that [its position] was more likely than not the proper treatment.'" Id. (citation omitted). This Court accepted Plaintiffs' argument that Helmer v. Comm'r, 34 T.C.M. (CCH) 727 (1975), and its progeny supported "the premise that a sold call option would not constitute a liability under Section 752 for purposes of calculating a partner's basis in its partnership interest." Id. at 58. However, the Court concluded that the substantial understatement penalty applied because "the fictional nature of the transaction and its lack of economic reality outweigh[ed] Helmer in the substantial authority assessment." Id.[4]

---

[3] Although the Federal Circuit did not reference Sentinel's motion for reconsideration in Jade Trading II, it is clear that this Court's reasoning in the reconsideration decision was likewise vacated because this Court's application of the negligence penalty depended upon "the inflated basis the spread transaction in the partnership generated on the Ervins' individual returns." Jade Trading, 81 Fed. Cl. at 176.

[4] The Court in Jade Trading I held that reasonable cause defenses to penalties could not be litigated in the partnership-level proceeding. 80 Fed. Cl. at 60. Lacking jurisdiction over the

**Jade Trading II**

Although the Federal Circuit upheld this Court's determination that the spread transaction lacked economic substance, the Court vacated the decision applying accuracy-related penalties. The Federal Circuit found that this Court lacked jurisdiction because, in applying the penalties, this Court had relied upon outside basis -- the value assigned to a partner's investment in its partnership interest -- which is not a partnership item. Jade Trading II, 598 F.3d at 1379-80 (citing Petaluma FX Partners, LLC v. Comm'r, 591 F.3d 649 (D.C. Cir. 2010) ("Petaluma II"), aff'g in part, rev'g in part, and vacating in part, 131 T.C. 84 (2008)). Applying Petaluma, the Federal Circuit explained:

> The parties' arguments on appeal in Petaluma were strikingly similar to those in this case. As in the present case, Petaluma argued that outside basis is an affected item, not a partnership item and, therefore, the Tax Court had no right to determine that its partners' outside bases were zero. Also similar to this case, the government conceded that outside basis is not a partnership item but then argued that outside basis is an affected item whose elements are largely or entirely partnership items.
>
> The D.C. Circuit agreed with Petaluma, stating that "the partners' outside bases are affected items, not partnership items. Unlike partnership items, affected items are determined not at the partnership level, but at the individual partner level." The court observed that not only are partnership items and affected items treated at different levels, the assessment procedures are different. In the case of a partnership item, the IRS may directly assess the tax against the individual partner by making a computational adjustment -- applying the new tax treatment of all partnership items to the partner's return -- and the partner must bring a refund claim to challenge the computation. However, if the partner's liability relates to affected items, the IRS must send a notice of deficiency to that partner, thereby initiating a deficiency proceeding against him individually.
>
> The court concluded that under § 6226(f) the Tax Court did not have jurisdiction to review the determination that the individual partners had no outside basis in Petaluma. The court rejected the government's contention that, although an affected item, outside basis could be determined in the partnership-level proceeding. "The fact that a determination seems obvious or easy does not expand the court's

---

reasonable cause defenses, the Court did not make findings of fact with respect to whether any individual partner met the particularized requirements of the reasonable cause exception in § 6664(c)(1). Jade Trading, 81 Fed. Cl. at 178. The Federal Circuit vacated the Court's holding that the Ervin LLCs could not raise partner-level defenses at the partnership level because its vacatur of the application of the penalties rendered potential defenses to these penalties moot. Jade Trading II, 598 F.3d at 1381.

8

jurisdiction beyond what the statute provides.  In other words, it does not matter how low the fruit hangs when one is forbidden to pick it."

Id. (internal citations omitted).

## Discussion

**Issue on Remand**[5]

In Jade Trading II, the Federal Circuit vacated the Court's application of penalties for lack of jurisdiction because this Court had relied solely upon outside basis in applying the penalties. 598 F.3d at 1380.  The Federal Circuit remanded the issue of "whether any penalties could have been assessed without relying on the Ervins' outside bases," noting "[b]ecause it is possible that at least some portion of the penalties could have been computed without relying on the partners' outside bases, we conclude that the penalty issue should be vacated and remanded."  Id.

As the proponent of jurisdiction, Defendant bears the burden of establishing the Court's jurisdiction.  Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Stephenson v. United States, 58 Fed. Cl. 186, 191 n.5 (2003) (explaining that the proponent of subject matter jurisdiction has the burden to establish it); see generally McNutt v. GMAC, 298 U.S. 178, 181 (1936) (burden of proving jurisdiction is on the one asserting jurisdiction).

Contrary to the Federal Circuit's instructions on remand, Defendant did not persuasively identify any item that could support applying any penalty or portion of a penalty at the partnership level without relying upon the Ervin LLCs' outside bases.  Instead, Defendant posited three partnership items that either ignored the fact that outside basis would have to be relied upon or that could not support the application of any penalty.  First, Defendant postulated that the claimed findings that Jade was a sham and the spread transaction lacked economic substance carried the day in permitting the application of penalties without regard to the Ervin LLCs' outside bases. According to the Government, such determinations reduced Jade's inside basis in the spread transaction to zero and constituted partnership items.  However, both the Federal Circuit in Jade Trading II and the D.C. Circuit in Petaluma recognized that penalties could not be applied on the ground that the partnership was a sham and/or lacked economic substance because such findings relied upon inflated outside bases these fictional partnerships yielded -- what the appellate courts clearly ruled was an affected item.

---

[5]  Although the parties addressed the issues on remand via cross-motions for summary judgment and Plaintiffs' motion to strike, these procedural vehicles are inappropriate.  The Court is neither entering summary judgment on these penalties nor striking matters.  Rather, in addressing the narrow issue framed by the Federal Circuit on remand, the Court is determining its subject-matter jurisdiction to apply any penalties in this partnership proceeding.

Defendant avers that because the FPAA determined that Jade was a sham and the Court denied Plaintiffs' petition for readjustment of the FPAA, "every finding in [the FPAA] was untouched by this Court or the Federal Circuit and therefore it's a valid administrative finding." Tr. 31. Even if this Court had expressly determined that Jade was a sham, such a finding would not vest this Court with jurisdiction to determine the applicability of the accuracy-related penalties. As the D.C. Circuit held in Petaluma, even though the Tax Court's sham determination constituted a partnership item, the Tax Court lacked jurisdiction to determine whether the partners' outside bases were zero because outside basis is not a partnership item. Petaluma, 591 F.3d at 652-55. From this, the D.C. Circuit concluded that the Tax Court lacked jurisdiction to apply penalties relying on outside basis. Id. at 654-55. The D.C. Circuit expressly disagreed that the Tax Court's "determination that Petaluma should be disregarded for tax purposes sufficed to give it jurisdiction over accuracy-related penalties." Id. at 655-56. In Jade Trading II, the Federal Circuit reached the same conclusion, stating:

> Because outside basis is not a "partnership item" we conclude that the Court of Federal Claims lacked jurisdiction to determine that the Ervins had no outside basis in Jade. As explained above, under § 6226(f), the trial court has jurisdiction over "the applicability of any penalty . . . which relates to an adjustment to a partnership item." The penalty in this case was imposed on the underpayment of income tax due to the gross valuation misstatement of the partners' outside basis in the partnership. Outside basis is an affected item, not a partnership item; thus, the penalty here relates to an adjustment of an affected item, not a partnership item. Accordingly, the trial court did not have jurisdiction over the applicability of this particular penalty.

598 F.3d at 1380.

On remand in Petaluma, a majority of the Tax Court similarly concluded that the finding of a sham partnership did not vest that court with jurisdiction over penalties:

> There is a question [of] whether "outside basis" is the correct term because the partnership has been held to be a sham, but there clearly are adjustments at the partner level that will relate to the partners' bases in assets that they sold. We are directed that such adjustments are beyond our jurisdiction and the related penalties are also.
>
> ***
>
> The determination that the partnership is a sham implies negligent conduct regarding formation of the partnership, but in this case that determination does not trigger a computational adjustment to taxable income of the partners. The Court of Appeals declined to allow the general effect of the partnership determination of sham to confer jurisdiction of the penalty relating to valuation because the valuation related to outside basis, an affected item. The Court of Appeals instructs

10

that for us to have jurisdiction over a penalty at the partnership level it must "'[relate] to an adjustment to a partnership item.'" It must also be capable of being "computed without partner-level proceedings," leading at least potentially to only a computational adjustment to the partners' returns. The effect of the mandate concerning the section 6662 penalty is that if the penalty does not relate directly to a numerical adjustment to a partnership item, it is beyond our jurisdiction. In this case there are no such adjustments to which a penalty can apply. The adjustment is an affected item. The sham determination in this case only indirectly affects basis at the partner level. There is no partnership item flowing through to the partners' returns as a computational adjustment.

Petaluma III, 2010 WL 5209376, at *4 (internal citations omitted).

Defendant cannot convert what it characterizes as a determination that Jade was a sham and the Court's finding that the spread transaction lacked economic substance into a wholly separate finding that something other than the individual partners' outside bases justifies applying penalties at the partnership level. As Plaintiffs persuasively argue, "the sham characterization in Petaluma may represent a legitimate 'partnership item' but the impact on the partner-specific 'outside basis' stands one step removed from the partnership proceeding." Pls.' Mem. in Support of Mot. to Strike & Summ. J. ("Pls.' Mem.") at 12. The accuracy-related penalties this Court applied were all predicated on misstatements and erroneous reporting attributable to the Ervin LLCs' inflated bases in Jade. Jade Trading II, 598 F.3d at 1380 ("The penalty . . . was imposed . . . due to the gross valuation misstatement of the partners' outside basis in the partnership."). The fact that these inflated bases were generated because of transactions that lacked economic substance or via the otherwise meaningless construct of a partnership does not alter the fact that here the application of all penalties depended upon the individual partners' outside bases.

Second, Defendant contends that Jade reported the contributions of the spread transaction and claimed a positive basis in order to implement an abusive tax shelter and reap significant tax benefits. Defendant argues that this overstatement of Jade's basis -- inside basis -- constitutes a gross valuation misstatement of a partnership item, which vests the Court with jurisdiction over the penalties. This argument ignores what has been litigated for years in this proceeding -- that the FPAA based the penalties solely on the partners' bases in their partnership interests without mentioning contributions, as did this Court in applying the penalties in Jade Trading I. Defendant's attempt to backpedal and now for the first time on remand claim that inaccurate reporting of contributions can justify the application of penalties at the partnership level does not work. Defendant invites the Court to focus on these contributions in isolation -- without regard to the ultimate treatment of the spread transactions itself, which ignored the contingent liability leg of the spread in calculating outside basis, thereby inflating that basis to create a fictional loss -- and then use these contributions, standing alone, to trigger penalties. However, Defendant has not demonstrated that any understatement of tax, let alone an understatement sufficient to trigger penalties, resulted from the contribution of the spread transaction to Jade.

11

Third, Defendant argues that a purported inaccuracy on Jade's return warrants application of the accuracy-related penalties -- Jade's reporting of the ordinary losses from Section 988 transactions in the amount of $314,416, which the Government asserts included the disregarded spread transaction. Until this phase of the proceedings, the Section 988 transactions were of no import to anyone. Indeed, it is not clear what these Section 988 transactions encompassed.[6] Plaintiffs represented that the Section 988 transactions included hundreds of other transactions, not at issue in this litigation:

> Plaintiffs' Counsel: There's hundreds of other transactions in the $314,000 loss. The knockout options. There's all manner of trading. There are hundreds of transactions in the $314,000 loss . . . . You don't know if it results in an underpayment, an essential element of the penalty the government asserts, and so all of that missing evidence was evidence that should have been brought forward by the Defendant . . .
>
> \* \* \*
>
> The Court: Well, but assume for a moment that part of the transactions were the spreads at issue, and they're disregarded. Then, it might be said that those transactions would be inaccurately reflected. That's I think the government's position, but even accepting that, we don't know much of the other $314,000-loss is accurate, which would not warrant the statement of a penalty.
>
> Plaintiffs' Counsel: That's right, so you don't know what portion. What you do know is all those transactions are pushed down to the partner level, which for jurisdictional reasons is comforting. The single rule that remains consistent with the mandate is that no partnership penalty jurisdiction exists here because no partnership penalty computational adjustment can be made without resort to affected-item determinations in the partner level, the forbidden frontier right now.

Tr. 141-44; see also Tr. 77-78.

Plaintiffs contend that the Government "has not produced and not pointed to any evidence that says what the inside basis was," that the inside basis was "inaccurate," and/or that "the inaccuracy of the inside basis generates or could conceivably generate a penny of underpayment." Tr. 41-42; Pls.' Mem. at 21. Defendant, returning to a rehash of its sham transaction and lack-of-economic substance predicate for penalty jurisdiction, argues that it does not matter, as reflected in the following exchange:

---

[6] This Court's decision in Jade Trading I made no mention of ordinary loss from Section 988 transactions.

12

> Court: All right. Let's go back to the partnership return because I want to understand exactly what was inaccurate on the partnership return that justifies the imposition of the accuracy-related penalties.
>
> * * *
>
> Defendant's Counsel: [T]here's a line item for ordinary loss from [Section] 988 transactions. . . . That was losses that they reported on foreign currency transactions engaged in by the partnership, so that loss is reported there and that loss . . . is in fact sort of reversed out in the adjustments in the FPAA.
>
> Court: The loss is reversed by the FPAA?
>
> Defendant's Counsel: Yes.
>
> Court: What did that loss relate to? . . .
>
> Defendant's Counsel: Specifically, it related to, among other things, the transactions whereby the spread options that were contributed to Jade were closed out, and that's how we get to the <u>specific statement of inside basis here, so in reporting that loss, they attributed some non-zero basis to the contributed spread options.</u> I think [Plaintiffs' Counsel] is correct to the extent that he says there is nothing I would say definitive in our record where they say okay, well here's how we calculated that. That's not in our record, but we don't need that here to reach the conclusion that there was a gross valuation misstatement. That's because the effect of the conclusions that the contribution lacked economic substance, the effect of that was reducing gains basis in the contributed options to zero.

Tr. 96-98 (emphasis added); <u>see also</u> Tr. 99-100, 103-04, 136-37.  Thus, the Government has not advanced the Section 988 transactions as a readjusted partnership item that did not rely on outside basis to justify applying the penalties at the partnership level. Rather, Defendant has merely identified these transactions as another example necessitating reduction of the inside basis to zero, claiming that this suffices to bestow jurisdiction over penalties on this Court. As explained above, this supposed inaccuracy regarding the Section 988 transactions used by Defendant to reduce inside basis to zero cannot be viewed in isolation from the totality of the transaction that generated outside basis. Defendant has not demonstrated that this reporting of the contributed spread by itself generated an understatement warranting application of the penalties.[7]

---

[7] Defendant acknowledges that it does not "know yet whether there is an understatement" or the amount of such understatement. Tr. 130; <u>see also</u> Tr. 115 ("[W]e wouldn't know without looking at partner items what the understatement was . . . . [W]e don't know whether there's an understatement at all . . . ."); Tr. 128 ("There's not an understatement of tax at the partnership [level] at all . . . .").

**Alternative Penalties**

In the alternative, the Government argues that the Court has jurisdiction to determine the applicability of the 20 percent negligence and substantial understatement penalties because the Federal Circuit did not "disturb this Court's reasoning and conclusions" regarding those penalties. Def.'s Mem. in Support of Mot. Summ. J. ("Def.'s Mem.") at 2. This is nonsense. The Federal Circuit vacated application of any and all penalties that relied upon outside basis. This Court's application of these other penalties was predicated on the finding that the spread transaction in the partnership vehicle gave rise to inflated outside basis.

With respect to the negligence penalty, Defendant appears to be under the misimpression that this Court's findings giving rise to the application of the negligence penalty are somehow still viable. Defendant takes it as a given that "as this Court has already found, Jade was negligent in treating the spread transactions as having economic substance." Def.'s Reply at 10-11. However, this Court's "finding" that the Jade partnership was negligent was a legal conclusion made in the context of applying the negligence penalty, and that legal conclusion was clearly vacated by the Federal Circuit for lack of jurisdiction. It is elementary that vacated rulings are null and void, as are rulings made without jurisdiction.

Defendant then relies upon this vacated legal conclusion to extrapolate that because the partnership was negligent in treating the transactions as having economic substance, the partnership was:

> negligent in erroneously reporting the purported contribution to it of the spread options and the purported distribution of property to the Ervins in redemption of their purported interests in Jade. . . . Consequently, Jade's negligence relates to partnership items, and the Court has jurisdiction to determine that the negligence penalty applies in this proceeding.

Id. at 11 (citations omitted). Reliance upon a finding that was vacated does nothing to establish this Court's jurisdiction over the negligence penalty.

This Court's findings giving rise to the negligence penalty (like the other penalties) depended upon the generation of inflated outside basis using the partnership vehicle. Nothing brought forth in the remand proceedings has altered this need to rely upon outside basis to apply the penalties.

### Conclusion

This Court lacks jurisdiction to determine the applicability of accuracy-related penalties in this partnership proceeding. As such, it is ordered that with the exception of adjustments that relate to penalties under § 6662, the adjustments to the partnership items of Jade Trading are correct as determined and set forth in the FPAA.[8]

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

---

[8] Despite the lack of jurisdiction over the penalties, this Court does not dismiss Plaintiffs' petition for readjustment of the FPAA in part, insofar as Plaintiffs challenge the FPAA's application of penalties. This is because § 6226(h) provides that a "decision of the court dismissing the action shall be considered as its decision that the [FPAA] is correct." Here, this Court's ruling on remand that it lacks jurisdiction to determine the applicability of penalties does not constitute a decision finding the application of the penalties in the FPAA to be correct. In contrast, given the Court's lack of jurisdiction, those findings in the FPAA on penalties have not been subject to judicial review in this partnership proceeding.